**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

KICKFLIP, INC.,                                )
                                               )
                    Plaintiff,                 )
                                               )
          v.                                   )          C.A. No. 12-1369-LPS
                                               )
FACEBOOK, INC.,                                )
                                               )
                    Defendant.                 )

## DEFENDANT'S ANSWER AND COUNTERCLAIMS

Defendant Facebook, Inc. ("Facebook" or "Defendant"), by and through its undersigned counsel, hereby answers Kickflip, Inc.'s ("Kickflip") Complaint. To the extent not expressly admitted herein, Facebook denies all factual allegations in the Complaint, including any contained in any sub-heading of the Complaint.

1.      Facebook admits that Plaintiff purports to allege violations as described in Paragraph 1. Facebook denies that Plaintiff has any factual or legal basis for bringing this action against, or obtaining any relief from, Facebook. To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 1.

2.      Facebook admits that Plaintiff provided certain services to software developers that published games on Facebook. Facebook is without knowledge sufficient to admit or deny the remainder of the allegations set forth in Paragraph 2.

3.      Facebook submits that Paragraph 3 contains numerous vague and ambiguous statements and therefore denies the allegations.

4.      Facebook denies that it violated any antitrust laws. Paragraph 4 sets forth legal conclusions that do not require a response. To the extent that the allegations in Paragraph 4 rely

on the terms "virtual currency" and "virtual-currency services," Facebook submits that those terms are vague and ambiguous as used within this Complaint and denies those allegations. To the extent the allegations set forth in Paragraph 4 relate to non-Facebook third-parties, Facebook denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 4. To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 4.

5.      To the extent that the allegations in Paragraph 5 rely on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous as used within this Complaint and denies those allegations. Facebook admits it initially launched Facebook Credits in 2009 and admits generally that it has modified and enhanced the functionality available to developers publishing applications on Facebook to improve the user experience. To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 5.

6.      To the extent that the allegations in Paragraph 6 rely on the terms "market for social-game networks" and "virtual-currency services," Facebook submits that those terms are vague and ambiguous as used within this Complaint and denies those allegations. The first sentence of Paragraph 6 sets forth legal conclusions that do not require a response. Facebook admits only that it banned Gambit from using its services in November 2009 for the reasons set forth in the cease and desist letter cited at Paragraph 45 of the Complaint. To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 6.

7.      To the extent that the allegations in Paragraph 7 rely on the terms "social-game marketplace" and "virtual-currency services," Facebook submits that those terms are vague and ambiguous as used within this Complaint and denies those allegations. Paragraph 7 sets forth

legal conclusions that do not require a response.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 7.

8.      Facebook denies the allegations set forth in Paragraph 8.

9.      To the extent that the allegations in Paragraph 9 rely on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous as used within this Complaint and denies those allegations.  Paragraph 9 sets forth Plaintiff's characterization of its action and legal conclusions that do not require a response.  Facebook admits only that Plaintiff purports to allege violations under Sections 1 and 2 of the Sherman Antitrust Act.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 9.

10.      Paragraph 10 sets forth Plaintiff's characterization of its action and legal conclusions that do not require a response.  Facebook admits only that Plaintiff purports to allege claims under Delaware common law.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 10.

11.      To the extent that the allegations in Paragraph 11 rely on the terms "social-game network" and "virtual-currency services," Facebook submits that those terms are vague and ambiguous as used within this Complaint and denies those allegations.  Paragraph 11 sets forth Plaintiff's characterization of its action and legal conclusions that do not require a response. Facebook admits only that Plaintiff purports to seek an injunction.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 11.

12.      Paragraph 12 sets forth Plaintiff's characterization of its action and legal conclusions that do not require a response.  Facebook admits only that Plaintiff purports to seek money damages, fees, and costs.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 12.

13.     Facebook denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 13.

14.     Facebook admits the allegations set forth in Paragraph 14.

15.     Paragraph 15 sets forth a legal conclusion that does not require a response.  To the extent an answer is required, Facebook denies the allegations in Paragraph 15.

16.     Paragraph 16 sets forth a legal conclusions that does not require a response.  To the extent an answer is required, Facebook denies the allegations in Paragraph 16.

17.     Facebook admits that it is incorporated in Delaware.  Otherwise, Paragraph 17 sets forth a legal conclusion that does not require a response.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 17.

18.     Facebook admits that it resides in this District and denies that Gambit has any valid claims.  Facebook further denies that a substantial portion of the events or omissions referenced in the Complaint occurred in this District.  Otherwise, Paragraph 18 sets forth a legal conclusion that does not require a response.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 18.

19.     To the extent that the allegations in Paragraph 19 rely on the terms "social-game networks" and "virtual-currency services," Facebook submits that those terms are vague and ambiguous as used within this Complaint and denies those allegations.  Paragraph 19 sets forth legal conclusions that do not require a response.  To the extent an answer is required, Facebook denies the allegations set forth in Paragraph 19.

20.     To the extent that the allegations in Paragraph 20 rely on the term "social-game networks," Facebook submits that that term is vague and ambiguous as used within this Complaint and denies those allegations.  Paragraph 20 sets forth legal conclusions and arguments

that do not require a response.  To the extent an answer is required, Facebook denies the allegations set forth in Paragraph 20.

21.     Paragraph 21 sets forth legal conclusions and arguments that do not require a response.  To the extent an answer is required, Facebook denies the allegations set forth in Paragraph 21.

22.     Facebook admits that developers have a variety of means and platforms through which they can make games available to consumers and that they use a number of different means to generate revenue related to those games.  Otherwise, Paragraph 22 sets forth legal conclusions and arguments that do not require a response.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 22.

