# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KICKFLIP, INC., a Delaware corporation, | |
| *Plaintiff*, | **C.A. NO. 12-1369-LPS** |
| v. | **JURY TRIAL DEMANDED** |
| FACEBOOK, INC., a Delaware corporation, | |
| *Defendant*. | |

### OPENING BRIEF IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS PURSUANT TO RULE 12(b)(6) OF THE <u>FEDERAL RULES OF CIVIL PROCEDURE</u>

Dated: November 12, 2013

Mary B. Matterer (I.D. #2696)
Kenneth L. Dorsney (I.D. #3726)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com
kdorsney@morrisjames.com

Brian R. Strange (*pro hac vice*)
Keith L. Butler (*pro hac vice*)
**STRANGE & CARPENTER**
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055
lacounsel@earthlink.net
kbutler@strangeandcarpenter.com

Derek A. Newman (*pro hac vice*)
Derek Linke (*pro hac vice*)
**NEWMAN DU WORS LLP**
1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800
dn@newmanlaw.com
linke@newmanlaw.com

*Attorneys for Plaintiff*
*Kickflip, Inc., d/b/a Gambit*

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS ......................... 1

III. SUMMARY OF ARGUMENT ........................................................................................... 2

IV.  STATEMENT OF FACTS .................................................................................................. 3

V.   ARGUMENT ....................................................................................................................... 5

    A.  Facebook's claim for inducement to breach of contract fails because it does not allege improper specific intent and does not identify any allegedly breached contracts. ................................................................................................................... 5

    B.  Facebook's fraud claim fails because it does not state with particularity any allegedly false representations of fact and does not allege that Kickflip knowingly made false representations. ............................................................... 6

    C.  Facebook's counterclaims are also barred by the statute of limitations. .............. 9

VI.  CONCLUSION .................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
   910 A.2d 1020 (Del. Ch. 2006) .................................................................................... 6

*ASDI, Inc. v. Beard Research, Inc.*,
   11 A.3d 749 (Del. 2010) ........................................................................................... 6, 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 5, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 5, 6

*Big Apple BMW, Inc. v. BMW of N. Am., Inc.*,
   974 F.2d 1358 (3d Cir. 1992) ....................................................................................... 8

*Brad v. Pettinaro Enters.*,
   870 A.2d 513 (Del. Ch. 2005) .................................................................................... 10

*Burrowes v. Combs*,
   808 N.Y.S.2d 50 (App. Div. 2006) .............................................................................. 8

*Collins & Aikman Corp. v. Stockman*,
   No. 07-265-SLR, 2009 WL 1530120 (D. Del. May 20, 2009) .................................. 11

*Hurst v. State Farm Mut. Auto. Ins. Co.*,
   No. 10-1001-GMS, 2012 WL 426018 (D. Del. Feb. 9, 2012) ................................... 10

*Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*,
   844 F. Supp. 2d 519 (D. Del. 2012) ............................................................................. 6

*McCracken v. Raghbir*,
   No. 02-1482 JJF, 2004 WL 2326378 (D. Del. Oct. 7, 2004) ..................................... 10

*Overdrive, Inc. v. Baker & Taylor, Inc.*,
   No. 5835-CC, 2011 WL 2448209, at *9 (Del. Ch. June 17, 2011) .............................. 6

*Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*,
   683 F.3d 239 (6th Cir. 2012) ........................................................................................ 8

*Robins v. Max Mara, U.S.A., Inc.*,
   923 F. Supp. 460 (E.D.N.Y. 1996) ............................................................................... 8

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ................................................................................................. 9

*Solow v. Aspect Res., LLC*,
   No. Civ.A. 20397, 2004 WL 2694916 (Del. Ch. Oct. 19, 2004) ........................................... 11

*Stephenson v. Capano Dev., Inc.*,
   462 A.2d 1069 (Del. 1983) ..................................................................................................... 9

