**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| KICKFLIP, INC.,           ) | |
|                        ) | |
|         Plaintiff,      ) | |
|                        ) | |
|       v.                    ) | C.A. No. 12-1369-LPS |
|                        ) | |
| FACEBOOK, INC.,      ) | |
|                        ) | |
|         Defendant.     ) | |
|                        ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

David E. Ross (Bar No. 5228)
Benjamin J. Schladweiler (Bar No. 4601)
SEITZ ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
dross@seitzcross.com
bschladweiler@seitzcross.com

*Counsel for Defendant Facebook, Inc*

*Of Counsel*:

Thomas O. Barnett
Jonathan Gimblett
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
(202) 662-6000
tbarnett@cov.com
jgimblett@cov.com

*Counsel for Defendant Facebook, Inc.*

Dated:  January 14, 2014

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      PRELIMINARY STATEMENT ..................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................................. 1

III.    SUMMARY OF THE ARGUMENT .............................................................................. 4

IV.     ARGUMENT .................................................................................................................. 5

        A.      Legal Standards .................................................................................................. 5

        B.      Facebook's Compulsory Counterclaims Are Timely. ........................................ 6

                1.      The Counterclaims Relate Back to the Filing of the Complaint. ............... 6

                2.      Kickflip's Fraudulent Concealment Also Tolled the Statute of
                        Limitations. ............................................................................................... 9

        C.      Facebook Sufficiently Pleaded Breach of Contract. ........................................ 11

                1.      Facebook Sufficiently Pleaded the Existence of a Contract. .................... 11

                2.      Facebook Sufficiently Pleaded Breach. ................................................... 12

                3.      Facebook Sufficiently Pleaded Damages .................................................. 13

        D.      Facebook Sufficiently Pleaded Inducement of Breach of Contract. ..................... 14

                1.      Facebook Sufficiently Pleaded Intent. ..................................................... 14

                2.      Facebook Sufficiently Pleaded Breach by a Developer ............................ 15

        E.      Facebook Sufficiently Pleaded Fraud. .............................................................. 16

                1.      Facebook Has Adequately Pleaded a False Representations of Fact
                        by Noah Kagan on May 22, 2009. ........................................................... 16

                2.      Facebook Has Adequately Pleaded a False Representation of Fact
                        by Kickflip on November 6, 2009. ........................................................... 18

V.      CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co.*,
   256 F. Supp. 2d 329 (E.D. Pa. 2003) .......................................................................20

*Albert Einstein Med. Care Found. v. Nat'l Benefit Fund for Hosp. & Health Care Emps.*,
   Civ. A. No. 89-5931, 1991 WL 114614 (E.D. Pa. June 21, 1991) ...........................................6

*Alston v. Parker*,
   363 F.3d 229 (3d Cir. 2004)..................................................................................19

*Artz v. Continental Cas. Co.*,
   720 F. Supp. 2d 706 (E.D. Pa. 2010) .......................................................................19

*Azada v. Carson*,
   252 F. Supp. 988 (D. Haw. 1966) .............................................................................7

*Baker v. Gold Seal Liquors, Inc.*,
   417 U.S. 467 (1974)............................................................................................7

*Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
   296 F.3d 164 (3d Cir. 2002)..................................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................5–6

*Bowl-Mor Co., Inc. v. Brunswick Corp.*,
   297 A.2d 61 (Del. Ch. 1972)................................................................................14

*Brinkmeier v. Graco Children's Prods. Inc.*,
   767 F. Supp. 2d 488 (D. Del. 2011)....................................................................18, 20

*Burger v. Kuimelis*,
   325 F. Supp. 2d 1026 (N D. Cal. 2004) ......................................................................9

*Burlington Indus. v. Milliken & Co.*,
   690 F.2d 380 (4th Cir.1982) ..................................................................................6

*Byrd v. Blue Ridge Rural Elec. Coop., Inc.*,
   356 U.S. 525 (1958)............................................................................................8

*Calloway v. Green Tree Serving, LLC*,
   599 F. Supp. 2d 543 (D. Del. 2009)..........................................................................20

*Canned Foods, Inc. v. United States*,
   140 F. Supp. 771 (Ct. Cl. 1956)..............................................................................7

*Cetel v. Kirwan Fin. Grp., Inc.*,
    460 F.3d 494 (3d Cir. 2006)..................................................................10

*Drazin v. Chavones*,
    C.A. No. 10-cv-01763, 2012 WL 4510738 (E.D. Pa. Sept. 28, 2012) ...................................17

*Eastman Chem. Co. v. AlphaPet Inc.*,
    Civ. A. 09-971-LPS, 2011 WL 5402767 (D. Del. Nov. 4, 2011)....................................11, 13

*Erie R. Co. v. Tompkins*,
    304 U.S. 64 (1938)...............................................................................8, 9

*Federico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007)..................................................................6, 17

*Foman v. Davis*,
    371 U.S. 178 (1962)................................................................................20

*Giordano v. Claudio*,
    714 F. Supp. 2d 509 (E.D. Pa. 2010) ..................................................6, 7, 8

*Hanna v. Plumer*,
    380 U.S. 460 (1965)................................................................................8

*Harmer v. Hulsey*,
    467 A.2d 867 (Pa. 1983) .........................................................................8

*Harrison v. Grass*,
    304 F. Supp. 2d 710 (D. Md. 2004)........................................................6–7

*In re Linerboard Antitrust Litig.*,
    305 F.3d 145 (3d Cir. 2002)....................................................................9

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004)...................................................................17

*Mellon Bank Corp. v. First Union Real Estate Equity and Mortg. Invs.*,
    951 F.2d 1399 (3d Cir. 1991)............................................................17, 19

*Perlmutter v. Salton, Inc.*,
    No. 09-690, 2010 WL 3834040 (D. Del. Sept. 24, 2010)....................................20

*Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*,
    No. 5688-VCS, 2011 WL 549163 (Del. Ch. Feb. 16, 2011) ................................14

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)...................................................................19

