## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| KICKFLIP, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   C.A. No. 12-1369-LPS |
| | ) |
| FACEBOOK, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT FOR LACK OF STANDING

*Of Counsel*:

Thomas O. Barnett
Jonathan Gimblett
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
(202) 662-6000
tbarnett@cov.com
jgimblett@cov.com

*Counsel for Defendant Facebook, Inc.*

David E. Ross (Bar No. 5228)
Benjamin J. Schladweiler (Bar No. 4601)
SEITZ ROSS ARONSTAM & MORITZ LLP
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
dross@seitzcross.com
bschladweiler@seitzcross.com

*Counsel for Defendant Facebook, Inc*

Dated:  January 21, 2014

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      PRELIMINARY STATEMENT ...................................................................................... 1

II.     ARGUMENT ................................................................................................................... 1

      A.      Kickflip Lacks Standing Because It Does Not Own Legal Claims Relating
             to the Getgambit Business for Conduct Either Before or After It Divested
             the Business. .......................................................................................................... 1

             1.      Kickflip Assigned Its Claims to Gambit Labs on November 9,
                   2009 ........................................................................................................ 1

             2.      The December Agreement Left The Claims with Gambit Labs. ................ 3

      B.      Kickflip Lacks Standing to Assert Claims Based on Alleged Injury to
             Getgambit After It Transferred That Business to Gambit Labs. ........................... 5

             1.      Kickflip Lacks Standing to Challenge an Alleged Tying
                   Arrangement Imposed Nearly Two Years after Divestment. ..................... 6

             2.      The Alleged Injuries to the Gambit Business Relating to the
                   Monopolization and Tortious Interference Claims Arose After
                   Kickflip's Divestment of Gambit ............................................................. 9

             3.      Kickflip Lacks Standing to Pursue Injunctive Relief. ........................... 10

III.    CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Suozzi*,
 433 F.3d 220 (2d Cir. 2005)....................................................................................4

*Aramony v. United Way of Am.*,
 254 F.3d 403 (2d Cir. 2001)....................................................................................4

*Bubar v. Ampco Foods, Inc.*,
 752 F.2d 445 (9th Cir. 1985) ..................................................................................8

*DaimlerChrysler Corp. v. Cuno*,
 547 U.S. 332 (2006)................................................................................................7

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*,
 642 F. Supp. 2d 381 (D.N.J. 2008) ....................................................................2, 5

*Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*,
 No. 05-6042 (JBS), 2009 WL 313754 (D.N.J. Feb. 4, 2009) ..................................5

*Gas Utils. Co. v. S. Natural Gas Co.*
 996 F.2d 282 (11th Cir. 1993) .............................................................................8, 9

*Glover v. City of Wilmington*,
 No. 11-431-RGA, 2013 WL 4035253 (D. Del. Aug. 7, 2013) ...............................10

*Grip-Pak, Inc. v. Ill. Tool Works, Inc.*,
 651 F. Supp. 1482 (N.D. Ill. 1986) ....................................................................7-8

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
 995 F.2d 425 (3d Cir. 1993)....................................................................................2

*Haverhill Gazette Co. v. Union Leader Corp.*,
 333 F.2d 798 (1st Cir. 1964)...................................................................................7

*Hayes v. Solomon*,
 597 F.2d 958 (5th Cir. 1979) ...............................................................................8, 9

*United States ex rel. Kelly v. The Boeing Co.*,
 9 F.3d 743 (9th Cir. 1993) ......................................................................................2

*Khodara Envtl., Inc. v. Blakey*,
 376 F.3d 187 (3d Cir. 2004)....................................................................................7

*Lee Builders v. Wells*,
   92 A.2d 710 (Ch. 1952) ................................................................................3

*Lerman v. Joyce Int'l, Inc.*,
   10 F.3d 106 (3d Cir. 1993)........................................................................ 2-4

*Martino v. McDonald's Sys., Inc.*,
   432 F. Supp. 499 (N.D. Ill. 1977) ...............................................................2

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
   392 U.S. 134 (1968) (White, J., concurring) ...............................................7

