## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KICKFLIP, INC., a Delaware corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>FACEBOOK, INC., a Delaware corporation,<br><br>*Defendant*. | **C.A. NO. 12-1369-LPS** |

**PLAINTIFF KICKFLIP, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO
DISMISS DEFENDANT'S AMENDED COUNTERCLAIMS UNDER
RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE (D.I. 50)**

Dated: January 21, 2014

Mary B. Matterer (I.D. #2696)
Kenneth L. Dorsney (I.D. #3726)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com
kdorsney@morrisjames.com

Derek A. Newman (*pro hac vice*)
Derek Linke (*pro hac vice*)
**NEWMAN DU WORS LLP**
1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800
dn@newmanlaw.com
linke@newmanlaw.com

Brian R. Strange (*pro hac vice*)
Keith L. Butler (*pro hac vice*)
**STRANGE & CARPENTER**
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055
lacounsel@earthlink.net
kbutler@strangeandcarpenter.com

**ATTORNEYS FOR PLAINTIFF
KICKFLIP, INC., D/B/A GAMBIT**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................... 1

ARGUMENT ..................................................................................................... 1

A.   Facebook's counterclaims are barred by the statute of limitations. .......................................1

    1.   Kickflip's Complaint did not toll Facebook's state-law counterclaims........................1

    2.   Even if there is tolling, counterclaims arising before October 26, 2009 are
       barred. ................................................................................................ 2

B.   Facebook's counterclaims are not tolled by any alleged fraudulent concealment. ............... 3

    1.   Facebook has not identified any claims that Kickflip concealed. ............................... 3

    2.   Facebook cannot rely on "information and belief" for fraudulent concealment. ....... 4

    3.   Facebook did not exercise reasonable diligence. ...................................................... 5

C.   Facebook's breach-of-contract claim does not plead a contract, breach, or damages........... 5

    1.   Facebook has not identified an actual contract or breach by Kickflip. ....................... 5

    2.   Facebook has not adequately pleaded damages. ........................................................ 6

D.   Facebook's counterclaim for tortious interference should be dismissed because it
    does not identify any developer that actually breached a contract. ..................................... 7

E.   Facebook's fraud claim should be dismissed because Facebook does not plead that
    any alleged misrepresentation was false or made with knowledge of falsity. ...................... 7

    1.   Facebook does not allege Noah Kagan's May 2009 statement was false or that
       he knew it to be false at the time. .............................................................................. 8

    2.   Facebook does not plead facts sufficient to show that Kickflip did not intend to
       comply with Facebook's demands at the time of the November 2009
       statement. .................................................................................................... 9

CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*Albert Einstein Med. Care Found. v. Nat'l Ben. Fund for Hosp. & Health Care Emps.*,
No. 89-5931, 1991 WL 114614 (E.D. Pa. June 21, 1991) ............................................ 2

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*,
910 A.2d 1020 (Del. Ch. 2006) ................................................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................... 6

*Basham v. Fin. Am. Corp.*,
583 F.2d 918 (7th Cir. 1978) ....................................................................................... 1

*Bradley v. Md. Cas. Co.*,
563 F. Supp. 602 (D. Del. 1983) .................................................................................. 3

*Byrnes v. DeBolt Transfer, Inc.*,
741 F.2d 620 (3d Cir. 1984) ......................................................................................... 3

*Cotter v. Newark Hous. Auth.*,
422 F. App'x 95 (3d Cir. 2011) .................................................................................... 5

*Desimone v. Barrows*,
924 A.2d 908 (Del. Ch. 2007) ...................................................................................... 3

*EBS Litig. LLC v. Barclays Global Investors, N.A.*,
304 F.3d 302 (3d Cir. 2002) ......................................................................................... 5

*Giordano v. Claudio*,
714 F. Supp. 2d 508 (E.D. Pa. 2010) ........................................................................... 2

*Halpern v. Barran*,
313 A.2d 139 (Del. Ch. 1973) ...................................................................................... 3

*Hartford v. Gibbons & Reed Co.*,
617 F.2d 567 (10th Cir. 1980) ..................................................................................... 2

*Hollander v. Ortho-McNeil-Janssen Pharm., Inc.*,
No. 10-cv-0836-RB, 2010 WL 4159265 (E.D. Pa. Oct. 21, 2010) .............................. 4

*In re Dean Witter P'ship Litig.*,
No. 14816, 1998 WL 442456 (Del. Ch. July 17, 1998) ............................................... 5

