IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

KICKFLIP, INC.,             )
                            )
            Plaintiff       )
                            )
      v.                    )  Civ. No. 12-1369-LPS
                            )
FACEBOOK, INC.,             )
                            )
            Defendant.      )

Mary B. Matterer, Kenneth L. Dorsney, MORRIS JAMES LLP, Wilmington, DE

Derek A. Newman, Derek Linke, NEWMAN DU WORS LLP, Seattle, WA

Brian R. Strange, Keith L. Butler, STRANGE & CARPENTER, Los Angeles, CA

   Counsel for Plaintiff Kickflip, Inc.


David E. Ross, Benjamin J. Schladweiler, SEITZ ROSS ARONSTAM & MORITZ LLP, Wilmington, DE

Thomas O. Barnett, Jonathan Gimblett, COVINGTON & BURLING LLP, Washington, D.C.

   Counsel for Defendant Facebook, Inc.

**MEMORANDUM OPINION**

January 21, 2015
Wilmington, DE


**STARK, U.S. District Judge:**

This opinion addresses the extent to which Plaintiff Kickflip, Inc. ("Kickflip") waived attorney client privilege in its declaration of corporate representative Christopher Smoak (D.I. 58), submitted in opposition to Defendant Facebook, Inc.'s ("Facebook") motion for summary judgment for lack of standing (D.I. 51). It also addresses Facebook's motion to strike (D.I. 61) the Smoak declaration (D.I. 58) submitted by Kickflip in connection with opposing summary judgment.[1]

## BACKGROUND

Kickflip filed this action against Facebook on October 26, 2012, alleging antitrust violations and tortious interference, in relation to Facebook's virtual-currency service, Facebook Credits, and Facebook's social-gaming network. (D.I. 1) On January 4, 2013, Facebook filed a motion to dismiss the complaint for failure to state a claim. (D.I. 11) On September 27, 2013, the Court denied Facebook's motion to dismiss, but also granted Facebook limited discovery on the issue of standing. (D.I. 22, 23) Facebook subsequently deposed Christopher Smoak ("Smoak"), who had been designated as the Rule 30(b)(6) corporate representative for Kickflip. (D.I. 61 at 1) Throughout his deposition, Smoak invoked attorney-client privilege in response to Facebook's questions regarding a November 9, 2009 and December 2009 agreement between Kickflip and Gambit Labs, Inc. ("November Agreement" and "December Agreement"). (*Id.*)

A representative example of Smoak's 30(b)(6) deposition testimony was as follows:

---

[1] Facebook's motion for summary judgment remains pending, as does Kickflip's motion to dismiss Facebook's amended counterclaims (D.I. 49).

1

> Q: Why did Gambit Labs enter this agreement on the 9th of November, 2009?
>
> Mr. Newman: Objection to the extent that the question calls for an answer that the witness only knows as a consequence of legal advice.
>
> The Witness: Yeah, I'm going back to attorney-client privilege.

(D.I. 62-2 at 24:12-18; *see also* D.I. 74 at 2 (citing additional deposition testimony))

On December 31, 2013, Facebook filed a motion for summary judgment for lack of standing, based on the divestment of assets subject to the November and December Agreements. (D.I. 51) On January 14, 2014, Kickflip filed its opposition to Facebook's motion for summary judgment (D.I. 57), attaching to it a declaration by Smoak (D.I. 58) ("Declaration"). On January 21, 2014, Facebook filed motion to strike three paragraphs of the Declaration – paragraphs 34, 35, and 45 – as being inconsistent with Smoak's prior deposition testimony. (D.I. 61 at 6) These paragraphs of the Declaration state as follows:

> 34. The most important difference [between the November and December Agreements] was that under the December Agreement, Gambit Labs received a substantially more favorable tax treatment. This was accomplished by the agreement of Kickflip and the Kickflip shareholders that, upon closing, the Kickflip shareholders would enter into stock purchase agreements with Gambit Labs to acquire shares of Gambit Labs corresponding to their ownership interest in Kickflip. If the November Agreement were not superseded, Gambit Labs would have been required to pay substantial taxes because the Kickflip assets would be viewed as income.

> 35. But under the December Agreement, Gambit enjoyed a tax-free stock swap – Kickflip and the Kickflip shareholders promised to purchase Gambit Labs shares equivalent to their shares in Kickflip. (December Agreement § 2.1.1.) As a result of that restructuring, Gambit Labs' tax liability was reduced by hundreds of thousands of dollars.
>
> . . .
>
> 45. Kickflip and Gambit Labs voluntarily and intentionally waived any remaining closing obligations imposed under the December Agreement.