23.     To the extent that the allegations in Paragraph 23 rely on the terms "social-game network" and "market for social-game networks," Facebook submits that those terms are vague and ambiguous as used within this Complaint and denies those allegations.  Facebook admits that developers have a variety of means and platforms through which they can make games available to consumers and that they use a number of different means to generate revenue related to those games.  Otherwise, Paragraph 23 sets forth legal conclusions and arguments that do not require a response.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 23.

24.     To the extent that the allegations in Paragraph 24 rely on the terms "virtual-currency services" and "market for virtual-currency services," Facebook submits that those terms are vague and ambiguous as used within this Complaint and denies those allegations.  Facebook admits that developers use a number of different means to generate revenue related to their games.  Otherwise, Paragraph 24 and its associated footnotes sets forth legal conclusions and

arguments that do not require a response.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 24 and its associated footnotes.

25.     Facebook admits that the Facebook Platform allows developers to make their applications available to Facebook users.  Facebook further admits that the Facebook Platform was available to developers in 2007.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 25.

26.     To the extent that the allegations in Paragraph 26 rely on the term "virtual-currency services market," Facebook submits that that term is vague and ambiguous and denies those allegations.  Paragraph 26 sets forth a legal conclusion that does not require a response.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 26.

27.     Facebook admits that hundreds of thousands of applications are now available on the Facebook Platform.  Facebook further admits that it had millions of users in 2007 and that the number of monthly active users now exceeds one billion.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 27.

28.     Facebook admits that it makes certain functionality on its site available to developers so that developers can make their applications available to users and that developers use a variety of means to generate revenues related to their applications.    To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 28.

29.     Facebook admits that developers use a variety of means to generate revenues related to their applications.  Otherwise, Facebook is without knowledge sufficient to admit or deny the allegations in Paragraph 29.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 29.

30.     Facebook admits that many developers have games offered through a variety of channels and platforms and that developers use a variety of means for generating revenue related to their applications.  Otherwise, Facebook is without knowledge sufficient to admit or deny the allegations in Paragraph 30.   To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 30.

31.     Facebook admits that CityVille is available on Facebook and that certain features of the game can only be purchased using City Cash.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 31.

32.     Facebook admits that developers offer a variety of means by which users may obtain in-game currency.  Facebook is otherwise without knowledge sufficient to admit or deny the allegations in Paragraph 32.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 32.

33.     Facebook admits that some developers use in-game currencies and that acquisition by users of in-game currencies sometimes requires monetary payment.  Facebook further admits that it is important to ensure that any payment processing is reliable and secure, including against fraud.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 33.

34.     To the extent that the allegations in Paragraph 34 rely on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies those allegations.  Facebook is without knowledge sufficient to admit or deny the allegations in Paragraph 34.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 34.

35.     The first sentence of Paragraph 35 sets forth a legal conclusion that does not require a response.  To the extent that the second sentence of Paragraph 35 relies on the term "virtual-currency service provider," Facebook submits that that term is vague and ambiguous and Facebook is otherwise without knowledge sufficient to admit or deny the allegation set forth in that sentence.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 35. The contents of the article cited in footnote 3 do not constitute allegations that require a response.  To the extent a response is required, Facebook denies the allegations in footnote 3.

36.     To the extent that the allegations in Paragraph 36 rely on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies those allegations.  Facebook admits that the Facebook Platform allows developers to make their applications available to Facebook users.  Facebook further admits that the Facebook Platform was available to developers in 2007.  Facebook is otherwise without knowledge sufficient to admit or deny the allegations in Paragraph 36.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 36.

37.     To the extent that the allegations in Paragraph 37 rely on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies those allegations.  Facebook is without knowledge sufficient to admit or deny the allegations in Paragraph 37.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 37.

38.     To the extent that the entire paragraph relies on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations. To the extent the first sentence of Paragraph 38 characterizes Gambit's business position,

Facebook is without knowledge sufficient to admit or deny the allegation.  The second sentence

of Paragraph 38 sets forth a legal conclusion that does not require a response.  To the extent not

expressly admitted, Facebook denies the allegations set forth in Paragraph 38.

   39. To the extent that the allegations in Paragraph 39 rely on the term "virtual-

currency services," Facebook submits that that term is vague and ambiguous and denies those

allegations.  Facebook admits that it made its Facebook Credits service available to developers in

May 2009. To the extent not expressly admitted, Facebook denies the allegations set forth in

Paragraph 39. The contents of the articles cited in footnotes 4 and 5 do not constitute allegations

that require a response.  To the extent a response is required, Facebook denies the allegations in

footnotes 4 and 5.

   40. To the extent that the allegations in Paragraph 40 rely on the term "virtual-

currency services," Facebook submits that that term is vague and ambiguous and denies those

allegations.  To the extent that Paragraph 40 characterizes the terms on which Gambit and third

parties did business, Facebook is without knowledge sufficient to admit or deny the allegation.

Facebook admits that Facebook collects a 30 percent fee from developers for its payment

processing services.  To the extent not expressly admitted, Facebook denies the allegations set

forth in Paragraph 40.  The contents of the article cited in footnote 6 do not constitute allegations

that require a response.  To the extent a response is required, Facebook denies the allegations in

footnote 6.