*Wash. Ave. Assocs. v. Euclid Equip.*,
   229 A.D.2d 486 (N.Y. App. Div. 1996) ................................................................................. 8

*WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*,
   49 A.3d 1168, (Del. 2012) ...................................................................................................... 7

*WP Devon Assocs., L.P. v. Hartstrings, LLC*,
   No. N11C-02-216 JRJ, 2012 WL 3060513 (Del. Super. Ct. July 26, 2012) ........................... 8

## Statutes

Del. Code Ann. tit. 10, § 8106 (West 2008) ................................................................................ 5

## Other Authorities

Restatement (Second) of Torts § 766 (1979) ..................................................................... 6, 7, 8

## Rules

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1, 2, 5

## I.   INTRODUCTION

Kickflip, Inc. ("Kickflip") had a thriving business providing virtual-currency services to developers of games offered on social-game networks like Facebook and was a leader in a fast growing and competitive market. Recognizing the lucrative potential of virtual-currency services, Facebook, Inc. ("Facebook") sought to compete against Kickflip and others by launching its own virtual-currency service called "Credits." Credits was never successful when competing on the merits, so Facebook engaged in a monopolistic course of conduct designed to eliminate other virtual-currency services and install Credits as the only such service available to developers. Since then, Facebook has received billions of dollars that would have otherwise gone to the competition, including Kickflip.

In response to Kickflip's complaint, Facebook now asserts two conclusory and vague counterclaims against Kickflip—for "inducement to breach of contract" and fraud. Facebook's counterclaims fail for multiple reasons. Facebook's counterclaims fail to allege facts rendering plausible key elements of its inducement to breach of contract cause of action. Facebook's fraud claim also fails because it fails to identify the alleged misrepresentations that caused it harm and, where it does identify specific statements, it fails to allege they were false or misleading. Additionally, Facebook's counterclaims run afoul of the applicable statutes of limitations.

## II.   STATEMENT OF THE NATURE AND STAGE OF PROCEEDINGS

Plaintiff Kickflip filed this action against Defendant Facebook on October 26, 2012, alleging attempted monopolization, monopolization, and unlawful tying claims under federal antitrust law and state law claims for tortious interference. (D.I. 1.) On January 4, 2013, Facebook moved to dismiss Kickflip's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 11.) This Court denied Facebook's motion to dismiss on September 27,

2013. (D.I. 23.) On October 18, 2013, Facebook answered Kickflip's Complaint and asserted two counterclaims in response—for inducement to breach of contract and fraud—against Kickflip. (D.I. 31.) Both of the responsive counterclaims are without merit. Kickflip now moves to dismiss Facebook's counterclaims in their entirety pursuant to Rule 12(b)(6).

### III. SUMMARY OF ARGUMENT

Facebook's counterclaims should be dismissed in their entirety for several reasons.

First, Facebook's inducement to breach of contract claim fails to allege facts that support Facebook's assertion that Kickflip intentionally and improperly interfered with its contracts with game developers. Indeed, Facebook does not allege that Kickflip did *anything* improper with the specific intent to cause developers to breach their contracts with Facebook.

Second, Facebook's inducement to breach of contract claim fails to identify *any* third party contract that was actually breached. It is axiomatic that, in order to state a plausible cause of action for inducement to breach of contract, a contract must have actually been breached. Without such basic allegations, a cause of action for inducement to breach of contract cannot lie.

Third, Facebook's fraud claim fails to identify—much less identify with the particularity required by Rule 9—any statement by any person at Kickflip that was fraudulent prior to November 5, 2009. Thus, Facebook's claims for the period before November 5, 2009 fail.

Fourth, Facebook's fraud claim related to statements made after November 5, 2009 fail to allege facts that make plausible that Kickflip's alleged statements were actually false or misleading or that Facebook relied to its detriment thereon.

Fifth, in any event, both of Facebook's counterclaims run afoul of the applicable statutes of limitation and cannot stand.