*In re Processed Egg Prods. Antitrust Litig.*,
    No. 08-md-02002, 2011 WL 5980001 (E.D. Pa. Nov. 30, 2011)......................................9–10

*Sea Star Line, LLC v. Emerald Equip. Leasing, Inc.*,
    Civ. A. 05-245, 2006 WL 956902 (D. Del. Apr. 13, 2006)........................................................5

*State ex rel. Higgins v. Sourcegas, LLC*,
    No. N11C-7-193, 2012 WL 1721783 (Del. Super. Ct. May 15, 2012) ...................................17

*Sidney v. Superior Court*,
    244 Cal. Rptr. 31 (Cal. Ct. App. 1988) ..................................................................................9

*Tackett v. State Farm Fire & Cas. Ins. Co.*,
    653 A.2d 254 (Del. 1995) ......................................................................................................13

*UbiquiTel Inc. v. Spring Corp.*,
    Civ. A. 1489-N, 2005 WL 3533697 (Del. Ch. Dec. 14, 2005).........................................14, 15

**Statutes**

Del. Code, tit. 10, § 8106(a)...........................................................................................................6

**Other Authorities**

6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1419 (2d ed.1990) ..........................7

Judicial Conf. of the U. S., Report of the Federal Courts Study Committee (Apr. 2, 1990) .......8–9

Restatement (Second) of Torts § 766..................................................................................14, 15

W. Page Keeton, et al., Prosser and Keeton on the Law of Torts 34 (5th ed. 1984) ...................15

Fed. R. Civ. P. 8 .......................................................................................................................5, 11

Fed. R. Civ. P. 9 .....................................................................................................................18, 19

Fed. R. Civ. P. 12 ........................................................................................................................19

Fed. R. Civ. P. 13 ..........................................................................................................................7

## I.      PRELIMINARY STATEMENT

Kickflip's service of deceptive ads on game applications on Facebook's Platform and other social networks in 2009 provoked numerous complaints from misled and dissatisfied consumers.  In the media coverage of the deceptive practices of Kickflip and similar companies, the entire ecosystem was labeled  "Scamville" and Facebook's commitment to protecting its users was questioned.  Facebook repeatedly warned Kickflip over a six-month period that it must stop its noncompliant practices, but to no effect.  As Kickflip later publicly admitted, it continued serving "shady and worthless" ads.  To protect its users from further abuse, Facebook sent Kickflip a cease and desist letter in November 2009 demanding that Kickflip stop its service on Facebook altogether.  Kickflip assured Facebook that it would comply with the letter.  But, in reality, its principals were arranging to carry on as before, by purporting to divest their noncompliant advertising business into a new entity that they created to evade Facebook's enforcement efforts.

Having waited until just prior to the expiration of Delaware's three-year limitations period before filing suit, Kickflip now attempts to shield itself from liability for its past admitted wrongdoing by claiming that Facebook's compulsory counterclaims are time-barred.  The Court should not reward Kickflip for its transparently tactical maneuver.  The majority federal rule is that compulsory counterclaims relate back to the filing of the complaint and Facebook's counterclaims are timely on that basis.  Moreover, as explained below, Facebook has adequately pleaded each of its counterclaims for breach of contract, inducement to breach of contract, and fraud.  The motion to dismiss should be denied in its entirety.

## II.      STATEMENT OF FACTS

This case concerns Facebook's efforts to protect its users from the deceptive ads repeatedly served by Plaintiff Kickflip over a six-month period between April and November

2009.  D.I. 47 ¶¶ 9–15.  Facebook operates a social network that enables users to connect and share information with their friends and family.  D.I. 47 ¶ 1.  Kickflip itself acknowledges that "reputation and trust play an even bigger role [for Facebook] than in most other online media."  D.I. 47 ¶ 7.  Numerous third parties use the Facebook Platform to offer services and applications on Facebook.  D.I. 47 ¶ 1.  As a condition of using the Facebook website and Platform, they are required to agree to a series of terms and policies (collectively, the "Facebook Terms") designed to protect Facebook users from deceptive, misleading, and harmful conduct.  D.I. 47 ¶¶ 2–7.  The Facebook Terms include the Statement of Rights and Responsibilities, Platform Policies, and Advertising Guidelines.  *Id.*  A core directive in those Terms is that developers and operators of applications on Facebook may not mislead users or serve unauthorized and inappropriate adult content, such as promotions for adult products, gambling, or tobacco.  *Id.*

In 2009, Kickflip operated an advertising service under the trade name "Gambit" for application developers, including those with applications available on the Facebook Platform.  D.I. 47 ¶ 8.  Among other things, Kickflip served ads that promised Facebook users rewards in return for accepting an offer, completing a survey, or purchasing a subscription.  *Id.*  Kickflip actively solicited developers with applications available on Facebook Platform, including Zynga, to display such ads.  *Id.*  Prior to November 5, 2009, at the earliest, Kickflip also used the Facebook website and Platform and was subject to the Facebook Terms.  *Id.*

In April 2009, a regulator complained to Facebook about deceptive ads that were being served on Facebook Platform applications by Kickflip and others.  D.I. 47 ¶ 9.  Facebook promptly brought these ads to Kickflip's attention and requested that it take corrective action.  *Id.*  Over the next several months, Facebook repeatedly notified Kickflip of ads that it had served on Facebook's Platform that violated the Facebook Terms.  D.I. 47 ¶ 10.

In response to Facebook's notices, Kickflip repeatedly stated that it would comply with the Facebook Terms.  D.I. 47 ¶ 11.  On May 22, 2009, for example, Nick Kagan, a Kickflip principal, emailed Nick Gianos, a Facebook employee, stating that none of the ads with offers served by Kickflip on Facebook contained adult content.  *Id.*  But Kickflip continued to serve ads that violated the Facebook Terms.  *Id.*  Indeed, Kickflip later publicly admitted that it had been serving "higher risk ads" that were "shady and worthless in the long term" in order to "supply a demand from some of [its] developer clients" and despite receiving numerous user complaints. D.I. 47 ¶ 14.