*Pope v. Swanson*,
   2009 WL 2507928 (D. Del. Aug. 17, 2009) ..............................................10

*Rainey v. Am. Forest and Paper Ass'n, Inc.*,
   26 F. Supp. 2d 82 (D.D.C. 1998) ................................................................5

*In re Schering Plough Corp.*,
   678 F.3d 235 (3d Cir. 2012)........................................................................7

*Schwartz v. Chase*,
   Civ. A. 4274-VCP, 2010 WL 2601608 (Del. Ch. June 29, 2010) ...............4

*Stabler v. Ramsay*,
   62 A.2d 464 (Del. 1948) ..............................................................................4

*Sullivan v. National Football League*,
   34 F.3d 1091 (1st Cir. 1994)........................................................................2

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
   395 U.S. 100 (1969)....................................................................................7

*ZF Meritor, LLC v. Eaton Corp*,
   696 F.3d 254 (3d Cir. 2012)......................................................................10

## Other Authorities

Rule 30(b)(6)...............................................................................................4, 5

## I.       PRELIMINARY STATEMENT

Kickflip concedes that, contrary to the misimpression created by its Complaint and compounded by its counsel at the hearing on Facebook's motion to dismiss, it has had no ownership interest in the Getgambit business since November 9, 2009.  As a result, there are now two independent bases for summary judgment.  *First*, the agreements by which Kickflip divested the Getgambit business transferred ownership of "all assets" related to that business, including the claims at issue here.  Kickflip cannot pursue claims it does not own.  *Second*, regardless of whether Kickflip transferred its legal claims, there is no dispute that Kickflip divested the Getgambit business to Gambit Labs, Inc. ("Gambit Labs") on November 9, 2009.  Kickflip cannot seek relief for injuries allegedly incurred by that business after the divestment.  Because all of Kickflip's claims rely on alleged injuries arising after November 9, 2009, Kickflip lacks standing on that distinct ground too.  Kickflip's opposition ignores inconvenient facts—such as the contemporaneous assertion by Gambit Labs in November 2009 of the same claims that Kickflip now asserts here—and seeks to attack strawman arguments about double causation that are irrelevant to the current motion.  The Court should grant summary judgment for lack of standing.

## II.      ARGUMENT

### A.       Kickflip Lacks Standing Because It Does Not Own Legal Claims Relating to the Getgambit Business for Conduct Either Before or After It Divested the Business.

#### 1.       Kickflip Assigned Its Claims to Gambit Labs on November 9, 2009.

Kickflip argues that the November Agreement did not assign its antitrust claims to Gambit Labs because, although it provided for the transfer to the new entity of "all assets" relating to the Getgambit business, it lacked language referring explicitly to the transfer of "all claims" or "all causes of action."  D.I. 57 at 7–8.  Kickflip does not dispute that an antitrust claim

is an asset but asks this Court to require the use of the same specific words that the Third Circuit found to constitute a valid assignment of an antitrust claim in *Lerman v. Joyce International, Inc.*, 10 F.3d 106, 112 (3d Cir. 1993).  But, while *Lerman* found language specifying the transfer of "all causes of action, . . . claims and demands" sufficient, it did not prescribe a single form of words that must be invoked to assign an antitrust claim.  To the contrary, it confirmed that "terms of art are not required for a valid assignment."  *Id.* (quoting *United States ex rel. Kelly v. The Boeing Co.*, 9 F.3d 743 (9th Cir. 1993)); *see also Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 642 F. Supp. 2d 381, 387 (D.N.J.  2008) (declining to require either an "explicit transfer of antitrust claims or the particular language used in *Lerman.*").[1]

   *Lerman*'s holding was that, to be "'express' within the meaning of *Gulfstream*,"[2] an assignment must be "unambiguous and all-inclusive."  *Lerman*, 10 F.3d at 112*; see also Emerson Elec.*, 642 F. Supp. 2d at 387 (characterizing *Lerman* as concluding that *Gulfstream* is satisfied "where the assignment [is] sufficiently 'unambiguous and all-inclusive' so there [can] be no doubt about the intent of the parties to transfer antitrust claims").  Like the assignment in *Lerman*, the November Agreement does not implicate *Gulfstream*'s concern with "the difficulty