*Jewelcor Inc. v. Karfunkel*,
517 F.3d 672 (3d Cir. 2008) ......................................................................................... 2

*Knopick v. Connelly*,
639 F.3d 600 (3d Cir. 2011) ......................................................................................... 3

*Liafail, Inc. v. Learning 2000, Inc.*,
No. 01-678 GMS, 2002 WL 31667861 (D. Del. Nov. 25, 2002) ................................. 8

*Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs.*,
951 F.2d 1399 (3d Cir. 1991) ....................................................................................... 9

*Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*,
No. 13911, 1995 WL 662685 (Del. Ch. Nov. 2, 1995) ............................................... 5

*Nalley v. McClements*,
295 F. Supp. 1357 (D. Del. 1969) ................................................................................ 1

*Nardo v. Guido DeAscanis & Sons, Inc.*,
   254 A.2d 254 (Del. Super. Ct. 1969) ........................................................................... 4

*Price v. Wilmington Trust Co.*,
   No. 12476, 1995 WL 317017 (Del. Ch. May 19, 1995) ............................................. 3

*Ragan v. Merchants Transfer & Warehouse Co.*,
   337 U.S. 530 (1949) ................................................................................................... 2

*Smith-Johnson S.S. Corp. v. United States*,
   231 F. Supp. 184 (D. Del. 1964) ............................................................................... 1

*Solow v. Aspect Res., LLC*,
   No. 20397, 2004 WL 2694916 (Del. Ch. Oct. 19, 2004) ........................................... 8

*Stuchen v. Duty Free Int'l*,
   No. 94C-12-194, 1996 WL 33167249 (Del. Super. Ct. Apr. 22, 1996) ...................... 8

*Weiner v. Quaker Oats Co.*,
   129 F.3d 310 (3d Cir. 1997) ...................................................................................... 4

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................ 3

**Other Authorities**

*Black's Law Dictionary* 352 (5th ed. 1979) .................................................................. 7

Restatement (Second) of Torts § 530(1) ...................................................................... 9

**INTRODUCTION**

In late 2009, Facebook banned developers from using Kickflip's virtual-currency services under the pretext that Kickflip was responsible for deceptive ads displayed to Facebook users. Developers had no choice but to comply because Facebook is the dominant social network.

Kickflip struggled to mitigate the harm. But Facebook's dominance only increased in the years following the ban. Faced with the expiration of the statute of limitations for its antitrust claims, Kickflip was forced to do what it had sought to avoid for years—file an antitrust lawsuit against one of the largest companies in the world to recover for its harm.

Facebook complains that Kickflip delayed filing as a tactical maneuver to cause Facebook's counterclaims to expire. But that's not the case. Facebook eliminated Kickflip as a competitive threat. And now that its pretext is exposed, Facebook files counterclaims in retaliation. But Facebook cannot plead facts supporting its claims. It cites ads and statements that are not actionable and concedes it does not have any other example. Despite once already amending its counterclaims in response to a motion to dismiss, Facebook still cannot state a claim for relief.

**ARGUMENT**

**A.  Facebook's counterclaims are barred by the statute of limitations.**

**1.  Kickflip's Complaint did not toll Facebook's state-law counterclaims.**

Facebook touts a "majority" rule that filing a complaint tolls the limitations period for compulsory counterclaims. (*See* D.I. 60 at 6–9.) But the "minority" rule—that counterclaims are usually not tolled—is "settled law" in this and other federal courts. *See Smith-Johnson S.S. Corp. v. United States*, 231 F. Supp. 184, 186–87 (D. Del. 1964); *Nalley v. McClements*, 295 F. Supp. 1357, 1359–60 (D. Del. 1969); *Basham v. Fin. Am. Corp.*, 583 F.2d 918, 927 (7th Cir. 1978).

More importantly, under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), "'the outcome of the

litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court.'" *Jewelcor Inc. v. Karfunkel*, 517 F.3d 672, 676 (3d Cir. 2008) (quoting *Guar. Trust Co.*, 326 U.S. at 109). Where a plaintiff's state-law claim would be time-barred in state court, it must also be barred in federal court. *Id.* (cannot give claim "'longer life in the federal court than it would have had in the state court'" (quoting *Ragan v. Merchants Transfer & Warehouse Co.*, 337 U.S. 530, 533–34 (1949))).