(D.I. 58 at ¶¶ 34-35, 45)

On April 4, 2014, the Court heard oral argument on all pending motions, which included Facebook's motion for summary judgment and motion to strike. (D.I. 72) At the conclusion of the hearing, the Court ordered the parties to meet and confer and advise the Court how they wished to proceed. (*Id.* at 67-69) A week later, the Court received an extensive joint status report, in which, among other things: Kickflip withdrew paragraphs 34-35 of the Declaration, arguing that this moots the motion to strike and allows the Court to resolve the motion for summary judgment without further briefing, but at the same time requested additional briefing if the Court were to believe any waiver of attorney-client privilege may have occurred. (D.I. 69) For its part, Facebook sought immediate discovery based on what it contends was a waiver of attorney-client privilege, to be followed by supplemental briefing on the summary judgment motion. (*Id.*) After speaking with the parties once again (D.I. 76), the Court ordered and received additional briefing addressing whether Kickflip had waived attorney-client privilege and, if so, the scope of that waiver. (D.I. 73, 74, 75, 77, 78) Over the course of the briefing, it

3

became clear that more than just three paragraphs of the Declaration were pertinent to the issues before the Court. (*See, e.g.*, D.I. 77 at 4 n.3)

In the meantime, on May 6, 2014, Kickflip filed a Notice that Gambit Labs, Inc. is the successor-in-interest to Kickflip, as a result of an April 24, 2014 merger of Kickflip into Volume11 Media, Inc. and a subsequent name change of Volume 11 Media, Inc. to "Gambit Labs, Inc." (D.I. 71)

## LEGAL STANDARDS

First, the Court must address whether there has been a waiver of attorney-client privilege. The Court of Appeals for the Third Circuit has held that "because the attorney-client privilege obstructs the truth-finding process, it is construed narrowly." *Westinghouse Elec. Corp. v. Republic of Phillippines*, 951 F.2d 1414, 1423 (3d Cir. 1991). "[I]t is well-settled that when a client voluntarily discloses privileged communications to a third party, the [attorney-client] privilege is waived." *Id.* at 1424. A party cannot "invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit . . . [because] the attorney-client privilege is not designed for such tactical employment." *In re Intel Corp. Microprocessor Litigation*, 258 F.R.D. 280, 289-90 (D. Del. 2008); *see also In re ML-Lee Acquisition Fund II, L.P.*, 859 F. Supp. 765, 766 (D. Del. 1994) ("A client may waive the [attorney-client] privilege by disclosure of some privileged communication, or by asserting reliance upon the advice of counsel as an essential element of his defense.") (internal citations omitted).

Second, if there has been a waiver of the attorney-client privilege, the Court must determine the scope of that waiver. Federal Rule of Evidence 502(a) provides that a waiver resulting from the disclosure of privileged or protected information in a federal proceeding

4

extends to undisclosed communications or information only if: "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a); *see also Shionogi Pharma, Inc. v. Mylan Pharms., Inc.*, 2011 WL 6651274, *3 (D. Del. Dec. 21, 2011).

## DISCUSSION

Kickflip argues: (1) there was no waiver; (2) anyway, any waiver should be "narrowly tailored to the subject within paragraphs 34 and 35" of the Declaration; and (3) Kickflip does not oppose striking paragraphs 34 and 35 of the Declaration, which eliminates the need for the Court to consider the issue of waiver. Facebook argues that: (1) a waiver occurred as a result of the Declaration; (2) such waiver requires that Kickflip produce documents and provide further 30(b)(6) deposition testimony with regard to "the motives for, negotiation, implementation and performance of the asset transfer transaction" [i.e., November and December Agreements], including "any documents or communications with counsel that Mr. Smoak relied upon for any statements in his [D]eclaration" (D.I. 74 at 7-8); and (3) Kickflip be ordered to pay Facebook's "costs associated with any further deposition, including air or train fares, hotel accommodation and attorney time spent preparing for and taking the deposition" (*id.* at 9). The parties further disagree as to whether, in the interests of efficiency, the Court should authorize Facebook to take discovery relating to the May 2014 corporate transactions that resulted in Gambit Labs, Inc. becoming the successor-in-interest to Kickflip, with Facebook requesting such discovery immediately and Kickflip opposing it.

The Court addresses these disputes below.

5

I.  **Waiver**

In arguing that no waiver occurred, Kickflip asserts that the invocation of attorney-client privilege was appropriate, with regard to the deposition question, "*Why* was [the December] agreement needed?" (D.I. 75 at 4-5) (emphasis added) In Kickflip's view, the later Declaration addressed the unrelated, and unasked, questions of, "*What effect* did the December Agreement have?" or "Did Gambit . . . benefit from the December Agreement?" (*Id.* at 5) (emphasis added) Kickflip asserts that responding to the latter questions did not require reliance on confidential communications and, therefore, there was no waiver. (*Id.* at 5-6)

The Court finds Kickflip's arguments unconvincing and further finds that the Declaration constituted a waiver of attorney-client privilege. The disclosures in the Declaration were included for the purpose of showing that the reason for (i.e., *why*) the December Agreement was "a substantially more favorable tax treatment for Gambit," and that if not for Facebook's actions, Kickflip would never have transferred assets to Gambit. (D.I. 57 at 4, 15 (Kickflip relying on these points in its opposition to Facebook's motion for summary judgment); *see also* D.I. 58 at ¶ 32)