   41. To the extent that Paragraph 41 relies on the terms "virtual-currency services" and

"virtual-currency services market," Facebook submits that those terms are vague and ambiguous

and denies the allegations.  Facebook admits that it made its Facebook Credits service available

to developers in May 2009.  To the extent not expressly admitted, Facebook denies the

allegations set forth in Paragraph 41. The contents of the article cited in footnote 7 do not constitute allegations that require a response.  To the extent a response is required, Facebook denies the allegations in footnote 7.

42.     To the extent that Paragraph 42 relies on the terms "virtual-currency services" and "virtual-currency services market," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Facebook admits that it had discussions with certain application developers about the use of Facebook Credits.  To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 42. The contents of the article cited in footnote 8 do not constitute allegations that require a response.  To the extent a response is required, Facebook denies the allegations in footnote 8.

43.     To the extent that the allegations in Paragraph 43 rely on the term "virtual-currency service," Facebook submits that that term is vague and ambiguous and denies those allegations.  Facebook admits that in 2009 some commentators reported on the presence of deceptive ads on games running on Facebook, as well as on related enforcement measures taken by Facebook against developers and third parties.  Facebook otherwise denies the allegations set forth in Paragraph 43.  The contents of the article cited in footnote 9 do not constitute allegations that require a response.  To the extent a response is required, Facebook denies the allegations in footnote 9.

44.     Facebook admits that it was in contact with Gambit prior to November 2009, including to express its concern about deceptive ads and offers being served by Gambit on applications running on Facebook.  To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 44.

45.     Facebook admits that it sent a letter to Gambit on November 5, 2009 informing Gambit that it was no longer authorized to use Facebook's website or other services because of Gambit's violation of applicable Facebook terms and policies.  To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 45.

46.     To the extent that the allegations in Paragraph 46 rely on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies those allegations.  Facebook admits that it announced that, in 2009, it disabled several advertising providers from operating within applications on the Facebook Platform or Facebook.com.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 46.

47.     Facebook admits that it announced that, in 2009, it disabled several advertising providers from operating within applications on the Facebook Platform or Facebook.com.  To the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 47.

48.     Facebook admits that on November 25, 2009 it made available on its Developer Blog a list of monetization providers, including Gambit, that were no longer permitted to operate on Facebook Platform or Facebook.com.  Facebook further admits that the blog posting advised that applications found utilizing a banned provider on Facebook Platform risked enforcement action.  To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 48.

49.     To the extent that the allegations in Paragraph 49 rely on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies those allegations.  Facebook admits that it announced that, in 2009, it disabled several advertising providers from operating within applications on the Facebook Platform or Facebook.com.  Facebook is without knowledge sufficient to admit or deny the allegations in Paragraph 49.  To

the extent not expressly admitted, Facebook denies the allegations set forth in Paragraph 49.  The

contents of the article cited in footnote 10 do not constitute allegations that require a response.

To the extent a response is required, Facebook denies the allegations in footnote 10.

50.     Facebook denies the allegations set forth in Paragraph 50.

51.     To the extent that Paragraph 51 relies on the term "virtual-currency services,"

Facebook submits that that term is vague and ambiguous and denies the allegations.  Facebook is

without knowledge sufficient to admit or deny the second sentence of Paragraph 51.  To the

extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 51.

52.     To the extent that Paragraph 52 relies on the term "virtual-currency services,"

Facebook submits that that term is vague and ambiguous and denies the allegations.  Facebook

admits that it had discussions with certain application developers about the use of Facebook

Credits.  Facebook is without knowledge sufficient to admit or deny the allegations in second

and third sentences in Paragraph 52.  To the extent not expressly admitted, Facebook denies the

allegations set forth in Paragraph 52.   The contents of the articles cited in footnotes 11 and 12 do

not constitute allegations that require a response.  To the extent a response is required, Facebook

denies the allegations in footnotes 11 and 12.

53.     To the extent that the allegations in Paragraph 53 rely on the term "virtual-

currency services market," Facebook submits that that term is vague and ambiguous and denies

those allegations.  The first sentence of Paragraph 53 sets forth a legal conclusion that does not

require a response.  Facebook admits that it has hired employees for its Payment Operations

team.  Facebook is without knowledge sufficient to admit or deny the second sentence of

Paragraph 53.  To the extent not specifically admitted herein, Facebook denies the allegations set

forth in Paragraph 53.  The contents of the articles cited in footnotes 13 and 14 do not constitute

allegations that require a response. To the extent a response is required, Facebook denies the allegations in footnotes 13 and 14.

54.     To the extent that the allegations in Paragraph 54 rely on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies those allegations. Facebook admits that Zynga used Facebook Credits in its applications. To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 54. The contents of the article cited in footnote 15 do not constitute allegations that require a response. To the extent a response is required, Facebook denies the allegations in footnote 15.

55.     Facebook denies the allegations set forth in Paragraph 55. The contents of the article cited in footnote 16 do not constitute allegations that require a response. To the extent a response is required, Facebook denies the allegations in footnote 16.

56.     To the extent that the allegations in Paragraph 56 rely on the term "social-game network market," Facebook submits that that term is vague and ambiguous and denies those allegations. The first sentence of Paragraph 56 sets forth a legal conclusion that does require a response. To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 56.

57.     Facebook denies the allegations set forth in Paragraph 57. The contents of the article cited in footnote 17 do not constitute allegations that require a response. To the extent a response is required, Facebook denies the allegations in footnote 17.

58.     Facebook denies the allegations set forth in Paragraph 58.

59.     To the extent that the allegations in Paragraph 59 rely on the term "social-game marketplace," Facebook submits that that term is vague and ambiguous and denies those allegations. Facebook admits that in January 2011 it announced that, starting July 1, 2011, it

would require all social-game developers on the Facebook canvas platform to process payments through Facebook Credits.   To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 59.