2

## IV.     STATEMENT OF FACTS

In 2008, Kickflip was a leading virtual-currency services provider in a vibrant market competing for developers' business on quality and pricing. (Compl. (D.I. 1) at 1, 2, 7.) In early 2009, Facebook launched its own virtual-currency service for developers called "Credits." (*Id.* at 8.) Many developers continued to use other virtual-currency services, opting not to use Facebook Credits. (*Id.* at 9.)

In November 2009, just a few months after Credits became available, Facebook's lawyers sent Kickflip a cease-and-desist letter purporting to "ban" Kickflip from offering its virtual-currency services to developers on Facebook. (*Id.* at 10.) Later that month, Facebook published a list of "banned" "monetization providers"—including Kickflip—that Facebook forbade developers from using. (*Id.*) Through this conduct Facebook removed one of the largest competitors to Credits. (*Id.* at 17.)

Facebook makes two counterclaims for "Inducement to Breach of Contract." First, Facebook alleges that Kickflip "induced developers to violate their contractual obligations to Facebook in the period preceding the issuance of Facebook's cease and desist letter on November 5, 2009." (Counterclaim (D.I. 31) ¶ 21.) Second, Facebook alleges that Kickflip "induced developers to violate their contractual obligations to Facebook after the issuance of the cease and desist letter [on November 5, 2009]." (*Id.* ¶ 24.)

In support, Facebook claims that Kickflip "encouraged" developers to use its services (by representing to them that ads it served complied with Facebook Terms) after Kickflip had been notified that some previously served ads were non-compliant. (D.I. 31 ¶¶ 7, 14, 20, 23.) But Facebook does not identify any specific representations Kickflip allegedly made to developers or even which developers Kickflip "encouraged". Facebook specifically alleges that Kickflip made

3

"repeated representations that it would comply with the Facebook Terms." (D.I. 31 ¶ 10.) But those alleged representations were to Facebook, not third-party developers.

Facebook does not identify any third party with whom it had a contract. Nor does it allege that a specific contract was *actually* breached by a third party. (*See id.* ¶ 2 (listing three separate contracts without stating which, if any, were allegedly breached).) Instead, it concludes that "[t]he Facebook Terms constituted a binding contract between Facebook and . . . developers" and that "Kickflip knew, or should have known, that said developers were contractually obliged to comply with the Facebook Terms." (*Id.* ¶¶ 18–19.)

Facebook alleges that, on November 25, 2009, in a posting on its Developer Blog, it notified developers that "applications found utilizing a banned provider [like Kickflip] on [the] Facebook Platform risked enforcement action." (*Id.* ¶ 35.) Facebook does not allege that developers who used Kickflip's services would be in breach of contract, only that they "risked enforcement action." Nor does Facebook allege that any breach actually occurred.

Facebook alleges just three misrepresentations. First, Facebook alleges that Kickflip made false "assurances" before November 5, 2009 that caused Facebook injury. (D.I. 31 ¶¶ 28–31.) But Facebook does not allege that Kickflip's "assurances" were made with Kickflip's knowledge of their falsity, that they were intended to induce Facebook to act in a certain manner, or that Facebook acted in reliance on them. Second, Facebook alleges that on November 9, 2009, Kickflip informed Facebook that it had "discontinued its use of the Facebook website and Platform and will continue to do so until reinstated by Facebook". Third, Facebook alleges that on November 12, 2009, Kickflip informed Facebook that "at least 99% of all Gambit traffic is off of Facebook, and likely 100%." (*Id.* ¶ 13.) Facebook claims that these alleged

4

misrepresentations caused it harm because it "relied on [it] to cease its enforcement actions against Kickflip." (*Id.* ¶ 34.) Facebook does not identify any other harm.