In early November 2009, after a spate of high profile news articles criticizing deceptive ads on Facebook and other social networks, Facebook escalated its response and sent Kickflip and other providers of deceptive ads a notice that all violations had to be corrected within the following week.  D.I. 47 ¶¶ 12–13.  Despite this clear warning, Kickflip continued to serve ads with offers that violated the Facebook Terms.  D.I. 47 ¶ 13.

On November 5, 2009, Facebook sent Kickflip a cease-and-desist letter informing it that it was no longer authorized to access the Facebook website, use the Facebook Platform, advertise on Facebook, or use any of the services offered by Facebook.  D.I. 47 ¶ 16.  The next day, Kickflip represented to Facebook that it was taking measures to comply with the letter and would be in full compliance by November 9, 2009.  *Id.*  On November 9, 2009, Kickflip informed Facebook that it had removed all its advertisements and applications from Facebook and "discontinued its use of the Facebook website and Platform and would continue to do so until reinstated by Facebook."  *Id.*   And on November 12, 2009, Kickflip represented to Facebook that it had "divested itself of the Gambit service and brand which is now exclusively owned by Gambit."  D.I. 47 ¶ 19.  Simultaneously, however,  Kickflip's principals were telling developers

that the Gambit service had been "100% compliant" with the Terms and had not been banned by Facebook.  D.I. 47 ¶ 17.

As a result of limited discovery ordered by this Court, it has come to light that the company to which Kickflip divested Gambit was an entity with the same shareholders and officers as Kickflip, newly incorporated by Kickflip's principals shortly after receiving Facebook's cease-and-desist letter in order to continue serving ads with offers on Facebook. D.I. 47 ¶ 19.  Moreover, Kickflip continued during a transitional period to serve ads on behalf of the new entity to Facebook developers that had not yet moved their business to the new entity. *Id.*

On October 26, 2012, Kickflip filed a Complaint asserting federal antitrust claims and state law claims for tortious interference arising from alleged injury to the Gambit business. D.I. 1.  On October 18, 2013, Facebook answered Kickflip's Complaint and filed counterclaims arising out of the same facts that form the basis of Kickflip's Complaint.  D.I. 31.  On December 3, 2013, Facebook filed an Amended Answer and Counterclaims.  D.I. 47.  On December 31, 2013, Kickflip moved to dismiss Facebook's counterclaims (the "Counterclaims").  D.I. 49.

III.    **SUMMARY OF THE ARGUMENT**

First, Facebook's Counterclaims are timely because they relate back to the filing of the complaint.  Failure to apply this rule in this case would reward Kickflip for its tactical delay in sitting on its claims until just before the statute of limitations purportedly expired.

Alternatively, Kickflip's fraudulent concealment tolled the statute of limitations for claims accruing after November 9, 2009.  Kickflip assured Facebook that it would comply fully with the cease and desist letter by that date.  In reality, its principals arranged to carry on their business as before by moving it into a new entity they had set up for the purpose.

Second, Facebook has more than adequately pleaded all elements of each of its

counterclaims.

*Breach of contract*.  Contrary to Kickflip's suggestion, there is no heightened pleading standard for this cause of action.  Facebook's allegations amply satisfy Rule 8's requirement for a short and plain statement that gives Kickflip fair notice of its contract with Facebook and the terms that Kickflip violated.

*Inducement to breach of contract*.  Facebook's allegation that Kickflip knew that there was a substantial certainty that its actions would cause one or more game developers to breach their contracts with Facebook is more than sufficient to state a claim.  Kickflip's assertion that Facebook failed to plead a contract that was breached ignores Facebook's relevant allegations, and allegations of specific intent are not required for this claim.

*Fraud*.  Facebook pleaded fraud with sufficient particularity.  Kickflip again misstates the relevant legal standards by suggesting that the exact words of a false statement must be quoted and that a statement of present intention about future action can never be fraudulent.  Facebook alleged (i) the identity of Kickflip personnel who made false statements; (ii) the content of those statements; and (iii) facts rendering plausible that the Kickflip personnel knew the statements were false at the time.  Moreover, Kickflip cannot prevail on a motion to dismiss by contradicting Facebook's allegations with counter-allegations of its own.

## IV.    ARGUMENT

### A.    Legal Standards

In evaluating a motion to dismiss, the allegations of the complaint or counterclaim are taken as true, and all reasonable inferences must be drawn in the non-moving party's favor.  *See Sea Star Line, LLC v. Emerald Equip. Leasing, Inc.*, Civ. A. 05-245, 2006 WL 956902, at *1 (D. Del. Apr. 13, 2006).  Under *Bell Atlantic Corp. v. Twombly*, a plaintiff must plead "enough factual matter (taken as true) to" plausibly state a claim.  550 U.S. 544, 556 (2007).  "Asking for

plausible grounds to infer [a claim] does not impose a probability requirement at the pleading stage[.]" *Id.* Fraud must be plead with particularity sufficient to put defendant on notice of claim. *See Federico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

### B. Facebook's Compulsory Counterclaims Are Timely.

Kickflip's argument that the statute of limitations bars Facebook's counterclaims fails for two reasons. First, Facebook's counterclaims are compulsory counterclaims that relate back to the filing of the Complaint in this action. Second, and independently, Kickflip's fraudulent concealment tolled the statute of limitations for claims accruing after November 9, 2009.