---

[1] Kickflip's reliance on *Sullivan v. National Football League*, 34 F.3d 1091 (1st Cir. 1994), is inapposite.  D.I. 57 at 7. That out-of-circuit case's insistence on "express language to the effect that Sullivan was selling his football related 'antitrust claims' or, at the very least 'causes of action,'" *Sullivan*, 34 F.3d at 1106, cannot be reconciled with the Third Circuit's rejection of any requirement for terms of art or the particular formula upheld in *Lerman.*  The other out-of-circuit case cited by Kickflip long predates *Gulfstream* and has nothing to say about the application of the Third Circuit rule that an unambiguous and all-inclusive assignment is sufficient to transfer an antitrust claim.  *See* D.I. 57 at 7 (citing *Martino v. McDonald's Sys., Inc.*, 432 F. Supp. 499, 504 (N.D. Ill. 1977)).

[2] Kickflip's attempt to equate the facts of this case to those of *Gulfstream* rings hollow.  The assignment in *Gulfstream* involved the sale of certain assets as part of a business, which created the concerns over the direct/indirect purchaser rule that prompted the *Gulfstream* court to require an "express" assignment.  *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 425, 438–40 (3d Cir. 1993).  In contrast, Kickflip transferred "all assets" as part of the sale of an entire business to Gambit Labs, which raises no concerns about the need to apportion alleged losses between direct and indirect purchasers.

of determining on a case-by-case basis whether an assignment . . . had been intended by the parties to transfer antitrust claims." *Lerman*, 10 F.3d at 112.  It is unambiguous and all-inclusive, transferring "all of the properties and assets" of the Getgambit business "whether tangible and intangible, real, personal or mixed, and wherever located." D.I. 56,  Ex. 9, § 1.1. Indeed, on November 29, 2009, *Gambit Labs*, not Kickflip, purported to assert the same antitrust and other claims against Facebook that Kickflip now seeks to assert here.  D.I. 55 at 9–10 and D.I. 56, Ex. 18.  Kickflip's opposition is notably silent about that letter, implicitly conceding that it cannot be reconciled with Kickflip's current position.

**2.    The December Agreement Left The Claims with Gambit Labs.**

The December Agreement does not change the outcome because its operative language confirms the transfer of "all assets" to Gambit Labs and it is not a valid contract in any case.

*First*, even if Kickflip were correct that the December Agreement abrogated and replaced the November Agreement in its entirety, D.I. 57 at 8–9,[3] it would still not own the antitrust claims.  That is because the operative language of the December Agreement, transferring to Gambit Labs "all assets associated with the Gambit offer service," is—like the November Agreement—an unambiguous and all-inclusive assignment that includes antitrust and other claims.  D.I. 56, Ex. 8 § 1.1.1.  *See Lerman*, 10 F.3d at 112. The ambiguous recital in the December Agreement does not change that outcome.[4]  As Kickflip acknowledges, recitals are

---

[3] Kickflip relies for this proposition on *Lee Builders v. Wells*, 92 A.2d 710, 715 (Del. Ch. 1952). But that case involved the amendment of future obligations.  *Id.* at 712 (plaintiff required to move existing houses, dig cellar, erect foundation, and build sidewalks and driveways).  Here, by contrast, the property at issue was already in Gambit Labs' possession and could not be transferred back to Kickflip retroactively merely by restating the November Agreement.