Facebook relies on *Giordano v. Claudio*, 714 F. Supp. 2d 508 (E.D. Pa. 2010). But *Giordano* did not apply *Erie* as required, see *Jewelcor*, 517 F.3d at 676, or even consider whether Pennsylvania-state law addressed the relation-back issue. In addition, the key case that *Giordano* relies on has no application to state-law claims. *See Albert Einstein Med. Care Found. v. Nat'l Ben. Fund for Hosp. & Health Care Emps.*, No. 89-5931, 1991 WL 114614, at *11 (E.D. Pa. June 21, 1991) (ERISA counterclaim under 29 U.S.C. § 1132). Facebook's counterclaims arise under state law, are controlled by state-law statutes of limitation, and were not tolled by Kickflip's Complaint.

**2.   Even if there is tolling, counterclaims arising before October 26, 2009 are barred.**

Facebook's claims should dismissed to the extent they arise from acts occurring before October 26, 2009 because neither of its tolling arguments apply. First, Facebook's relation-back argument only applies to claims that were not expired when the Complaint was filed on October 26, 2012. *See Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 570 (10th Cir. 1980). So under Delaware's three-year statute of limitations,[1] Facebook's claims arising before October 26, 2009 would have already expired. Second, Facebook expressly limited its fraudulent-concealment argument to "any claim accruing after November 9, 2009." (D.I. 60 at 9.)

---

[1] The parties agree that Facebook's counterclaims are subject to Delaware's statute of limitations, Del. Code, tit. 10, § 8106(a). (*See* D.I. 50 at 6; D.I. 60 at 6 n.1.)

Where Delaware state-law claims arise from numerous repeated wrongs of similar character, the statute of limitations will apply to each alleged incident and not to the course of conduct as a whole. *Desimone v. Barrows*, 924 A.2d 908, 924 (Del. Ch. 2007). Facebook's claims arose when allegedly deceptive ads were displayed to Facebook users. (*See* D.I. 47 ¶¶ 23, 34, 40, 47.) The claims did not—as Facebook insists (*see* D.I. 60 at 6 n.1)—all conveniently arise in November 2009. They began in April 2009 (D.I. 47 ¶ 9), then occurred "over the following months" (*id.* ¶ 10), and finally in "late October and early November 2009." (*Id.* ¶ 12.) But Facebook does not allege any deceptive ads were displayed after November 2009, so the claims should be dismissed even if they were tolled. If the Court does not dismiss the counterclaims entirely, it should issue an order dismissing Facebook's claims to the extent they arose before October 26, 2009. *See, e.g.*, *Price v. Wilmington Trust Co.*, No. 12476, 1995 WL 317017 (Del. Ch. May 19, 1995) (dismissing claims arising from "numerous repeated wrongs of similar, if not same, character" as time-barred since some occurred more than three years before the filing of the complaint.)

## B. Facebook's counterclaims are not tolled by any alleged fraudulent concealment.

Facebook relies on federal fraudulent-concealment cases, but state law applies here. *Knopick v. Connelly*, 639 F.3d 600, 606 (3d Cir. 2011). Under Delaware law, fraudulent concealment requires an affirmative misrepresentation and will toll the statute of limitations only until the plaintiff could have discovered his rights "by the exercise of reasonable diligence." *Halpern v. Barran*, 313 A.2d 139, 143 (Del. Ch. 1973). The defendant must plead with particularity. *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626 (3d Cir. 1984) (citing Fed. R. Civ. P. 9(b)).

### 1. Facebook has not identified any claims that Kickflip concealed.

Only active concealment triggers tolling. *Bradley v. Md. Cas. Co.*, 563 F. Supp. 602, 606 (D. Del. 1983) (applying *Halpern*, 313 A.2d at 143). An affirmative act is an essential element of

fraudulent concealment. *Id.*; *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254 (Del. Super. Ct. 1969). And the actor must have intended to prevent "the discovery of facts giving rise to a cause of action." *Nardo*, 254 A.2d at 256.

Facebook claims Kickflip "actively misled" it by stating that Kickflip "expected to be in full compliance with Facebook's cease-and-desist letter by November 9, 2009." (D.I. 60 at 10.) Facebook does not explain how this statement concealed its claims based on alleged deceptive ads. (*See* D.I. 47 ¶¶ 23, 34, 40, 47.) Facebook does not identify "service of deceptive ads" that Kickflip actively concealed or intended to prevent Facebook from inquiring or knowing about.