As Facebook contends, "Mr. Smoak's disclosure in his [D]eclaration of some of the reasons for Kickflip's asset transfer transaction with Gambit Labs, which he testified at his deposition that he only knew as a result of advice of counsel, plainly operates as a waiver." (D.I. 77 at 1) The Court sees no meaningful distinction between the questions asked during the deposition – e.g., "why" was the December Agreement needed – and the disclosure in the Declaration regarding the "effect" of the December Agreement. Instead, in the Court's view, the substantive disclosures in the Declaration regarding the November and December Agreements

6

provide information it appears Facebook was attempting to elicit in the deposition, which Facebook was unable to do as a consequence of Kickflip's invocation of the attorney-client privilege. Thus, there has been a waiver of the attorney-client privilege by Kickflip as a result of the Declaration.

## II. Scope of Waiver

Having found that there was an intentional waiver of the attorney-client privilege through the disclosures contained in the Declaration, the Court must next determine the scope of that waiver. Pursuant to Rule 502(a), the scope of the waiver is limited to communications that concern the same subject matter as the disclosure and ought, in fairness, be considered with the information already disclosed. *See Shionogi Pharma*, 2011 WL 6651274 at *4.

In Facebook's view, the breadth of the waiver is such that Kickflip should be ordered to produce "(i) any documents previously withheld as privileged relating to the November and December Agreements, and (ii) any documents reviewed or relied upon by Mr. Smoak in the drafting of his Declaration concerning the subjects as to which Kickflip and Volume 11 have waived privilege," and Kickflip should provide additional Rule 30(b)(6) deposition testimony on these two topics as well. (D.I. 69 at 3) For its part, Kickflip asserts essentially that the waiver extends only to issues regarding tax treatment, so any further discovery should be limited "to the specific subjects in the declaration testimony," i.e., "the tax benefits described in the relevant paragraphs." (D.I. 75 at 1, 10) The Court agrees with neither party.

Instead, the Court finds the scope of the waiver to extend to, but only to, the November and December Agreements, including the motives for and effects of entering into them, as well as the negotiation, performance, and implementation of these Agreements. Limiting the waiver

and discovery just to issues relating to tax treatment would be too narrow, and would deprive Facebook (and the Court) of information that ought in fairness be considered with the information Kickflip has disclosed, for reasons including that Kickflip has indicated it would not have undertaken the November and December Agreements were it not for Facebook (i.e., regardless of any tax benefits) (*see, e.g.* D.I. 58 at ¶ 32). Yet expanding the waiver and discovery also to encompass "any documents *reviewed* . . . by Mr. Smoak in the drafting of his Declaration concerning the subjects as to which Kickflip and Volume 11 have waived privilege" (D.I. 69 at 3) (emphasis added), as Facebook requests, would unduly risk requiring Kickflip to disclose communications outside of the subject matter of what is disclosed in the Declaration.

## III. Motion to Strike

Under the circumstances, the Court will not accept Kickflip's offer to strike paragraphs 34 and 35 from the Declaration and resolve the summary judgment motion without further discovery or briefing. Kickflip failed to disclose relevant information during the deposition of its corporate representative, then later chose to disclose some of that information as a basis for opposing Facebook's motion for summary judgment. Thereafter, Kickflip incorrectly insisted it never waived privilege, and opposed discovery that would permit Facebook (and the Court) to be sure Kickflip's waiver was not selective (i.e., resulting in a skewed and inaccurate recitation of the facts surrounding the November and December Agreements). Consequently, Facebook has been prejudiced, and this case has been substantially delayed.

The proper exercise of the Court's discretion, then, is to permit discovery consistent with the waiver of attorney-client privilege and provide the parties an opportunity to submit briefing directed to the impact, if any, of that discovery on the pending motion for summary judgment for

lack of standing. Simply striking paragraphs from the Declaration, and proceeding thereafter as if there was never any waiver of privilege, would be unfair to Facebook.

The Court will not, however, grant Facebook's request to shift the costs of the additional deposition to Kickflip, as this monetary relief is not warranted under the totality of the circumstances. Among other things, Kickflip has not violated any Court order, and even Facebook does not contend that the initial assertion of privilege at the 30(b)(6) deposition was improper. The additional discovery and briefing being provided to Facebook is an adequate and appropriate remedy.

The motion to strike (D.I. 61) will be denied.

## IV. Merger Discovery

Finally, there is no need at this time to order Kickflip (or any other party) to provide discovery relating to the April 24, 2014 merger between Kickflip and Volume 11 Media. It does not appear that any party is contending that such discovery is necessary or even relevant to Facebook's summary judgment motion. (*See* D.I. 74 at 9) While this discovery may be relevant to a forthcoming motion for leave to amend, Kickflip has not filed such a motion, and the Court can deal with any discovery issues relating to amendment at the appropriate time.

## CONCLUSION

An appropriate Order will be entered.