60.     To the extent that the allegations in Paragraph 60 rely on the term "social-game network," Facebook submits that that term is vague and ambiguous and denies those allegations. Facebook admits that its payments processing policy is intended to provide, among other things, a safe and simple experience for developers and users.  Facebook denies the second sentence of Paragraph 60.  To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 60.   The contents of the article cited in footnote 18 do not constitute allegations that require a response.  To the extent a response is required, Facebook denies the allegations in footnote 18.

61.     Facebook denies the allegations set forth in Paragraph 61. The contents of the article cited in footnote 19 do not constitute allegations that require a response.  To the extent a response is required, Facebook denies the allegations in footnote 19.

62.     To the extent that the allegations in Paragraph 62 rely on the term "virtual-currency market," Facebook submits that that term is vague and ambiguous and denies those allegations.  Paragraph 62 sets forth legal conclusions that do not require a response.  To the extent a response is required, Facebook denies the allegations set forth in Paragraph 62.

63.     Facebook denies the allegations set forth in Paragraph 63.

64.     With respect to Paragraph 64, Facebook repeats and incorporates by reference its responses to Paragraphs 1-63 with the same force and effect as if they had been full restated herein in full.

65.     To the extent that the allegations in Paragraph 65 rely on the term "market for virtual-currency services," Facebook submits that that term is vague and ambiguous and denies those allegations.  Paragraph 65 sets forth legal conclusions that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 65.

66.     To the extent that the allegations in Paragraph 66 rely on the terms "market for social-game networks" or "virtual-currency services market," Facebook submits that those terms are vague and ambiguous and denies those allegations.  Paragraph 66 sets forth legal conclusions that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 66.

67.     To the extent that Paragraph 67 relies on the terms "market for social-game networks" and "virtual-currency services market," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 67 sets forth legal conclusions that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 67.

68.     Paragraph 68 sets forth legal conclusions that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 68.

69.     To the extent that Paragraph 69 relies on the terms "virtual-currency services," "virtual-currency services market" and "social-game network," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 69 sets forth legal conclusions, arguments and characterizations that do not require a response.   To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 69.

70.     Facebook denies the allegations set forth in Paragraph 70.

71.     To the extent that Paragraph 71 relies on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 71 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 71.

72.     To the extent that Paragraph 72 relies on the terms "virtual-currency services" and "virtual-currency services market," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 72 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 72.

73.     To the extent that Paragraph 73 relies on the term "market for virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations. Paragraph 73 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 73.

74.     To the extent that Paragraph 74 relies on the term "social-game networks," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 74 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 74.

75.     To the extent that Paragraph 75 relies on the term "social-game networks," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 75 sets forth legal conclusions, arguments and characterizations that do not require a response.

To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 75.

76.     Paragraph 76 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 76.

77.     To the extent that Paragraph 77 relies on the term "social-game network," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 77 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 77.

78.     Paragraph 78 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 78.

79.     Paragraph 79 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 79.

80.     To the extent that Paragraph 80 relies on the terms "virtual-currency services," "market for virtual-currency services market" and "market for social-game networks," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 80 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 80.

81.     Paragraph 81 sets forth legal conclusions that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 81.

82.     To the extent that Paragraph 82 relies on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 82 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 82.

83.     Facebook denies the allegations set forth in Paragraph 83.

84.     Facebook denies the allegations set forth in Paragraph 84.

85.     Facebook denies the allegations set forth in Paragraph 85.

86.     Facebook denies the allegations set forth in Paragraph 86.

87.     To the extent that Paragraph 87 relies on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 87 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 87.

88.     Paragraph 88 sets forth legal conclusions that do not require a response.  To the extent not expressly admitted herein, Facebook denies the allegations set forth in Paragraph 88.

89.     With respect to Paragraph 89, Facebook repeats and incorporates by reference its responses to Paragraphs 1-88 with the same force and effect as if they had been full restated herein in full.

90.     To the extent that Paragraph 90 relies on the term "market for virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations. Paragraph 90 sets forth legal conclusions that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 90.

91.     To the extent that Paragraph 91 relies on the terms "virtual-currency services" and "market for virtual-currency services," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 91 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations set forth in Paragraph 91.

92.     To the extent that Paragraph 92 relies on the terms "virtual-currency services," "virtual-currency services market," and "social-game networks," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 92 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations set forth in Paragraph 92.

93.     To the extent that Paragraph 93 relies on the terms "virtual-currency services," "virtual-currency services market" and "social-game network," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 93 sets forth legal conclusions, arguments and characterizations that do not require a response.   To the extent that a response is required, Facebook denies the allegations set forth in Paragraph 93.

94.     Facebook denies the allegations set forth in Paragraph 94.

95.     Facebook denies the allegations set forth in Paragraph 95.

96.     Facebook states that the allegations of Paragraph 96 constitute legal contentions and/or conclusions or definitions as to which no response is required.  To the extent that a response is required, Facebook denies the allegations of Paragraph 96.

97.     Paragraph 97 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 97.

98.     To the extent that Paragraph 98 relies on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 98 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent that a response is required, Facebook denies the allegations of Paragraph 98.

99.     To the extent that Paragraph 99 relies on the term "market for virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations. Paragraph 99 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 99.

100.    With respect to Paragraph 100, Facebook repeats and incorporates by reference its responses to Paragraphs 1-99 with the same force and effect as if they had been full restated herein in full.