## V. ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint or counterclaim if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient "factual allegations" that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). If the allegations establish nothing more than "the mere possibility of misconduct," they do not establish a plausible claim for relief, and the complaint must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Facebook's counterclaims fail to meet this standard and should be dismissed.

**A.     Facebook's counterclaims are barred by the statute of limitations.**

Claims for inducement to breach of contract and fraud are governed by a three-year statute of limitations. Del. Code Ann. tit. 10, § 8106 (West 2008); *see also Hurst v. State Farm Mut. Auto. Ins. Co.*, No. 10-1001-GMS, 2012 WL 426018, at *7 (D. Del. Feb. 9, 2012); *State* ex re. *Brad v. Pettinaro Enters.*, 870 A.2d 513, 531 (Del. Ch. 2005) (a cause of action for fraud accrues from the time the alleged fraud was perpetrated).

The activities in Facebook's counterclaim all took place in 2009. Facebook did not file its counterclaims until October 18, 2013 (*See* D.I. 30)—almost four years later. Thus, Facebook's counterclaims have expired and should be dismissed with prejudice under the statute of limitations.

**B.    Facebook's claim for inducement to breach of contract fails because it does not allege improper specific intent and does not identify any allegedly breached contracts.**

A claim for tortious interference with contract requires: (1) a contract, (2) about which the defendant knew, (3) an intentional act that is a significant factor in causing the breach of contract, (4) without justification, and (5) which causes injury. *Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 531 (D. Del. 2012); *see also ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749, 751 (Del. 2010) (Delaware courts follow section 766 of the *Restatement (Second) of Torts* in assessing a tortious interference claim.) Facebook's claim fails because it does not allege that Kickflip acted with improper specific intent or improper conduct and fails to identify any allegedly breached contracts.

A complaint or counterclaim must contain sufficient factual allegations to give the opposing party "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp.*, 550 U.S. at 555. Here, Facebook has failed to allege what third-party contracts (if any) were allegedly breached, what third parties (if any) breached those contracts, and what exactly Kickflip allegedly did (if anything) to induce said third parties to breach their contracts with Facebook. Accordingly, Facebook's vague and conclusory allegations fail to state a claim for relief. *See Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006) ("To state a tortious interference claim, a plaintiff must properly allege an underlying breach of contract."); *Overdrive, Inc. v. Baker & Taylor, Inc.*, No. 5835-CC, 2011 WL 2448209, at *9 (Del. Ch. June 17, 2011) (granting motion to dismiss claim for inducement to breach of contract where the complaint "fail[ed] to identify a single contract that has been breached due to defendant's alleged conduct")

6

### 1. Facebook fails to allege that Kickflip acted with improper specific intent or with improper conduct.

A claim for inducement to breach of contract requires a showing that the defendant acted with specific intent to cause third parties to breach their contracts with the plaintiff. *See* Restatement (Second) of Torts § 766 cmt. h (1979) ("The essential thing is the intent to cause the result. If the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other."). Facebook's allegation that Kickflip intended to do some act, that had the result of causing developers to breach their contracts with Facebook, is insufficient pleading. Rather to state a claim Facebook must allege that in acting toward developers, Kickflip intended that its actions would cause developers to breach their contracts with Facebook. *See WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.*, 49 A.3d 1168, 1174 (Del. 2012) (holding that interference with the contract must be the defendant's *sole* motive in order to sustain a tortious interference claim and a mix of proper and improper motives is not sufficient).

An inducement claim also requires allegations of improper conduct—the defendant must have used "'wrongful means' to induce a third party to terminate a contract." *ASDI, Inc.*, 11 A.3d at 751. Facebook does not allege—because it cannot—that Kickflip did anything improper with the specific intent to cause developers to breach their contracts with Facebook. Instead, Facebook advances vague, conclusory, and speculative allegations that have no bearing on Kickflip's intent and identify no improper conduct.