### 1. The Counterclaims Relate Back to the Filing of the Complaint.

The timeliness of Facebook's Counterclaims should be determined as of the filing of the Complaint in this action on October 26, 2012, to which the Counterclaims relate back. Each of the three counterclaims was timely as of that date.[1]

As a federal court in this Circuit recently noted, "the majority [federal] view is that 'the institution of plaintiff's suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim.'" *Giordano v. Claudio*, 714 F. Supp. 2d 508, 522–23 (E.D. Pa. 2010) (quoting *Albert Einstein Med. Care Found. v. Nat'l Benefit Fund for Hosp. & Health Care Emps.*, Civ. A. No. 89-5931, 1991 WL 114614, at *11 (E.D. Pa. June 21, 1991)); *see also Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982) (filing of complaint tolls statute of limitations on compulsory counterclaims). This includes compulsory counterclaims based on state law. *See Giordano*, 714 F. Supp. 2d at 522 (applying relation back to state common law claims); *Harrison v. Grass*, 304 F. Supp. 2d 710, 713 (D. Md. 2004)  (applying

---

[1] Kickflip concedes that the Counterclaims arose in November 2009.  D.I. 50 at 6-7.  Delaware applies a three-year statute of limitations to claims for breach of contract, inducement to breach of contract and fraud.  Del. Code, tit. 10, § 8106(a).

relation back to state common law claim under supplemental jurisdiction).

A counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). "Transaction or occurrence" is read "broadly to include 'a series of occurrences if they have a logical connection.'" *Giordano*, 714 F. Supp. 2d at 522 (quoting *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 468 n.1 (1974)). Here, Facebook's counterclaims are compulsory because, like the claims in the Complaint, they arise from the ads run by Kickflip and Facebook's response to those ads. *Compare* D.I. 47 ¶ 12–19 (alleging that Kickflip ran deceptive ads resulting in Facebook banning Kickflip) *with* D.I. 1 ¶¶ 43–51 (allegations related to Facebook banning Kickflip over scammy ads).

As *Giordano* recognized, it makes sense for compulsory counterclaims to relate back to the filing of a complaint because any other rule would allow plaintiffs to try to game the system by delaying bringing suit until just before the statute of limitations expired. *Giordano*, 714 F. Supp. 2d at 523 ("The suspension or tolling of the statute of limitations for compulsory counterclaims 'precludes plaintiff . . . from delaying the institution of the action until the statute has almost run on defendant's counterclaim so that it would be barred by the time defendant advanced it . . .', and does not prejudice the plaintiff, who 'presumably has notice at the time the action is commenced of any counterclaim arising out of the same transaction as the main claim.'") (quoting 6 C. Wright & A. Miller, *Federal Practice and Procedure* § 1419, at 235–36 (2d ed.1990)).[2]

---

[2] *See also Azada v. Carson*, 252 F. Supp. 988, 989 (D. Haw. 1966) (holding that the relation back rule "will also have the beneficial effect of tending to discourage the filing of frivolous claims just before the running of the statute of limitations"); *Canned Foods, Inc. v. United States*, 140 F. Supp. 771, 772 (Ct. Cl. 1956) ("The opposite rule would tend to encourage tactical maneuvers, such as the plaintiff waiting till the last minute to file his petition.").

The instant case presents a textbook example of the sort of tactical maneuvering that relation back is designed to deter.  Although Facebook ordered Kickflip to cease using the Facebook Platform in November 2009, Kickflip waited almost three years until shortly before the Delaware statute of limitations was due to expire to file the case—such that Facebook's answer was due only after the statute of limitations would have run on Facebook's Counterclaims.  Accordingly, Kickflip's complaint tolled the statute of limitations on the Counterclaims.[3]

Kickflip wrongly assumes that state law governs whether the statute of limitations on Facebook's counterclaims was tolled by the filing of the Complaint.  D.I. 50 at 7.  The Court has the discretion not to apply state substantive law pursuant to the *Erie* doctrine where a countervailing federal interest is implicated and the application of federal law would serve *Erie*'s "twin aims" of "discouragement of forum-shopping and avoidance of inequitable administration of the laws."  *Hanna v. Plumer*, 380 U.S. 460, 472 (1965) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 74–75 (1938)); *see also Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525 (1958) (holding that court should consider countervailing federal interests in applying *Erie*).  Indeed, the *Giordano* court disregarded contrary Pennsylvania state law to hold the state law counterclaim at issue in the case tolled pursuant to the majority federal rule.  *Compare Giordano*, 714 F. Supp. 2d at 522–23, *with Harmer v. Hulsey*, 467 A.2d 867, 869 (Pa. 1983) (holding compulsory counterclaim seeking affirmative did not relate back).

In this instance, applying federal law serves the federal interest in conserving the resources of the federal court system.  *See, e.g.*, Judicial Conf. of the U. S., Report of the Federal

---

[3] If the Court takes a different view, it should grant Facebook leave to amend to assert its counterclaims defensively as claims in recoupment, which Kickflip does not contend would be barred by the statute of limitations.  D.I. 50 at 7-8.

Courts Study Committee 6, 89 (Apr. 2, 1990) (recommending measures, including avoidance of

unnecessary litigation, to address the "crisis . . . caused by unabated rapid growth in case filings"

in federal court).  Allowing plaintiffs to wait until the end of the limitations period to bring suit

in order to avoid state law counterclaims based on the same transactions and conduct creates an

incentive for prospective defendants to assert preemptively potential counterclaims that they

would otherwise let lie in the absence of an affirmative suit by a prospective plaintiff.  Moreover,

in view of the tactical nature of Kickflip's decision to sue in Delaware rather than California

where the underlying events occurred[4] and its unfair consequences, the application of federal law

in this case serves, rather than hinders, *Erie*'s objectives of discouraging forum shopping and

avoiding inequitable administration of the laws.

> **2.    Kickflip's Fraudulent Concealment Also Tolled the Statute of
> Limitations.**

Even if Kickflip's Counterclaims do not relate back to the filing of the Complaint, the

Court should hold the applicable statutes of limitations tolled by reason of fraudulent

concealment as to any claim accruing after November 9, 2009.  *See In re Linerboard Antitrust*

*Litig.*, 305 F.3d 145, 160 (3d Cir. 2002) ("[I]t is well established that the doctrine of fraudulent

concealment tolls the limitation period when a plaintiff's cause of action has been obscured by

the defendant's conduct.").