[4] Kickflip misquotes the recital in an attempt to make it sound less ambiguous.  D.I. 57 at 10 ("The recitals confirm 'any claims against Facebook arising out of the Facebook ban would remain with Kickflip.'").  The recital actually says only that "it is the intention of the Kickflip (continued…)

3

only relevant if the operative language is ambiguous, D.I. 57 at 10 (quoting *Aramony v. United Way of America*, 254 F.3d 403, 413 (2d Cir. 2001)) or fails to identify the property rights assigned, *id.* (quoting *Stabler v. Ramsay*, 62 A.2d 464, 470 (Del. 1948)).  The  operative language in the December Agreement is neither:  It specifically provides for the transfer of *all* assets associated with the Gambit business.[5]

*Second*, the December Agreement is void for lack of consideration.  There is no admissible evidentiary basis for Kickflip's assertions that the agreement provided Gambit Labs with a tax benefit or mutually cancelled unfulfilled executory obligations.  Those assertions rest solely on the Smoak Declaration.  Smoak Decl. ¶¶ 34–35.  Yet, when Smoak was deposed pursuant to Rule 30(b)(6), he refused to answer questions regarding the reasons for the December Agreement on grounds of attorney-client privilege.  D.I. 62, Ex. 4 (Vol.11 Dep.) at 69.  Kickflip cannot use privilege as both a sword and a shield and, for the reasons stated in Facebook's parallel Motion to Strike, that declaration testimony should be excluded.

*Third*, the December Agreement is void because the closing conditions were not satisfied.[6]  Kickflip's argument that Kickflip and Gambit Labs waived the closing conditions similarly is supported only by the Smoak Declaration.  Smoak Decl. ¶ 45 ("Kickflip and Gambit

---

shareholders that Kickflip remain as a viable entity to . . . maintain any legal claims against Facebook arising out of the Facebook ban."  D.I. 56, Ex. 8 (fourth recital).

[5] There is no merit in Kickflip's argument that the recital is "more specific" and should therefore be read to limit the "more general" operative language.  First, there is nothing unspecific about the operative language's reference to "all assets associated with the Gambit offer service."  Second, the recital is much more ambiguous than Kickflip acknowledges.  *See supra* note 4.

[6] Contrary to Kickflip's assertion, it is well-established that failure to satisfy a condition precedent to formation renders a contract void.  *See Schwartz v. Chase*, Civ. A. 4274-VCP, 2010 WL 2601608, at *11 (Del. Ch. June 29, 2010); *see also Adams v. Suozzi*, 433 F.3d 220, 227 (2d Cir. 2005) (such putative contract is void).  The closing conditions were a condition precedent to the formation of the December Agreement because that agreement expressly states that all of the parties' obligations were subject to satisfaction of the conditions.  D.I. 56, Ex. 8 § 4.1 & 4.2.

Labs voluntarily and intentionally waived any remaining closing conditions imposed under the December Agreement.").  But this new testimony stands in stark contrast to Mr. Smoak's insistence during his Rule 30(b)(6) deposition that as a non-lawyer he was unable to speak to the steps required under the December Agreement's closing provisions and that he had no recollection of steps taken after December 15, 2009 to transfer assets pursuant to those provisions.  D.I. 62, Ex. 3 (Kickflip Dep.) at 128–30.  It is well established that "a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition." *Rainey v. Am. Forest and Paper Ass'n, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998).  For the reasons stated in the parallel Motion to Strike, the relevant portion of the Smoak Declaration should be excluded.[7]

### B.   Kickflip Lacks Standing to Assert Claims Based on Alleged Injury to Getgambit After It Transferred That Business to Gambit Labs.

Regardless of whether Kickflip transferred legal claims that existed when it sold the Gambit business on November 9, 2009, Kickflip cannot assert claims based on alleged injury to the business *after* ownership passed to Gambit Labs.  The Complaint obscures that defect in Kickflip's standing by failing to mention the salient fact that Kickflip divested the Getgambit business on November 9, 2009.  Instead, the Complaint creates the misimpression that Kickflip retained some kind of ownership interest in the Getgambit business by describing Plaintiff as

---

[7] Kickflip asserts that Facebook lacks standing to challenge the validity of the December Agreement based on its failure to close.  D.I. 57 at 12.  The only case it cites for that proposition deals with the entirely distinct question of whether a third party has standing to challenge the validity of an agreement based on the purported lack of authority of the signatories to transfer an antitrust claim.  *Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, No. 05-6042 (JBS), 2009 WL 313754, at *1 n.1 (D.N.J. Feb. 4, 2009).  Here, Facebook raises no issue about the authority of the signatories.  More fundamentally, as the *Emerson* court itself recognized, a defendant, such as Facebook, has standing to challenge a plaintiff's ownership of the claims it purports to assert, and this Court can and should decide that issue.  *See Emerson Elec. Co. v. Le Carbone Lorraine, S.A.*, 642 F. Supp. 2d 381, 391 (D.N.J. 2008).