Facebook complains that it "could not recognize that it had valid claims until it learned during the course of this litigation that Kickflip's divestment was to a new entity established by Kickflip's principals with the intention of carrying on the Gambit business as before . . . ." (D.I. 60 at 10.) But Facebook does not point to any facts that it discovered during its recent unilateral discovery that form the basis for a claim. Indeed, if Kickflip divested its Gambit business the ads that would form the basis for a claim could not have come from Kickflip.

### 2. Facebook cannot rely on "information and belief" for fraudulent concealment.

Allegations "based upon information and belief" are permissible only "if the pleading sets forth specific facts upon which the belief is reasonably based." *Hollander v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 10-cv-0836-RB, 2010 WL 4159265, at *4 (E.D. Pa. Oct. 21, 2010) (citation and internal quotations omitted); *see also Weiner v. Quaker Oats Co.*, 129 F.3d 310, 319 (3d Cir. 1997) ("[A] boilerplate allegation that plaintiffs believe the necessary information 'lies in defendants' exclusive control,' if made, must be accompanied by a statement of facts upon which their allegation is based." (internal quotations omitted)). Facebook lacks factual support for its "information and belief" allegation—there are no examples in the Counterclaims and Facebook

concedes it has no "additional examples". (D.I. 60 at 13.)

### 3. Facebook did not exercise reasonable diligence.

The limitations period begins to run again "when the plaintiff is objectively aware of the facts giving rise to the wrong, *i.e.*, on inquiry notice." *EBS Litig. LLC v. Barclays Global Investors, N.A.*, 304 F.3d 302, 305 (3d Cir. 2002) (quoting *In re Dean Witter P'ship Litig.*, No 14816, 1998 WL 442456 (Del. Ch. July 17, 1998)). Facebook claims that the statute of limitations was tolled on November 6, 2009, when Kickflip "actively misled" it by stating that Kickflip "expected to be in full compliance with Facebook's cease-and-desist letter by November 9, 2009." (D.I. 60 at 10.) But on November 12, 2009—three days after the estimated compliance date (*id.*)— Kickflip reported it was not in full compliance, thereby triggering Facebook's discovery of any concealment.

### C. Facebook's breach-of-contract claim does not plead a contract, breach, or damages.

### 1. Facebook has not identified an actual contract or breach by Kickflip.

"To survive a motion to dismiss, a complaint stating a claim for breach of contract must identify a contractual obligation . . . ." *Moore Bus. Forms, Inc. v. Cordant Holdings Corp.*, No. 13911, 1995 WL 662685, at *7 (Del. Ch. Nov. 2, 1995) Instead, Facebook points to several agreements it has *with developers*—not Kickflip. Facebook alleges that the Terms apply to developers and advertisers. (*See* D.I. 47 ¶¶ 3–6.) But Facebook does not allege that Kickflip was a developer or advertiser. Rather, Facebook alleges that Kickflip served ads to game developers who, in turn, displayed ads on Facebook. (*Id.* ¶¶ 8–10.)

Separately, Facebook alleges no offer and acceptance sufficient to create a contract. *Cotter v. Newark Hous. Auth.*, 422 F. App'x 95, 99 (3d Cir. 2011) (finding no breach of contract where complaint "nowhere alleged a valid offer and acceptance."). Instead, Facebook argues that

Kickflip "was required to agree" to the Terms (D.I. 47 ¶ 2) and "was subject to the Facebook Terms" (*id.* ¶ 8). But Facebook cannot unilaterally impose terms that Kickflip did not accept.

Facebook suggests that Kickflip accepted the Terms as a "user." (D.I. 60 at 11–12.) Facebook cites no authority, however, for the proposition that every user who accepts the Terms in its user capacity has thereby restricted its dealings—not just with Facebook but also with third parties. Facebook is a stranger to commerce between virtual-currency providers and developers. It is only when developers choose to display ads on Facebook that the Terms are implicated, and even then Facebook's recourse is against the developers with whom it has contracts. Similarly, Facebook also failed to plead the breach of an obligation owed *by Kickflip*. Facebook does not claim that non-compliant ads were served on Kickflip's applications.

Even when pressed, Facebook cannot identify any Kickflip conduct that constitutes a breach of any particular contract. (*See id.* at 13.) Its brief broadly asserts Kickflip was a "user, advertiser and operator of applications"—but fails to cite any supporting allegations. Facebook also purports to be "entitled to discover additional examples of Kickflip's deceptive and noncompliant ads." (*Id.* at 13.) But the rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Facebook's speculative conclusion that Kickflip may have served noncompliant ads is insufficient to entitle it to engage in a fishing expedition for facts that do not exist.