101.    Paragraph 101 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 101.

102.    To the extent that Paragraph 102 relies on the term "market for virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations. Paragraph 102 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 102.

103.    To the extent that Paragraph 103 relies on the terms "virtual-currency services," "market for virtual-currency services" and "market for social-game networks," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 103 sets

forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 103.

104.     Paragraph 104 sets forth a legal conclusion that does not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 104.

105.     Paragraph 105 sets forth a legal conclusion that does not require a response. To the extent that a response is required, Facebook denies the allegations of Paragraph 105.

106.     To the extent that Paragraph 106 relies on the terms "social-game network" and "market for social-game networks," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 106 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 106.

107.     To the extent that Paragraph 107 relies on the term "social-game network," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 107 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent that a response is required, Facebook denies the allegations of Paragraph 107.

108.     Facebook denies the allegations set forth in Paragraph 108.

109.     To the extent that Paragraph 109 relies on the terms "virtual-currency services," "market for virtual-currency services providers" and "social-game networks," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 109 sets forth legal conclusions, arguments and characterizations that do not require a response.   To the extent that a response is required, Facebook denies the allegations of Paragraph 109.

110.     To the extent that Paragraph 110 relies on the term "virtual-currency services" and "social-game network," Facebook submits that those terms are vague and ambiguous and

denies the allegations.  Paragraph 110 sets forth legal conclusions, arguments and characterizations that do not require a response.    To the extent that a response is required, Facebook denies the allegations of Paragraph 110.

111.    To the extent that Paragraph 111 relies on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 111 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent that a response is required, Facebook denies the allegations of Paragraph 111.

112.    To the extent that Paragraph 112 relies on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 112 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent that a response is required, Facebook denies the allegations of Paragraph 112.

113.    To the extent that Paragraph 113 relies on the term "social-game network," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 113 sets forth a legal conclusion that does not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 113.

114.    To the extent that Paragraph 114 relies on the terms "virtual-currency services," "market for virtual-currency services" and "market for social-game networks," Facebook submits that those terms are vague and ambiguous and denies the allegations. Paragraph 114 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 114.

115.    To the extent that Paragraph 115 relies on the terms "social-game networks" and "market for social-game networks," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 115 sets forth legal conclusions, arguments and

characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 115.

116.    To the extent that Paragraph 116 relies on the terms "virtual-currency services," "market for virtual-currency services," and "social-game network market," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 116 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 116.

117.    Paragraph 117 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 117.

118.    To the extent that Paragraph 118 relies on the term "virtual-currency services," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 118 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent that a response is required, Facebook denies the allegations of Paragraph 118.

119.    Paragraph 119 sets forth a legal conclusion that does not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 119.

120.    With respect to Paragraph 120, Facebook repeats and incorporates by reference its responses to Paragraphs 1-119 with the same force and effect as if they had been full restated herein in full.

121.    Facebook denies the allegations set forth in Paragraph 121..

122.    Facebook is without knowledge sufficient to admit or deny the allegations set forth in Paragraph 122.

123.    Facebook denies the allegations in Paragraph 123.

124.     Facebook admits that on November 25, 2009, it made available on its Developer Blog a list of monetization providers, including Gambit, that were no longer permitted to operate on Facebook Platform or Facebook.com.  Facebook further admits that the blog posting advised that applications found utilizing a banned provider on Facebook Platform risked enforcement action.  To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 124.

125.     Facebook is without knowledge sufficient to admit or deny the allegations in Paragraph 125.  To the extent a response is required, Facebook denies the allegations set forth in Paragraph 125.

126.     Facebook is without knowledge sufficient to admit or deny the allegations in Paragraph 126.  To the extent a response is required, Facebook denies the allegations set forth in Paragraph 126.

127.     Facebook is without knowledge sufficient to admit or deny the allegations in Paragraph 127.  To the extent a response is required, Facebook denies the allegations set forth in Paragraph 127.

128.     Facebook admits that it has the right to control access to and police the contents of its website.  To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 128.

129.     To the extent that Paragraph 129 relies on the terms "virtual-currency service" and "market for virtual-currency services," Facebook submits that those terms are vague and ambiguous and denies the allegations.  Paragraph 129 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 129.

130.    Paragraph 130 sets forth a legal conclusion that does not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 130.

131.    With respect to Paragraph 131, Facebook repeats and incorporates by reference its responses to Paragraphs 1-130 with the same force and effect as if they had been full restated herein in full.

132.    To the extent that Paragraph 132 relies on the term "virtual-currency service," Facebook submits that that term is vague and ambiguous and denies the allegations.  Paragraph 132 sets forth legal conclusions, arguments and characterizations that do not require a response. To the extent that a response is required, Facebook denies the allegations of Paragraph 132.

133.    Facebook is without knowledge sufficient to admit or deny the allegations set forth in Paragraph 133.  To the extent that a response is required, Facebook denies the allegations of Paragraph 133.

134.    Facebook denies the allegations set forth in Paragraph 134.

135.    Facebook denies the allegations set forth in Paragraph 135.

136.    Facebook denies the allegations set forth in Paragraph 136.

137.    Facebook is without knowledge sufficient to admit or deny the allegations set forth in Paragraph 137.  To the extent a response is required, Facebook denies the allegations set forth in Paragraph 137.

138.    To the extent that Paragraph 138 relies on the term "market for virtual-currency service," Facebook submits that that term is vague and ambiguous and denies the allegations. Facebook is without knowledge sufficient to admit or deny the allegations set forth in Paragraph 138.  To the extent a response is required, Facebook denies the allegations set forth in Paragraph 138.