Facebook claims that Kickflip "encouraged" developers to use its services by representing to them that ads it served complied with Facebook Terms. (D.I. 31 ¶¶ 7, 14, 20, 23.) But Facebook fails to identify even one representation that Kickflip made to any developer with a specific improper intent to cause them to breach a contract with Facebook.

7

"Although conditions of a person's mind may be alleged generally, the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012) [1] (quoting *Iqbal*, 556 U.S. at 577 (internal citation and quotation marks omitted)). Facebook does not allege that Kickflip believed it continued to serve non-compliant ads after having been notified of the alleged problem. Nor does Facebook allege that Kickflip intended improperly to hoodwink developers into displaying non-compliant ads in games on Facebook in breach of their purported contracts. At best, Facebook could allege that Kickflip made a mistake—but it cannot plead that Kickflip had the intent to cause developers to breach a contract. Indeed, Facebook concedes that Kickflip intended "that the advertisements it would serve on [developers'] applications would comply with the Facebook Terms." (D.I. 31 ¶ 7.)

### 2. Facebook fails to allege any contract that was actually breached.

In order for a plaintiff to have a cause of action for tortious interference with contract, "it is axiomatic that there must be a breach of that contract…." *Robins v. Max Mara, U.S.A., Inc.*, 923 F. Supp. 460, 468 (E.D.N.Y. 1996) (quotations omitted); *see also Wash. Ave. Assocs. v. Euclid Equip.*, 229 A.D.2d 486, 487 (N.Y. App. Div. 1996) (cause of action for tortious interference with contract cannot lie where "plaintiff merely asserted that the appellant had conversations with [the third party] which caused [the third party] to breach the lease agreement"); *Burrowes v. Combs*, 808 N.Y.S.2d 50, 53 (App. Div. 2006) ("Scant speculation

---

[1] Both New York and Delaware have adopted section 766 of the *Restatement (Second) of Torts*. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1381 (3d Cir. 1992) (noting New York's adoption); *WP Devon Assocs., L.P. v. Hartstrings, LLC*, No. N11C-02-216 JRJ, 2012 WL 3060513, at *3–4 (Del. Super. Ct. July 26, 2012) (where Delaware and Pennsylvania courts both adopted section 766 of the *Restatement*, cases from either state may be persuasive authority).

without the support of relevant facts" is insufficient to state a cause of action for tortious interference with a contract). Facebook does not identify any third party with which it had a contract or specify which contract was allegedly breached. (*See id.* ¶ 2 (listing three separate contracts without stating which, if any, were allegedly breached).)

Nor does Facebook identify the breach that Kickflip allegedly intended to induce. Developers would breach no term in their purported contracts with Facebook merely by using Kickflip's ad service. Developers would breach such terms only if they displayed non-compliant ads. (*See* D.I. 31 ¶¶ 3–6.) Facebook alleges only that developers who used Kickflip's services after the ban "risked enforcement action," not that they would have breached—or actually did breach—any contract with Facebook. (*Id.* ¶ 35.)

**C.      Facebook's fraud claim fails because it does not state with particularity any allegedly false representations of fact and does not allege that Kickflip knowingly made false representations.**

To state a claim for fraud, Facebook must allege facts from which it could be found that: (1) Kickflip made a materially false representation of fact to Facebook; (2) with knowledge of its falsity; (3) Kickflip had an intent to induce Facebook to act or to refrain from acting; (4) Facebook acted in justifiable reliance upon the representation; and (5) Facebook was damaged as a result. *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983). Rule 9(b) requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . ." *See also Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (noting that party alleging fraud "must do more than say that the statements . . . were false and misleading; they must demonstrate with specificity why and how that is so").