"To invoke equitable tolling through fraudulent concealment at the pleading stage—to

state a claim of fraudulent concealment, as it were—a plaintiff must allege particularized facts

---

[4] Under California state  law, "the commencement of an action by a plaintiff tolls the statute of
limitations for any counterclaims that 'arise out of the same occurrence' as the allegations of the
complaint." *Burger v. Kuimelis*, 325 F. Supp. 2d 1026, 1045 (N.D. Cal. 2004) (citing *Sidney v.
Superior Court*, 244 Cal. Rptr. 31 (Cal. Ct. App. 1988)).  Accordingly, Kickflip could not have
argued that Facebook's counterclaims were time-barred if it had sued in California on the eve of
the expiration of the limitations period.

sufficient to suggest '(1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts.'" *In re Processed Egg Products Antitrust Litig.*, No. 08-md-02002, 2011 WL 5980001, at *3 (E.D. Pa. Nov. 30, 2011) (quoting *Cetel v. Kirwan Fin. Grp, Inc.*, 460 F.3d 494, 509 (3d Cir. 2006)).

Kickflip misled Facebook in a letter of November 6, 2009, which stated that it expected to be in full compliance with Facebook's cease-and-desist letter by November 9, 2009. D.I. 47 ¶16. In reality, however, Kickflip continued to serve ads to developers after November 9, 2009, on behalf of the new entity to which Kickflip's principals had transferred the Gambit business in an agreement that Facebook only learned about in October 2013. D.I. 47 ¶ 19; *see also* D.I. 28 (Letter from Kenneth L. Dorsey to the Hon. Leonard Stark (Oct. 14, 2013)).[5]

Facebook could not recognize that it had valid claims until it learned during the course of this litigation that Kickflip's divestment was to a new entity established by Kickflip's principals with the intention of carrying on the Gambit business as before and that Kickflip continued to serve ads to Facebook developers on behalf of the new entity after November 9, 2009.[6] Since this information about the relationship between Kickflip and Gambit Labs was within the exclusive possession of Kickflip's and Gambit Labs' principals, Facebook's ignorance is not attributable to its lack of diligence. *See* D.I. 47 ¶ 19.

---

[5] As detailed in Facebook's Motion for Summary Judgment for Lack of Standing, discovery has revealed that the transfer to Gambit Labs, Inc. was effected by an agreement of November 9, 2009, the very day by which Kickflip had promised to be in compliance. D.I. 55 at 3-4; D.I. 56, Ex. 9.

[6] Kickflip's continued service of deceptive ads after November 9, 2009, supports claims for fraud and inducement to breach of contract independent of the previous conduct addressed in Facebook's cease-and-desist letter.

Because Kickflip's fraudulent concealment tolls the statute of limitations, Facebook's counterclaims accruing after November 9, 2009 are timely.

### C.     Facebook Sufficiently Pleaded Breach of Contract.

Contrary to Kickflip's assertion, the Counterclaims more than sufficiently plead the elements of a claim for breach of contract.

#### 1.     Facebook Sufficiently Pleaded the Existence of a Contract.

There is no basis for Kickflip's attempt to impose a heightened pleading requirement to this cause of action.  *See* D.I. 50 at 8–9 (suggesting that Facebook was required to allege "how Kickflip could have agreed to [its] policies," "why Facebook has the unilateral right to impose its policies or a third party," and that Kickflip clicked "I agree.").  Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.  *See Eastman Chem. Co. v. AlphaPet Inc.*, Civ. A. 09-971-LPS, 2011 WL 5402767, at *11 (D. Del. Nov. 4, 2011) (report and recommendation adopted, Civ. A. 09-971-LPS, 2011 WL 6148637, at *1 (D. Del. Dec. 9, 2011) (rejecting defendant's attempt to "impose a heightened pleading burden on Plaintiff" on breach of contract claim as inconsistent with Rule 8)); *id.* at *8 ("Under Rule 8, even if a complaint is somewhat 'lacking in specificity,' that is not a reason to dismiss the complaint, unless that lack of specificity deprives the defendants of fair notice of the claim itself.").

Facebook's allegations amply satisfy the Rule 8 requirement.  The Counterclaims include detailed allegations concerning the content of the Facebook Terms to which users "are required to agree . . . as a condition of their use of Facebook's services."  D.I. 47 ¶ 2.  The Counterclaims also explicitly allege that "[p]rior to November 9, 2009, Kickflip used the Facebook website and Platform and was subject to the Facebook Terms."  D.I. 47 ¶ 8.  That allegation is substantiated by Kickflip's assertion on November 9, 2009, that it had "discontinued its use of the Facebook

website and Platform" and had "removed all its advertisements and applications from Facebook."   D.I. 47 ¶ 16.

Read together, and according Facebook the benefit of all reasonable inferences, the Counterclaims more than plausibly allege that Kickflip was a user, advertiser, and operator of applications on Facebook prior to November 9 and, as such, had agreed to the applicable Terms.[7]

## 2. Facebook Sufficiently Pleaded Breach.

Paragraph 3 of the Counterclaims alleges that the Statement of Rights and Responsibilities made the Platform Policies and Advertising Guidelines applicable to developers and operators of applications on Facebook.  The specific provisions of the Advertising Guidelines and Platform Policies applicable to Kickflip—at a minimum[8]—as an operator of an application on Facebook are alleged in paragraphs 5 and 6.  Under the Advertising Guidelines, Kickflip was prohibited from misleading Facebook users, promoting gambling without authorization from Facebook, and promoting alcoholic beverages in violation of Facebook's specific guidelines.  D.I. 47 ¶ 5.  Under the Platform Policies, Kickflip was prohibited from "confus[ing], mislead[ing], surpris[ing], or defraud[ing] anyone" and from providing advertising content referencing alcoholic beverages or gambling.  D.I. 47 ¶ 6.