"Kickflip, Inc., d/b/a Gambit," D.I. 1 ¶ 13.[8]

In its Opposition, Kickflip wrongly asserts that Facebook is "attempt[ing] to re-litigate the argument that Kickflip was deprived of standing because it was not in business when Facebook completed its monopoly in 2011." D.I. 57 at 14. This is an ill-founded attempt at misdirection. Facebook did argue that Kickflip lacked standing because it was banned from Facebook for reasons unrelated to payment processing services (*i.e.*, serving deceptive ads), but Facebook also advanced the distinct argument that Kickflip lacked standing because it had divested the Gambit business and that any cause of action that arose from conduct after that divestment belonged to the purchasing entity. D.I. 12 at 19–20. The Court declined to dismiss the Complaint on this basis, but only because it did not want to "speculate from the coincidental date of Gambit's incorporation that Kickflip divested itself of Gambit." D.I. 22 at 9. The Court then ordered limited discovery on the divestment issue. Discovery has now confirmed (and Kickflip now concedes) that Kickflip divested itself of the Getgambit business on November 9, 2009, and has had no ownership interest in the business from that date to the present. Looking only at the alleged conduct occurring *before* Kickflip divested itself of the Gambit business, Kickflip fails to establish the necessary injury-in-fact for Article III standing.[9]

### 1. Kickflip Lacks Standing to Challenge an Alleged Tying Arrangement Imposed Nearly Two Years after Divestment.

Kickflip does not dispute that the only tying arrangement alleged in the Complaint arose

---

[8] At the hearing on the motion to dismiss, Kickflip's counsel compounded the misimpression created by the Complaint by representing that "Kickflip, even though it spun off some but not all of its corporations, has all the operations in the parent. There is only now one company. That's Kickflip Games, the plaintiff, which always has done business with Gambit. And that is why the complaint refers to it as Gambit." (Tr. at 53:9-14).

[9] Kickflip has not argued—nor could it—that either the November or December Agreement transferred from Gambit Labs to Kickflip any claims that might have accrued to Gambit Labs after the divestiture of the Getgambit business.

in July 2011, nearly two years after Kickflip had divested itself of the Getgambit business. Kickflip attempts to salvage its position by linking the stand-alone tying claim to the Complaint's other claims.  D.I. 57 at 16 ("alleged tying arrangement was part of the ongoing monopolization scheme").  But "a plaintiff who raises multiple causes of action 'must demonstrate standing *for each claim* he seeks to press.'"  *In re Schering Plough Corp.*, 678 F.3d 235, 245 (3d Cir. 2012) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)) (emphasis added).

Kickflip's argument regarding multiple causes of injury, D.I. 57 at 17–19, is equally misplaced.  The issue on this motion is not whether there are multiple potential causes of harm to the Getgambit business.  Rather, it is whether Kickflip has established that it suffered an injury in July 2011 when Facebook allegedly imposed a payments policy that harmed a business Kickflip no longer owned.[10]  Kickflip cannot satisfy that burden because it divested the business in 2009, and any alleged injury to the Getgambit business resulting from Facebook's 2011 policy occurred when the Getgambit business was owned by Gambit Labs (or Volume 11).

Kickflip's claim of injury as a potential competitor precluded from re-entering the business also falls short.  As an initial matter, Kickflip argues that another entity—Gambit Labs (now Volume 11)—has the requisite assets necessary to re-enter the business.  Kickflip cannot base its standing on the preparedness of a different entity.  In any event, Kickflip offers nothing more than self-serving assertions in the Smoak Declaration, and no evidence to substantiate its claims that either entity is taking concrete steps to re-enter the business.  *See Grip-Pak, Inc. v. Ill.*

---

[10] The cases cited by Kickflip all relate to multiple potential causes of injury and are thus inapposite.  *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 114 n.9 (1969); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 143–44 (1968) (White, J., concurring); *Khodara Envtl., Inc. v. Blakey*, 376 F.3d 187, 195 (3d Cir. 2004); *Haverhill Gazette Co. v. Union Leader Corp.*, 333 F.2d 798, 806 (1st Cir. 1964).