### 2. Facebook has not adequately pleaded damages.

Other than stating "there is nothing speculative about Facebook's claim to have suffered harm as a result of Kickflip's service of deceptive ads" (D.I. 60 at 14), Facebook makes no effort to rebut Kickflip's argument that Facebook must plead its damages with particularity because they are special. Special damages are damages that do "not flow directly and immediately from

the act of the [breaching] party" *Black's Law Dictionary* 352 (5th ed. 1979). Facebook's claimed

damages are neither direct nor immediate—they allegedly occurred as a result of unfavorable

"press attention" about advertising issues on Facebook and other social networks by numerous

companies, of which Kickflip was allegedly one. (*See* D.I. 47 ¶ 18.) Facebook does not allege that

Kickflip directly and immediately caused damage to Facebook.

**D.  Facebook's counterclaim for tortious interference should be dismissed because it does not identify any developer that actually breached a contract.**

A tortious interference plaintiff "must properly allege an underlying breach of contract".

*Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1036 (Del. Ch. 2006). Facebook

points to Paragraph 13 of the Counterclaims alleging that, in the week following October 29,

2009, "Kickflip continued to serve ads with offers that violated the Facebook Terms [including]

ads served by Kickflip on the Zynga game Yoville . . . ." (D.I. 47 ¶ 13.) Facebook argues that

allegation, read in connection with Paragraph 11, satisfies its pleading burden. But Paragraph 11

describes conduct in May 2009, and does not reference any breach by Zynga. So Facebook did

not allege any developer breach and its tortious interference claim should be dismissed.

Facebook apologizes for its vague pleading because "Kickflip alone" has additional basic

information necessary for Facebook's claim. (D.I. 60 at 16.) But Facebook's defense in this case

is that its ban of Kickflip is justified due to Kickflip's allegedly flagrant violations of Facebook's

policies. Yet now it claims it cannot provide even a single concrete example.

**E.  Facebook's fraud claim should be dismissed because Facebook does not plead that any alleged misrepresentation was false or made with knowledge of falsity.**

Facebook's abandons its broad allegations that Kickflip committed fraud between April and

November 2009 by "repeated[ly] representing" to Facebook that "it would comply with the

Facebook Terms." (*Compare* D.I. 47 ¶ 11 *with* D.I. 60 at 16 (identifying only two allegedly

fraudulent statements).) Instead, Facebook limits the fraud claim to two statements— one by Noah Kagan on May 22, 2009, and another by Kickflip's attorney on November 6, 2009. But Facebook does not allege either statement was false or made with knowledge of falsity.

### 1. Facebook does not allege Noah Kagan's May 2009 statement was false or that he knew it to be false at the time.

Facebook alleges that "on May 22, 2009, Noah Kagan—one of Kickflip's principals—represented that none of the ads with offers served by Kickflip contained adult content." (D.I. 47 ¶ 11.) But (1) there is no allegation that this statement was false when Mr. Kagan made it, and (2) even if it was false, Facebook does not claim he knew it was false. *See Solow v. Aspect Res., LLC*, No. 20397, 2004 WL 2694916, at *2 (Del. Ch. Oct. 19, 2004) (fraud plaintiff must show that defendant "knew or believed . . . statement [at issue] to be false *at the time it was made*" (emphasis added)); *Liafail, Inc. v. Learning 2000, Inc.*, No. 01-678 GMS, 2002 WL 31667861, at *4 (D. Del. Nov. 25, 2002) (scienter is an essential element in pleading fraud).

Instead of arguing that Mr. Kagan's May 2009 statement was made with knowledge of falsity, Facebook asks this Court to "infer" such knowledge from Kickflip's purported negligence. Namely, Facebook argues Kickflip "had insufficient safeguards in place to prevent Gambit from continuing to serve ads in violation of the Facebook Terms." (D.I. 60 at 17–18; D.I. 47 ¶ 28.) While not having safeguards in place may be negligent, it is not a willful misrepresentation. *See Stuchen v. Duty Free Int'l*, No. 94C-12-194, 1996 WL 33167249, at *6 (Del. Super. Ct. Apr. 22, 1996) ("Allegations of negligence will not suffice where fraud is alleged.").