139.    Facebook admits that it has the right to control access to and police the contents of its website.  To the extent not specifically admitted herein, Facebook denies the allegations set forth in Paragraph 139.

140.    Paragraph 140 sets forth legal conclusions, arguments and characterizations that do not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 140.

141.    Paragraph 141 sets forth a legal conclusion that does not require a response.  To the extent that a response is required, Facebook denies the allegations of Paragraph 141.

142.    Facebook submits that Plaintiff's demand for a jury trial constitutes a legal contention and/or conclusion that does not require a response.

143.    Facebook admits that Plaintiff purports to seek relief as set forth in Section XII "Prayer for Relief."  Facebook denies the allegations set forth in the "Prayer for Relief," denies that it has violated any law or other regulation, denies that Plaintiff suffered any injury or incurred any damages by any act or omission by Facebook as alleged in the Complaint, and further denies that Plaintiff is entitled to any relief under any theory by means of the allegations set forth in the Complaint.

## AFFIRMATIVE DEFENSES

Facebook asserts the following defenses to Plaintiff's alleged causes of action.  Insofar as any of the following expresses denial of an element of any claim alleged against Facebook in this action, such expression does not indicate that Plaintiff is relieved of its burden to prove each and every element of any such claim.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands, based on Kickflip's own unlawful conduct, including but not limited its inducement of developers to breach their contracts with Facebook and Kickflip's fraudulent conduct towards Facebook.

### THIRD AFFIRMATIVE DEFENSE

The claims in Plaintiff's Complaint are barred, in whole or in part, by the doctrines of estoppel and/or laches.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff lacks standing to maintain its claims or to obtain the relief it seeks.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff has not suffered an injury-in-fact or antitrust injury traceable to allegedly unlawful conduct by Facebook.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the alleged conduct of Facebook did not unreasonably restrain trade.

### EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the alleged conduct of Facebook did not lessen competition in any relevant market.

### NINTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Facebook did not possess and does not possess market power or monopoly power in any legally cognizable relevant market.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the relevant markets alleged in the Complaint are not relevant antitrust markets, and Plaintiff cannot carry its burden of defining proper relevant markets.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because its alleged injuries are not proximately caused by any act or omission related to Facebook.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because any conduct engaged in by Facebook was not anticompetitive and cannot support a claim sounding in antitrust.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the matters about which Plaintiff complains resulted in procompetitive benefits.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because any action taken by or on behalf of Facebook was reasonable and justified, and is therefore privileged.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because Facebook's actions were designed to promote legitimate business interests.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute of limitations.

## SEVENTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because the alleged damages sought are too speculative and uncertain, and cannot be practicably ascertained or allocated.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because it failed to mitigate its damages.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to join indispensable parties.

## TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff would be unjustly enriched if it were allowed to recover any part of the damages alleged in the Complaint.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims for injunctive or any other equitable relief are barred because Plaintiff has available an adequate remedy at law and Plaintiff has no factual or legal basis for the grant of equitable relief.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent they are based on alleged acts, conduct, or statements that are specifically permitted by law.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because they are moot insofar as they allege that Facebook seeks to impose the use of Credits as in-game currency on social-game developers that use the Facebook Platform.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

The remedies sought are unconstitutional, contrary to public policy, or are otherwise unauthorized.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, because its request for a preliminary injunction governing Facebook's relationship with developers on Platform improperly seeks relief as to third parties that are not part of this action.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Defendant hereby gives notice that it intends to rely upon any other defense that may become available or appear during the discovery proceedings in this case and hereby reserves its rights to amend its Answer to assert any such defenses.

## PRAYER FOR RELIEF

WHEREFORE, having stated its answer and affirmative defenses, Defendant Facebook prays for relief as follows:

1. That this lawsuit be dismissed with prejudice;

2. Judgment entered in favor of Facebook and against Plaintiff on each and every cause of action set forth in the Complaint;

3. For attorneys' fees and costs as permitted by law; and

4. For such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

Facebook alleges the following Counterclaims, while reserving its right to add additional counterclaims at a future date in accordance with the Federal Rules of Civil Procedure, the Local Rules and any scheduling order entered in this litigation:

1.      Facebook operates a social networking service that enables users to connect and share information with their friends and family. The Facebook Platform enables third-party developers to make their applications and other services available to Facebook users.

2.      Facebook has developed a series of terms and policies (together, the "Facebook Terms" or "Terms") governing the use of its services.  Developers and other operators of Platform applications are required to agree to the Terms applicable to them as a condition of their use of Facebook's services.  The Terms include (a) the Statement of Rights and Responsibilities ("SRR"), which applies to both users and developers; (b) the Platform Policies, which apply to developers; and (c) the Advertising Guidelines, which apply to all parties displaying advertisements on Facebook, including on applications that are made available on Facebook through the Platform.

3.      The operative SRR in November 2009 incorporated by reference the Platform Policies and Advertising Guidelines as "Special Provisions Applicable to Developers/Operators of Applications and Websites."   The SRR further provided that "[i]f you violate the letter or spirit of this Statement, or otherwise create possible legal exposure for us, we can stop providing all or part of Facebook to you."

4.      The obligations assumed by developers under the SRR included the following commitments designed to keep Facebook safe:

- You will not develop or operate a third party application containing, or advertise or otherwise market alcohol-related or other mature content without appropriate age-based restrictions.

- You will not use Facebook to do anything unlawful, misleading, malicious, or discriminatory.