A fraud plaintiff fails to plead with particularity where it does not "state the identity of the person who made any fraudulent statement to [the plaintiff], or the time, place, and content of

9

the misrepresentation" *See McCracken v. Raghbir*, No. 02-1482 JJF, 2004 WL 2326378, at *2 (D. Del. Oct. 7, 2004). Facebook claims that Kickflip committed fraud when it "assured" Facebook that "it would comply with the Facebook Terms"[2] before Facebook sent its cease and desist letter on November 5, 2009. (*Id.* ¶ 28.) But Facebook does not identify with particularity who made the alleged misrepresentation, or the "time, place, and content" of the alleged misrepresentation as Rule 9 requires.

Facebook also asserts that Kickflip's response to its November 5, 2009 letter was fraudulent because "Kickflip represented to Facebook that it would comply with the cease and desist letter . . . and that it had taken steps to terminate the provision of its ad service to Facebook publishers." (D.I. 31 ¶ 32.) Facebook claims that it "relied on those representations to cease its enforcement actions against Kickflip." (*Id.* ¶ 34.) Facebook's implication that it had any contractual or other right to undertake "enforcement actions" against Kickflip is misleading, as Facebook and Kickflip never had any contractual relationship related to ads. Facebook's contracts were with game developers. Facebook's only enforcement mechanism was via its contractual relationship with game developers, not Kickflip. As such, Facebook cannot have "relied" on alleged Kickflip misrepresentations in "ceas[ing] its enforcement actions" against a party which it had no right to seek enforcement actions against in the first place. (*Id.*) In addition, Facebook fails to allege that Kickflip's alleged statements were false—a required element of any cognizable claim for fraud. Rather, Facebook claims to have relied to its detriment on statements by Kickflip that, as far as Facebook's pleadings show, were true. (*Id.* ¶¶ 32–38.)

---

[2] This is a quote of Facebook's language from its counterclaim and not any actual statement by Kickflip, as Facebook does not actually allege any pre-November 5, 2009 statement was made by Kickflip.

Additionally, a claim for fraud requires that the defendant had knowledge of the alleged falsity of its statements. *See Collins & Aikman Corp. v. Stockman*, No. 07-265-SLR, 2009 WL 1530120, at *26 n.16 (D. Del. May 20, 2009) (recommending that fraud claim be dismissed where "[p]laintiffs fail[ed] to adequately allege that the . . . Defendants knew they were making false representations"); *Solow v. Aspect Res., LLC*, No. Civ.A. 20397, 2004 WL 2694916, at *2 (Del. Ch. Oct. 19, 2004) (explaining that fraud plaintiff must show that defendant "knew or believed . . . statement [at issue] to be false at the time it was made"). Facebook does not claim that Kickflip knowingly made false assurances it would comply with Facebook's terms.

## VI. CONCLUSION

Facebook's counterclaims are deficient. They all arise from alleged conduct that took place in 2009, which means they've expired under the three-year statute of limitations. Facebook's claim for inducement of breach of contract fails to identify any improper conduct by Kickflip and does not claim any contracts were actually breached. Its claim for fraud is not based on alleged misrepresentations, and which it fails to describe with particularly under the heightened pleading standard. The Court should dismiss Facebook's counterclaims.

Dated: November 12, 2013

                */s/ Kenneth L. Dorsney*
                Mary B. Matterer (I.D. #2696)
                Kenneth L. Dorsney (I.D. #3726)
                **MORRIS JAMES LLP**
                500 Delaware Avenue, Suite 1500
                Wilmington, Delaware 19801
                (302) 888-6800
                mmatterer@morrisjames.com
                kdorsney@morrisjames.com

Brian R. Strange (*pro hac vice*)
Keith L. Butler (*pro hac vice*)
**STRANGE & CARPENTER**
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055
lacounsel@earthlink.net
kbutler@strangeandcarpenter.com


Derek A. Newman (*pro hac vice*)
Derek Linke (*pro hac vice*)
**NEWMAN DU WORS LLP**
1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800
dn@newmanlaw.com
linke@newmanlaw.com

*Attorneys for Plaintiff
Kickflip, Inc., d/b/a Gambit*

12