Paragraph 10 of the Counterclaims contains specific examples of ads provided by Kickflip that allegedly violated those provisions.  A first example (reproduced in figure 1 to the Amended Counterclaims) purported to award in-game currency if the user paid "'just $4.95 for shipping and handling' to receive the advertiser's product.  Users who accepted the offer,

---

[7] In its Complaint, Kickflip also alleges that it began developing social games soon after the launch of the Facebook Platform in 2007.  D.I. 1 ¶ 36.  The Court could reasonably infer from this admission that Kickflip was also subject to the Facebook Terms applicable to developers.

[8] *See supra* note 7.

however, subsequently received a 'continuity program' bill for Can$89.95 every month."  D.I. 47 ¶ 10.  The Court may reasonably infer that this ad violated the prohibition on misleading Facebook users.  Similarly, the Counterclaims specifically allege two further examples of ads that promoted gambling and alcohol in violation of the Facebook Terms.  *Id.*[9]  The Counterclaims also quote from a Kickflip blog post acknowledging that Kickflip served deceptive ads on the Facebook Platform.  D.I. 47 ¶ 14.

Again, there is no basis for Kickflip's suggestion that Facebook was required to allege how Kickflip's misconduct related to the particular use it was making of the Facebook website and Platform.  D.I. 50 at 9.  Facebook's detailed allegations of contractual provisions applicable to Kickflip as a user, advertiser and operator of applications, together with examples of ads provided by Kickflip that violated those provisions, is more than sufficient to meet Facebook's pleading burden.  *See Eastman Chem. Co.*, 2011 WL 5402767, at *8.  Facebook should be entitled to discover additional examples of Kickflip's deceptive and noncompliant ads, of which Kickflip alone—as the company that served the ads—has the requisite evidence.

### 3.    Facebook Sufficiently Pleaded Damages.

Under Delaware law, the non-breaching party can recover "those damages that arise naturally from the breach or that were reasonably foreseeable at the time the contract was made." *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 265 (Del. 1995).

Kickflip expressly acknowledged that "Facebook is a social destination where reputation and trust play an even bigger role than in most other online media."  D.I. 47 ¶ 7 (quoting

---

[9] *See* D.I. 47 ¶ 10 (fig. 2) (inviting users to "Play Bingo and win prizes!"); *id.* (fig. 3) (asking users whether they "Like Whiskey?  Canadian Club or Crown Royal?").

Kickflip).[10]  Contrary to Kickflip's assertion in its motion, therefore, there is nothing speculative about Facebook's claim to have suffered harm as a result of Kickflip's service of deceptive ads. D.I. 50 at 10.  Bad press coverage, user complaints, loss of reputation and goodwill, and attendant financial harm were the natural and reasonably foreseeable result of Kickflip's repeated misconduct.[11]

### D. Facebook Sufficiently Pleaded Inducement of Breach of Contract.

Kickflip's argument that the Counterclaims fail adequately to plead inducement to breach of contract misstates the relevant legal standards and ignores key allegations.

### 1. Facebook Sufficiently Pleaded Intent.

To state a claim for inducement of breach of contract, the plaintiff must plead "an intentional interference inducing or causing a breach or termination of the relationship."  *Bowl-Mor Co., Inc. v. Brunswick Corp.*, 297 A.2d 61, 65 (Del. Ch. 1972).   That requirement is met by alleging an interference that is "incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action."  *See UbiquiTel Inc. v. Spring Corp.*, Civ. A. 1489-N, 2005 WL 3533697, at *6 (Del. Ch. Dec. 14, 2005) (quoting Restatement (Second) of Torts § 766 cmt. j (1979)).

The Counterclaims amply satisfy that standard.  Facebook alleged that Kickflip knew that it was serving non-compliant ads.  *See, e.g.*, D.I. 47 ¶ 9 (Facebook first notified Kickflip of non-

---

[10] *See also id.* ("[Facebook is] also a communication platform where people easily spread messages about their experiences with thousands—or even millions—of other users via their networks and community forums, magnifying the importance of reputation.")  (quoting Kickflip).

[11] For the same reasons, Facebook's damages are "a natural and proximate consequence" of Kickflip's misconduct, not damages arising "by reason of special circumstances or conditions." *Pharm. Prod. Dev., Inc. v. TVM Life Sci. Ventures VI, L.P.*, No. 5688-VCS, 2011 WL 549163, at *6 (Del. Ch. Feb. 16, 2011).  As such, Facebook was under no burden to plead its damages with particularity.

compliant ads in April 2009).[12]  Facebook further alleged that Kickflip knew that the non-compliant ads placed the developers on whose applications the ads appeared in violation of their contractual obligations to Facebook.  D.I. 47 ¶ 11.  And it alleged that Kickflip knew it had insufficient safeguards in place and therefore "that there was a substantial certainty that, by using the Gambit service, some of those developers would breach their contractual obligations to Facebook."  D.I. 47 ¶ 28.  Based on these allegations, Facebook should be permitted to obtain discovery about Kickflip's communications with third parties, including customers, about its knowledge of and compliance with the Facebook Terms.

Kickflip's assertion that specific intent is an element of a claim for inducement of breach of contract misstates the law.[13]  In *UbiquiTel*, for example, the Court of Chancery specifically rejected a party's assertion "that the requisite intent is an act taken 'with the *specific intent* to harm . . . contractual relations[.]'"   2005 WL 3533697, at *6.  The Court held instead that the plaintiff need only allege that the defendant "knew 'an injury [was] certain or substantially certain to occur as a result of his action.'"  *Id.*  The Counterclaims do precisely that.

### 2.      Facebook Sufficiently Pleaded Breach by a Developer.

Kickflip is simply wrong in its assertion that the Counterclaims fail to identify any developer who breached the Terms as a result of Kickflip's inducements.  Paragraph 8 of the

---

[12] *See also id.* ¶ 10 ("Over the months, Facebook repeatedly brought to Kickflip's attention numerous further ads that Kickflip had served on applications available through Facebook Platform that were deceptive or otherwise violated the Facebook Terms.").