*Tool Works, Inc.*, 651 F. Supp. 1482, 1504–05 (N.D. Ill. 1986) (finding lack of preparedness and granting summary judgment in favor of defendant on plaintiffs' lost profits claim based on defendant's allegedly anticompetitive acts where "Plaintiffs have put forth no evidence beyond self-serving opinion testimony . . . to support [its financial ability to enter the market]").

The Smoak Declaration's broad assertions about Kickflip's "ability to cause Gambit Labs or Volume 11 to return to Kickflip all previously 'divested' assets," D.I. 57 at 20, are insufficient to establish that Kickflip has the requisite intent and preparedness to re-enter the market. *See Hayes v. Solomon,* 597 F.2d 958, 974 (5th Cir. 1979) ("The mere possibility of financing being available in the abstract is not enough" to show preparedness to obtain financing). And the Declaration's vague references to "access to all of the ingredients to re-launch," and "confiden[ce] that we could recruit our best programmers, developers, and sales force to rejoin the team" only underscore the absence of any affirmative action taken by Kickflip to enter the market. Smoak Decl. ¶¶ 54–58; *see Bubar v. Ampco Foods, Inc.*, 752 F.2d 445 (9th Cir. 1985) (granting summary judgment to the defendant where the plaintiff lacked any binding contract and did not have sufficient firm financing commitments); *Hayes v. Solomon*, 597 F.2d at 973, 975–77 (5th Cir. 1979) (listing "affirmative action by plaintiff to enter the business" as an element of preparedness and ruling that plaintiffs could not recover antitrust damages where they had done little beyond solicitation of an initial proposal).

Indeed, Kickflip offers no evidence that it has engaged with appropriate state and federal authorities, obtained licenses, partnered with a licensed entity, or otherwise taken steps necessary to run a payments business. *See Gas Utils. Co. v. S. Natural Gas Co.*, 996 F.2d 282, 283 (11th Cir. 1993) (finding even plaintiffs' communication with the licensing authority and inquiry into regulations "insufficient to establish preparedness"). Kickflip cannot claim to be prepared to

enter the market when it has taken no affirmative action to do so.  *See Hayes*, 597 F.2d at 973; *Gas Utilities Co.*, 996 F.2d at 283.

2.    <strong>The Alleged Injuries to the Gambit Business Relating to the Monopolization and Tortious Interference Claims Arose After Kickflip's Divestment of Gambit.</strong>

For both the monopolization and tortious interference claims, discovery has shown that Kickflip is unable to establish Article III standing.  As set forth in the Complaint, both claims allege injuries suffered by the Getgambit business *after* November 9, 2009.[11]  *See* D.I. 55 at 16–17.

The Complaint does not allege any loss of revenue or contracts or other injury to the Getgambit business as a result of the cease and desist letter itself.  Rather, the allegations of injury are based on Facebook's alleged efforts to dissuade developers from using the Getgambit business.  D.I. 1 ¶¶ 87, 98.  But all of the statements that Kickflip alleges disrupted the Getgambit business with developers were made *after* November 9, 2009.  D.I. 1 ¶¶ 69, 123–25, 134–35.  That defect in Kickflip's standing is not cured by Kickflip's assertion in its opposition that the cease and desist letter was the "start of an ongoing public campaign"[12] or its new allegation of statements by Facebook on November 8, 2009,  D.I. 57 at 15–16, because neither in the Complaint nor in its opposition does Kickflip allege any concrete, actual harm to the Getgambit business prior to its transfer of that business to Gambit Labs on November 9, 2009.