Facebook also points to two statements that Kickflip made related to ads served to customers in or around November 2009. (D.I. 60 at 18; D.I. 47 ¶¶ 14, 17.) Neither statement renders plausible that Mr. Kagan made his May 2009 statement with knowledge of its falsity. That

Kickflip "was telling customers that it was '100% compliant' and not banned from Facebook" is consistent with the fact that Kickflip thought it was compliant with the Facebook Terms.

Facebook also argues that Mr. Kagan's statement was a "statement of present intention." (D.I. 60 at 17.) This argument fails for three reasons. First, the statement on its face does not discuss any intent—it says that the ads at the time did not contain adult content. Second, the statement could not be fraudulent if it was true at the time Mr. Kagan made it. *Mellon Bank Corp. v. First Union Real Estate Equity & Mortg. Invs.*, 951 F.2d 1399, 1411 (3d Cir. 1991) ("Statements of intention made at the time of contracting are not fraudulent simply because of a later change of mind."); *see also* Restatement (Second) of Torts § 530(1) cmt. b. ("If the statement is honestly made and the intention in fact exists, one who acts in justifiable reliance upon it cannot maintain an action for deceit if the maker for any reason changes his mind and fails or refuses to carry his expressed intention into effect.") Facebook does not allege that Mr. Kagan's statement was false at the time he made it on May 22, 2009. Third, the statement only references adult-content ads. But Facebook's allegation of falsity includes far broader terms, such as Kickflip's supposed "continued servi[ce of] deceptive ads . . . or ads that were otherwise in violation of the Facebook Terms." (D.I. 47 ¶ 38.) These allegations cannot support an inference that the May 22, 2009 statement—which concerned only "adult content"—was false at the time it was made.

### 2. Facebook does not plead facts sufficient to show that Kickflip did not intend to comply with Facebook's demands at the time of the November 2009 statement.

On November 6, 2009, Facebook alleges Kickflip's attorney sent a letter stating Kickflip would comply with Facebook's demand and that Kickflip hoped to be in full compliance by November 9, 2009. (D.I. 60 at 18.) Again, Facebook fails to allege any specific facts to support its claim that the November 6, 2009 statement was false when the lawyer made it.

Facebook argues Kickflip could not be in full compliance with the demand letter because Kickflip was "arranging to transfer the Gambit business to a new entity . . . ." (*Id.*) Facebook claims it would have taken further "enforcement" action had it been aware of the divestment and Kickflip's attempt to "carry on as before." (*Id.* at 6.) This argument fails for three reasons.

First, Facebook fails to rebut Kickflip's argument that the November 6, 2009 statement is not a statement of present intent but, rather, a promise of future performance, which cannot support a claim for fraud. Second, the divestment did not negate Kickflip's compliance with the demand letter. Whether Kickflip was transferring assets to a new business does not relate to whether Kickflip would be in compliance. Third, Facebook's claim that "Kickflip plann[ed] to carry on as before" does not allege that Kickflip planned to serve deceptive ads. (*Id.* at 19.) Kickflip's intent was to carry on with a compliant business—an intent that cannot give rise to a fraud claim.

## CONCLUSION

Facebook's counterclaims are based on substantive Delaware law, and consequently are subject to Delaware's statute-of-limitations jurisprudence. Under Delaware law, Kickflip's Complaint did not toll Facebook's claims. Facebook cannot plead a contract because none existed. It cannot plead fraud because it does not identify any statement that Kickflip made knowing it was false. And Facebook cannot plead tortious interference because it does not identify a contract that was actually breached. The Court should grant Kickflip's motion.

Dated: January 21, 2014

By:   /s/ Kenneth L. Dorsney
Mary B. Matterer (I.D. #2696)
Kenneth L. Dorsney (I.D. #3726)
**MORRIS JAMES LLP**
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com
kdorsney@morrisjames.com

Derek A. Newman (*pro hac vice*)
Derek Linke (*pro hac vice*)
**NEWMAN DU WORS LLP**
1201 Third Avenue, Suite 1600
Seattle, Washington 98101
(206) 274-2800
dn@newmanlaw.com
linke@newmanlaw.com

Brian R. Strange (*pro hac vice*)
Keith L. Butler (*pro hac vice*)
**STRANGE & CARPENTER**
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055
lacounsel@earthlink.net
kbutler@strangeandcarpenter.com

**ATTORNEYS FOR PLAINTIFF
KICKFLIP, INC., D/B/A GAMBIT**