- You will not facilitate or encourage any violations of this Statement.

5.      Developers that displayed advertisements on Facebook also were prohibited under the operative Advertising Guidelines from:

- Developing advertisements or using the Facebook website in ways that violate Facebook's Advertising Guidelines.

- Misleading Facebook users.

- Sending users to different landing pages than the advertised page when they click on the advertisement.

- Using landing pages that generate pop-ups, pop-overs, pop-unders, or "fake" application close behavior.

- Promoting gambling without authorization from Facebook.

- Promoting alcoholic beverages in violation of Facebook's specific guidelines.

- Giving data you receive from Facebook to third parties, including ad networks, or using data you receive or collect through running an ad, including information you derive from your targeting criteria, for any purpose off of Facebook, without user consent.

- Using misleading advertisements to promote subscription services.

6.      The operative Platform Policies included the following obligations for developers:

- You must not confuse, mislead, surprise, or defraud anyone.

- You must not give data you receive from us to any third party, including ad networks.

- You must not promote or provide content (including any advertising content) referencing, facilitating, containing or using . . . adult content . . . liquor, beer, wine or other alcoholic beverages . . . gambling . . . [or] other advertising or marketing content that violates applicable laws, regulations or industry standards.

7.      In 2009, Kickflip operated an advertising service for application developers, including developers on the Facebook Platform.  Kickflip operated its advertising service under the trade name "Gambit."  In at least some of the advertisements that Kickflip served on applications available through Platform, Facebook users were promised rewards in return for accepting an offer, completing a survey, purchasing a subscription or other activity.  On

information and belief, Kickflip represented to developers with which it did business that the advertisements it would serve on their applications would comply with the Facebook Terms.

8.       In or about April 2009, Facebook received an inquiry from a regulatory agency concerning deceptive ads being served on Facebook Platform applications to Facebook users. Upon further investigation, Facebook determined that some of the advertisements in question had been served by Kickflip.

9.       Over the following months, Facebook repeatedly brought to Kickflip's attention numerous ads that it had served on applications available through Facebook Platform that were deceptive or otherwise violated the Facebook Terms.  For example, one ad served by Kickflip to Facebook users in Canada purported to award in-game currency if the user paid "just $4.95 for shipping and handling" to receive the advertiser's product (Fig. 1).  Users who accepted the offer would, however, subsequently receive a "continuity program" bill for Can$89.95 every month. Users did not receive adequate disclosure of the fact that they would receive these bills either in the ad or, upon information and belief, on the landing page to which the user would be directed after clicking on the ad.



Fig. 1.

Kickflip also repeatedly served ads to Facebook users promoting gambling, tobacco, and alcohol in violation of the Facebook Terms (Figs. 2 & 3).



Fig. 2.



Fig. 3.

Kickflip also was receiving Facebook user data from certain of the developers for which it served ads, which again violated the Facebook Terms.

10.     Despite Facebook's repeated warnings, and Kickflip's repeated representations that it would comply with the Facebook Terms, Kickflip continued to serve ads to developer applications on Facebook that violated the Facebook Terms.  The appearance of these non-compliant advertisements on applications available to Facebook users through Facebook Platform placed the developers of those applications in violation of their contractual obligations to Facebook.

11.     In late October and early November 2009, the extent of deceptive advertising on Facebook and other social networks by Kickflip and other companies attracted strong press attention.  One article estimated, based on a survey of ad companies serving ads with offers, that 20 percent of ads with offers "willfully trick users into things like paying more than advertised or providing personal information."  Time Magazine ran a story under the headline "Are You Getting Scammed by Facebook Games?"  Another article accused Facebook of turning a "blind

eye to user protection" and suggested that if it and other social networks "won't protect users, then the government will have to step in." This press coverage caused significant harm to Facebook's reputation with users as a safe environment in which to share with friends and family.

12.      On November 5, 2009, Facebook sent Kickflip a "cease and desist" letter informing Kickflip that, because of its continued failure to conform its advertising practices to the Facebook Terms, Kickflip was no longer authorized to access the Facebook website, use the Facebook Platform, advertise on Facebook, or use any of the services offered by Facebook. On November 25, 2009, Facebook made available on its Developer Blog a list of monetization providers, including Gambit, that were no longer permitted to operate on Facebook Platform or Facebook.com. The blog posting advised that applications found utilizing a banned provider on Facebook Platform risked enforcement action.

13.      On November 6, 2009, Kickflip represented to Facebook that it was taking measures to comply with the cease and desist letter and expected to be in full compliance by November 9, 2009. On November 9, 2009, Kickflip informed Facebook that it had "discontinued its use of the Facebook website and Platform and will continue to do so until reinstated by Facebook." On November 12, 2009, Kickflip told Facebook that "at least 99% of all Gambit traffic is off of Facebook, and likely 100%" and detailed other steps it was taking to respond to the cease and desist letter by shutting down or deleting applications.

14.      At the same time as Kickflip was assuring Facebook of its readiness to comply with the cease and desist order, however, the company was telling developers that it was "100% compliant" with the Terms and not banned from Facebook. Facebook received numerous inquiries from developers asking for clarification on whether they could use the Gambit

advertising service.  On information and belief, Kickflip continued to serve ads, including ads with deceptive offers, to Facebook developers after November 5, 2009, in violation of the cease and desist letter and contrary to the assurances Kickflip was simultaneously giving Facebook.