[13] Kickflip's authority does not support its claim.  The section of the Restatement that Kickflip cites, D.I. 50 at 11, includes conduct where the tortfeasor "knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) of Torts § 766 cmt. j.  Likewise, Prosser and Keeton define "intent" to include actions taken knowing "that given consequences are substantially certain to result from the act."  W. Page Keeton, et al., Prosser and Keeton on the Law of Torts 34 (5th ed. 1984).

Counterclaims alleges several examples of developers that were solicited by Kickflip to run the

Gambit service, including Zynga. Paragraph 13 of the Counterclaims alleges that Kickflip

continued to serve non-compliant ads in the week following October 29, 2009 and that the non-

compliant ads "*included ads served by Kickflip on the Zynga game Yoville*" (emphasis added).

Given Facebook's separate allegation that developers serving Kickflip's non-compliant ads were

in violation of their contractual obligations to Facebook, D.I. 47 ¶ 11, the Counterclaims plainly

allege a specific instance of breach by a developer resulting from Kickflip's inducements.

Again, Kickflip alone has knowledge of and records relating to the developers with which it did

business and on whose games it served noncompliant ads.

> **E. Facebook Sufficiently Pleaded Fraud.**

Kickflip's attempts to find defects in Facebook's pleading of its fraud claim are equally

ill-founded. As an initial matter, Kickflip's assertion that the Counterclaims fail to allege who

made false statements and when those statements were made is patently incorrect. Paragraph 11

of the Counterclaims alleges a false statement by Noah Kagan, one of Kickflip's principals, on

May 22, 2009 in an email to a Facebook employee. Paragraphs 16 and 41 allege a further false

statement by Kickflip, in a letter from its counsel to Facebook's outside counsel on November 6,

2009. Kickflip's attempt to find shortcomings in both allegations is unpersuasive and should be

rejected by the Court.

> **1. Facebook Has Adequately Pleaded a False Representations of Fact by Noah Kagan on May 22, 2009.**

Facebook alleges that Kagan's May 22, 2009 representation to Facebook that none of the

ads with offers served by Kickflip contained adult content was false in view of Kickflip's

subsequent conduct. D.I. 47 ¶ 11.

Kickflip first quibbles that the Counterclaims do not quote the actual language used by

Mr. Kagan in his May 22 statement. D.I. 50 at 13. But actual language is not required. Rather,

a pleading need only contain "sufficient particularity to place the defendant on notice of the

'precise conduct with which [it is] charged.'" *Federico v. Home Depot*, 507 F.3d 188, 200 (3d

Cir. 2007) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)); *see also Drazin*

*v. Chavones*, C.A. No. 10-cv-01763, 2012 WL 4510738, at*3 (E.D. Pa. Sept. 28, 2012) (plaintiff

need only plead the "general content of the misrepresentation," so long as it places defendant on

notice).[14] Facebook's allegations, which include the speaker (Nick Kagan), the recipient (Nick

Gianos), the date (May 22, 2013), the means (e-mail), and a summary of the relevant content,

amply meet that standard. D.I. 47 ¶ 11.

Next, Kickflip asserts that a promise about future conduct cannot support a fraud claim.

But it is well-established that a "statement of present intention which is false when uttered may

constitute a fraudulent misrepresentation of fact." *Mellon Bank Corp. v. First Union Real Estate*

*Equity and Mortgage Invs.*, 951 F.2d 1399, 1410–11 (3d Cir. 1991). The Counterclaims

adequately plead that element by alleging that Kagan's assurance was "false or misleading

because Kickflip continued serving deceptive ads, ads with adult content, or ads that were

otherwise in violation of the Facebook Terms." D.I. 47 ¶ 38.

Finally, Kickflip argues that the Counterclaims fail to allege that the May 2009

representation was made with knowledge of its falsity. But the Counterclaims contain ample

---

[14] Kickflip's reliance on *State ex rel. Higgins v. Sourcegas, LLC*, No. N11C-7-193, 2012 WL
1721783 (Del. Super. Ct. May 15, 2012), for the proposition that Facebook must plead the
"actual language" is misplaced. First, *Higgins* is a Delaware state court case and was construing
Delaware state law—not federal procedural law. Second, *Higgins* dealt with the Delaware False
Claims Act—not common law fraud. *Id.* Third, *Higgins* did not state that "actual language"
must be plead, only the "precise contents" must be plead. *Id.* Facebook satisfied that standard.

allegations from which such knowledge may reasonably be inferred.  For example, Facebook

alleges that "Kickflip knew that it had insufficient safeguards in place to prevent Gambit from

continuing to serve ads in violation of the Facebook Terms."  D.I. 47 ¶ 28.  And it quotes a

Kickflip blog post on or around November 4, 2009, admitting that Kickflip "had been serving

'higher risk' ads" to "supply a demand from some of [its] developer clients."  D.I. 47 ¶ 14.  Even

after Facebook's cease-and-desist letter, Kickflip was telling customers that it was "100%

compliant" and not banned from Facebook.  D.I. 47 ¶ 17.  These allegations are more than

sufficient to render plausible that Kickflip had no intention of stopping the flow of ads with adult

and other non-compliant content when Kagan made his statement on May 22, 2009.  *See*

*Brinkmeier v. Graco Children's Prods. Inc.*, 767 F. Supp. 2d 488, 492 (D. Del. 2011) (in fraud

claim, "malice, intent, knowledge, and other conditions of a person's mind may be alleged

generally"); *see also Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296

F.3d 164, 172–73 (3d Cir. 2002) (holding Rule 9(b) met because complaint "inject[s] precision

and some measure of substantiation into their allegations of fraud").

### 2.    Facebook Has Adequately Pleaded a False Representation of Fact by Kickflip on November 6, 2009.

Facebook alleges that Kickflip's representation that it was taking measures to comply

with the cease and desist letter and expected to be in full compliance by November 9, 2009, was

false because Kickflip was not taking measures to clean up its ad service.  Instead, Kickflip's

principals were arranging to transfer the Gambit business to a new entity with the same

shareholders and officers as Kickflip, and to have Kickflip continue to serve the same ads on

behalf of that entity to Facebook developers during a transitional period.  D.I. 47 ¶¶ 16, 19, 44.