---

[11] Kickflip's monopolization claims allege that it was injured as a result of Facebook's efforts to persuade developers from using Getgambit.  *See* D.I. 1 ¶¶ 69, 87, 98.  Neither the Complaint nor the record indicates any harm to Kickflip's relationship with developers until after November 9, 2009.  Likewise, the tortious interference claims also hinge on outreach to developers, which is alleged to have occurred on November 19, 2009 and November 25, 2009, after the divestment.  D.I. 1 ¶¶ 123–25, 134–135.

[12] The cease-and-desist letter was not published nor sent to anyone other than Kickflip and thus was not "public."

9

### 3.    Kickflip Lacks Standing to Pursue Injunctive Relief.

In its opening brief, Facebook outlined the legal requirements for standing to seek injunctive relief and argued that Kickflip had failed to allege, much less establish, the necessary elements.  D.I. 55 at at 19 (citing *ZF Meritor, LLC v. Eaton Corp*, 696 F.3d 254, 301 (3d Cir. 2012)).  In its Opposition, Kickflip fails to address injunctive relief and thus concedes that it lacks standing.  *See, e.g.*, *Glover v. City of Wilmington*, No. 11-431-RGA, 2013 WL 4035253, at *6–7 (D. Del. Aug. 7, 2013) (granting summary judgment on a claim in favor of the defendant where the plaintiff failed to address that claim in her responsive brief); *Pope v. Swanson*, 2009 WL 2507928, at *2 (D. Del. Aug. 17, 2009) ("[T]he defendants failure to address [the plaintiff's] arguments demonstrates that they concede [those arguments].").

In any event, for the same reasons discussed above, the assertions in the Smoak Declaration are insufficient to establish standing to pursue injunctive relief.  The Smoak Declaration makes only vague averments about potential assets held by another entity that *could* facilitate a transition back to business and offers no concrete plans or efforts suggesting re-entry. Affidavits offering more specific evidence of reentry than the Smoak Declaration have been rejected by the Third Circuit as insufficient to establish standing for injunctive relief.  *See ZF Meritor, LLC*, 696 F.3d at 302 (rejecting the sufficiency of an affidavit asserting "discussions at the company about the possibility of reentry," monitoring of the industry, an understanding of the product market, and averments that the company was "actively considering what [its] alternatives might be").

## III.    CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of Facebook on all claims asserted by Kickflip.

Respectfully submitted,

SEITZ ROSS ARONSTAM & MORITZ LLP

*Of Counsel*:

*/s/ David E. Ross*
David E. Ross (Bar No. 5228)

Thomas O. Barnett
Jonathan Gimblett
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C.  20004-2401
(202) 662-6000
tbarnett@cov.com
jgimblett@cov.com

Benjamin J. Schladweiler (Bar No. 4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
dross@seitzross.com
bschladweiler@seitzross.com

*Counsel for Defendant Facebook, Inc.*

*Counsel for Defendant Facebook, Inc.*

Dated:  January 21, 2014

11

## CERTIFICATE OF SERVICE

I, David E. Ross, hereby certify that on January 21, 2014, a true copy of the foregoing

***Defendant's Reply Memorandum in Further Support of Motion for Summary Judgment for***

***Lack of Standing*** was served via electronic mail upon the following counsel of record:

Kenneth L. Dorsney
Mary B. Matterer
MORRIS JAMES LLP
500 Delaware Avenue, Suite 1500
P.O. Box 2306
Wilmington, DE  19899-2306
kdorsney@morrisjames.com
mmatterer@morrisjames.com

*Counsel for Plaintiff Kickflip, Inc.*

Derek A. Newman
Derek Linke
Newman DuWors LLP
1201 Third Avenue
Suite 1600
Seattle, WA  98101
dn@newmanlaw.com
linke@newmanlaw.com

Brian R. Strange
Keith L. Butler
STRANGE & CARPENTER
12100 Wilshire Boulevard
Suite 1900
Los Angeles, CA  90025
lacounsel@earthlink.net
kbutler@strangeandcarpenter.com

*Counsel for Plaintiff Kickflip, Inc.*

*/s/ David E. Ross*
David E. Ross (Bar No. 5228)