15.     Kickflip further assured Facebook that it had "divested itself of the Gambit service and brand which is now exclusively owned by Gambit."  Unknown to Facebook, however, Kickflip had arranged to transfer its ad business to a newly incorporated entity with, on information and belief, the same shareholders and the same officers as Kickflip, and to continue to serve ads on Facebook, including ads with offers.  Only in October 2013 did Kickflip disclose the agreements effecting that transfer.

## COUNT I: INDUCEMENT TO BREACH OF CONTRACT

16.     Facebook hereby incorporates by reference paragraphs 1-15 of these Counterclaims, as though fully set forth herein.

17.     Application developers using Facebook Platform to make their applications available to Facebook Users agreed as a condition of their use of the Platform to comply with the Facebook Terms, including the SRR, the Advertising Guidelines and the Platform Policies.

18.     The Facebook Terms constituted a binding contract between Facebook and said developers.

19.     Kickflip knew, or should have known, that said developers were contractually obliged to comply with the Facebook Terms.

20.     Kickflip encouraged said developers to use the Gambit ad service and to continue using the service after Kickflip had been informed by Facebook that it was serving ads in violation of the Facebook Terms.

21.     Kickflip thereby induced developers to violate their contractual obligations to Facebook in the period preceding the issuance of Facebook's cease and desist letter on November 5, 2009.

22.     Kickflip knew or should have known that Facebook had advised said developers in November 2009 that they would be subject to enforcement measures under the Facebook Terms if they continued to use the Gambit service.

23.     On information and belief, after representing to Facebook that it had terminated its services to Facebook developers, Kickflip continued to serve ads on the Facebook platform, including by offering such developers the use of the Gambit offerwall and payments service on Facebook.  Kickflip further represented to developers that the ads that it was serving complied with the Facebook Terms when Kickflip knew or had reason to know that it was serving ads that violated Facebook's Terms.

24.     Kickflip thereby induced developers to violate their contractual obligations to Facebook after the issuance of the cease and desist letter.

25.     Kickflip fraudulently concealed from Facebook its continued inducements to developers to breach their contracts with Facebook after Kickflip's receipt of the cease and desist letter.

26.     Facebook was injured by Kickflip's conduct, which resulted in the display of deceptive ads to Facebook users, causing damage to Facebook's reputation and goodwill.

## **COUNT II: FRAUD**

27.     Facebook hereby incorporates by reference paragraphs 1-26 of these Counterclaims, as though fully set forth herein.

28.     After being alerted by Facebook in April 2009 to the fact that it was serving deceptive ads to developers, Kickflip repeatedly assured Facebook that it would comply with the

Facebook Terms.  Notwithstanding those assurances, Kickflip continued to serve misleading and deceptive advertisements to applications available to Facebook users through Facebook Platform.

29.     Facebook relied on these assurances in deciding not to ban Kickflip from using its services prior to November 5, 2009.

30.     Kickflip's assurances to Facebook were false or misleading because Kickflip continued serving deceptive ads, or ads that were otherwise in violation of the Facebook Terms, to Facebook users between April and November 2009.  Upon information and belief, Kickflip knew or should have known that it was serving ads that were deceptive or that otherwise violated the Facebook Terms.  Indeed, in public statements, Kickflip later admitted that it served inappropriate and noncompliant ads on Platform.

31.     Facebook was injured by Kickflip's fraudulent conduct prior to November 5, 2009, which resulted in the service of deceptive ads to Facebook users, causing damage to Facebook's reputation and goodwill.

32.     Kickflip represented to Facebook that it would comply with the cease and desist letter from Facebook dated November 5, 2009 and that it had taken steps to terminate the provision of its ad service to Facebook publishers.

33.     Kickflip further represented to Facebook that it had divested the Gambit service.

34.     Facebook relied on those representations to cease its enforcement actions against Kickflip.

35.     On information and belief, unknown to Facebook, Kickflip was taking active steps to continue servicing Facebook developers including through provision to them of the Gambit offerwall and payment service.

36.     On information and belief, as a result of these steps, Kickflip induced further violations by Facebook developers of the Facebook Terms.

37.     Kickflip fraudulently concealed from Facebook its continuing efforts to service Facebook developers in violation of its previous undertakings that it would comply with the cease and desist letter.

38.     Facebook was injured by Kickflip's fraudulent conduct following the issuance of the cease and desist letter, which perpetuated the service of deceptive ads to Facebook users, causing damage to Facebook's reputation and goodwill.

## PRAYER FOR RELIEF

39.     Wherefore, Counterclaimant Facebook, Inc. asks this Court to enter judgment against Kickflip, Inc. and to grant the following relief:

A. A judgment or order declaring Kickflip's conduct as alleged to constitute unlawful inducement to breach of contract.

B. A judgment or order declaring Kickflip's conduct as alleged to constitute unlawful fraud.

C. An award of damages to compensate Facebook for the injury to its reputation and goodwill suffered as a result of Kickflip's unlawful conduct.

D. A permanent injunction prohibiting Kickflip from providing any services to developers relating to applications available to Facebook users through the Facebook Platform.

E. Such other and further relief as this Court or a jury may deem proper and just.

ASHBY & GEDDES

*/s/ Andrew C. Mayo*

_____
Steven J. Balick (#2114)
Tiffany Geyer Lydon (#3950)
Andrew C. Mayo (#5207)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888
sbalick@ashby-geddes.com
tlydon@ashby-geddes.com
amayo@ashby-geddes.com

*Of Counsel:*

Thomas O. Barnett
Jonathan Gimblett
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
(202) 662-6000

*Attorneys for Defendant,
Facebook, Inc.*

Dated:  October 18, 2013