Kickflip asserts that the November 6, 2009, statement was a promise, not a representation

about a present material fact.  D.I. 50 at 15.  But that argument is no more availing here than it

was with regard to the May 22, 2009 statement.  The Counterclaims allege that the present intention conveyed in the November 6, 2009 letter was false when uttered because, far from complying with the cease and desist letter, Kickflip's principals were planning to carry on as before with Kickflip serving ads on a transitional basis to clients who had not yet switched to their new entity.  D.I. 47 ¶ 19.  Under *Mellon Bank*, that is sufficient to constitute a fraudulent misrepresentation of fact.  951 F.2d at 1410–11.

Next, Kickflip states that, notwithstanding the Counterclaims' clear allegation to the contrary, D.I. 47 ¶ 43, "Facebook did not rely on any false representations."  D.I. 50 at 16.  In support, Kickflip simply makes a counter allegation:  That there was no contractual relationship between Facebook and Kickflip regarding ads and that therefore Facebook had already taken all possible enforcement action against Kickflip.  It is well-established, however, that a party cannot prevail on a Rule 12(b)(6) motion merely by contesting the factual allegations made by the non-moving party.  *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("[O]n a Rule 12(b)(6) motion, the facts alleged must be taken as true[.]").  The appropriate vehicle for sorting out factual disputes is discovery.  *Artz v. Continental Cas. Co.*, 720 F. Supp. 2d 706, 715 (E.D. Pa. 2010) (holding that plaintiff "provided a sufficient factual basis showing that she is entitled to relief" and that "[i]f more facts are necessary to resolve or clarify the disputed issues, the parties may avail themselves of the civil discovery mechanisms under the Federal Rules"); *see also Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (same).

Finally, Kickflip incorrectly states that Facebook's allegation that Kickflip continued to serve ads is insufficient under Rule 9(b) because it is made "on information and belief."  D.I. 50 at 15–16.  It is well-established that "[p]leading based upon information and belief is permitted under Rule 9(b) when essential information lies uniquely within another party's control,"

19

provided that "the pleading [sets] forth the specific facts upon which the belief is reasonably based." *Brinkmeier*, 767 F. Supp. 2d at 496. The factual basis for the allegation in paragraph 17 of the Counterclaims that Kickflip continued to serve ads is in the next paragraph. D.I. 47 ¶ 18 ("Facebook received numerous inquiries from developers that were confused by Kickflip's communications and that sought clarification on whether they could use the Gambit service."). Likewise, the factual basis for the allegation in paragraph 19 that Kickflip continued to serve developers in transition is in the next sentence. D.I. 47 ¶ 19 ("Only in October 2013 did Kickflip partially disclose the arrangement effecting the transfer of its business, including Kickflip's continuing role in providing the Gambit service to developers during a transitional period.").

## V.      CONCLUSION

For the foregoing reasons, the Court should deny Kickflip's motion to dismiss Facebook's counterclaims.[15]

---

[15] In the event that the Court finds that Facebook failed to state a claim, Facebook requests leave to amend. Leave to amend is within the discretion of the court, but should be "freely given" absent "unusual circumstances" such as undue delay, bad faith, prejudice, or futility. *Air Prods. and Chems., Inc. v. Eaton Metal Prods. Co.*, 256 F. Supp. 2d 329, 331–32 (E.D. Pa. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Kickflip cites *Perlmutter v. Salton, Inc.*, No. 09-690, 2010 WL 3834040, at *5 (D. Del. Sept. 24, 2010), for the proposition that dismissal with prejudice is warranted after one failure to cure a deficiency. D.I. 50 at 2. Kickflip is wrong on two counts. First, although Facebook amended once as of right, the amendment was not a response to a deficiency found by the Court since the Court never ruled on Kickflip's original motion to dismiss the counterclaims. *See Calloway v. Green Tree Serving, LLC*, 599 F. Supp. 2d 543, 546 (D. Del. 2009) ("Defendant's motion to dismiss is responsive to plaintiff's original complaint. As the amended complaint has superseded the original, defendant's motion to dismiss has become moot."). Second, *Perlmutter* held that dismissal with prejudice was warranted because the amendment would have been futile—and not merely because there had been a prior amendment. *Perlmutter*, 2010 WL 3834040, at *5 (noting the "deficiencies of the amended complaint appear to be incurable").

Respectfully submitted,

SEITZ ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

Thomas O. Barnett
Jonathan Gimblett
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
(202) 662-6000
tbarnett@cov.com
jgimblett@cov.com

*Counsel for Defendant Facebook, Inc.*


Dated:  January 14, 2014

*/s/ David E. Ross*
David E. Ross (Bar No. 5228)
Benjamin J. Schladweiler (Bar No. 4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
dross@seitzross.com
bschladweiler@seitzross.com

*Counsel for Defendant Facebook, Inc.*

21

## CERTIFICATE OF SERVICE

I, David E. Ross, hereby certify that on January 14, 2014, a true copy of the foregoing

***Defendant's Memorandum in Opposition to Plaintiff's Motion to Dismiss Counterclaims*** was

served via electronic mail upon the following counsel of record:

Kenneth L. Dorsney
Mary B. Matterer
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899-2306
kdorsney@morrisjames.com
mmatterer@morrisjames.com

*Counsel for Plaintiff Kickflip, Inc.*

Derek A. Newman
Derek Linke
Newman DuWors LLP
1201 Third Avenue
Suite 1600
Seattle, WA  98101
dn@newmanlaw.com
linke@newmanlaw.com

Brian R. Strange
Keith L. Butler
STRANGE & CARPENTER
12100 Wilshire Boulevard
Suite 1900
Los Angeles, CA  90025
lacounsel@earthlink.net
kbutler@strangeandcarpenter.com

*Counsel for Plaintiff Kickflip, Inc.*

*/s/ David E. Ross*
David E. Ross (Bar No. 5228)