1              IN THE UNITED STATES DISTRICT COURT

2              IN AND FOR THE DISTRICT OF DELAWARE

3                          - - -

KICKFLIP, INC.,

4                                    :     CIVIL ACTION

         Plaintiff,                  :

5                                    :

         v.                          :

6                                    :

FACEBOOK, INC.,                      :

7                                    :     NO. 12-1369 (LPS)

         Defendant.

8                          - - -

9                      Wilmington, Delaware
                       Friday, June 12, 2015

10                     *Telephone Conference*

11                         - - -

12   BEFORE:         HONORABLE **LEONARD P. STARK**, Chief Judge

13                         - - -

APPEARANCES:

14

15

         MORRIS JAMES, LLP

16       BY:  KENNETH L. DORSNEY, ESQ.

17            and

18       NEWMAN DuWORS, LLP
         BY:  DEREK LINKE, ESQ.

19            (Seattle, Washington)

20            and

21       STRANGE & BUTLER
         BY:  BRIAN R. STRANGE, ESQ.

22            (Los Angeles, California)

23                  Counsel for Kickflip, Inc., d/b/a
                    Gambit

24

25                       Brian P. Gaffigan
                         Registered Merit Reporter

1    APPEARANCES:  (Continued)

2

3                    ROSS ARONSTAM & MORITZ, LLP
                     BY:  BENJAMIN J. SCHLADWEILER, ESQ.

4                         and

5                    COVINGTON & BURLING, LLP
                     BY:  THOMAS O. BARNETT, ESQ.,

6                         JONATHAN GIMBLETT, ESQ., and
                          MELISSA LOU, ESQ.

7                         (Washington, District of Columbia)

8                         Counsel for Facebook, Inc.

9

10

11                       - oOo -

12                  P R O C E E D I N G S

13          (REPORTER'S NOTE:  The following telephone

14   conference was held in chambers, beginning at 3:10 p.m.)

15          THE COURT:  Good afternoon, everybody.  This is

16   Judge Stark.  Who is there, please?

17          MR. DORSNEY:  Good afternoon, Your Honor.  Ken

18   Dorsney on behalf of Kickflip.  With me is my co-counsel,

19   Brian Strange from Strange & Carpenter and Derek Linke from

20   Newman DuWors.

21          THE COURT:  Okay.

22          MR. SCHLADWEILER:  Good afternoon, Your Honor.

23   Ben Schladweiler from Ross Aronstam & Moritz on behalf of

24   Facebook, along with Jonathan Gimblett, Thomas Barnett, and

25   Melissa Lou from Covington.

1          THE COURT:  Okay.  Good afternoon to all of

2    you.  I have my court reporter with me.  For the record, it

3    is the case of Kickflip versus Facebook, Civil Action No.

4    12-1369-LPS.  I set this time to talk about a discovery

5    dispute raised by Facebook, so let me hear first from

6    Facebook, please.

7          MR. GIMBLETT:  Good afternoon.  This is Jonathan

8    Gimblett for Facebook.  I'll be relatively brief because we

9    have laid out the outlying in our letter of June the 8th.

10         In short, we regard the declarations that

11   Kickflip filed one week after the close of supplemental

12   briefing on summary judgment as a major development in

13   the case.  Kickflip has relied now for 20 months on this

14   agreement which it represented was signed on December

15   the 15th, 2009 as a basis for its standing.

16         These declarations establish first that they

17   repeatedly misrepresented these dates of execution of that

18   agreement.  Perhaps more significantly, they now admit that

19   the agreement was actually created in March 2012, in the

20   midst of a tax audit by the IRS into the 2009 tax year, as a

21   specific fact date, in order to claim a tax benefit in that

22   2009 tax year.

23         These disclosures came after we have filed our

24   supplementary reply brief, despite the fact that we had been

25   asking for, two months previously to that date, explanations

1    as to some documents that had been produced which implied

2    that the agreement wasn't in place at least as of July of

3    2010, and the complete absence of any other documentary

4    support in the record for the 2009 creation date.

5            We asked repeatedly, and this culminated in

6    e-mails we sent to Kickflip's counsel on April the 3rd, five

7    days before the filing deadline, asking specifically for

8    them to disclose any records so that we can get to the

9    bottom of that, and we never received a response to that

10   request.

11           Having now made these disclosures about the

12   events, we believe that they raise substantial questions

13   that are directly relevant to the standing question at issue

14   in this litigation.

15           One question again as to whether you can rely on

16   the December agreement to establish Kickflip standing, if,

17   as it appears, and this may well be confirmed with the

18   development of further discovery, the agreement was entered

19   into in a tortious intent and is in violation of public

20   policy and is void ab initio.

21           There are also questions that go to Kickflip's

22   and Gambit Labs understanding of the implications of the

23   November agreement, since we now know the December agreement

24   was created just seven months before this litigation was

25   instituted.  Then that may well set off something about

1    Kickflip's understanding of a defect in that standing

2    flowing out of the November agreement.

3              And, finally, there are questions here that

4    may well warrant sanctions ultimately depending on what

5    discovery shows.

6              Now, the only substantive response that Kickflip

7    has made to our request, the case we made for additional

8    discovery is to argue that the we, Facebook lacked standing as a

9    third party to challenge the December agreement.  But this

10   way of trying to frame the question really gets it backwards

11   because what is at issue in this stage of the litigation

12   is not Facebook's standing, it's Kickflip's standing, and

13   Kickflip has the burden to showing it has standing.  In

14   trying to meet that burden, it relied repeatedly on this

15   December agreement and on language within it, and it is

16   asking the Court to give effect to that language as a basis

17   for its own standing.

18             Now, if additional discovery shows that the

19   agreement was fraudulent, that it's void ab initio as this

20   country's public policy, then that means effectually the

21   agreement never came into existence and this court could

22   not rely on the December agreement to establish asserting

23   standing.  In fact, that question really has nothing to

24   do with Facebook's standing to challenge the December

25   agreement.  It is all about whether this agreement is valid

1    and, as such, gives them a basis to rely on it in order to

2    establish Kickflip's standing.  We believe that discovery is

3    merited to answer that question.

4              THE COURT:  Do you, does Facebook at this

5    question have any doubt that what you are being told

6    happened in terms of the timing of when the December 2009

7    agreement was actually drafted and how it is that you were

8    only told this date somewhat recently?  Do you have any

9    doubt that that is story is the truth and that that timing

10   is the truth at this point?

11             MR. GIMBLETT:  We simply don't know.  All we

12   have, Your Honor, is a representation from Mr. Benizek and

13   from Mr. Smoak.

14             I have to say, two months after we first raised

15   this question in the Rule 30(b)(6) deposition of Mr. Smoak

16   on February 25th, it strikes us as strange that we can ask

17   that question repeatedly from that date on and only hear

18   this startling admission from Kickflip weeks after the close

19   of briefing on the motion.

20             THE COURT:  All right.  And with respect to

21   briefing, if I do grant the additional discovery you are

22   seeking, does it necessarily follow that you would want an

23   opportunity to supplement the briefs on the pending motion

24   for summary judgment?

25             MR. GIMBLETT:  Yes, I think that would be a way

1    to proceed.

2              THE COURT:  All right.  Thank you.  Let me hear

3    from Kickflip, please.

4              MR. STRANGE:  Thank you, Your Honor.  Brian

5    Strange for Kickflip.

6              We believe that Facebook's request for

7    additional follow-up discovery should be denied.  Facebook

8    has already had the opportunity to take extensive unilateral

9    discovery, including deposing Mr. Smoak three times; twice

10   as it a deponent for Kickflip and once as a deponent for

11   Volume 11.  Facebook has served three requests for

12   production of documents on the issue of standing.

13             The reason that we think that discovery is

14   neither relevant, nor necessary is that there is no dispute

15   that the December agreement was created and executed before

16   this litigation commenced and, therefore, has no impact on

17   the issue of standing.

18             The substance of the November agreement --

19   December agreement has not changed.  Rather, Facebook has

20   made every attempt to challenge the validity of the

21   agreement, first for want of consideration and then failure

22   to close, among others.  But the case law is clear that as

23   a third party, Facebook does not have standing to challenge

24   the validity of the agreement.  That is under the *Emerson*

25   case.

1           Here, the circumstances after the discovery

2    closed, this came up about the date of this agreement.  We

3    have a signed declaration from an attorney who is licensed

4    to practice who swore under oath about what happened and I

5    think explained it in detail as well as admitted that he

6    is the one that gave this information to Mr. Smoak in

7    preparation for his deposition.

8           There is absolutely no reason to challenge an

9    attorney filing a declaration under penalty of perjury about

10   what happened here.  But I think the most important thing

11   is while Facebook has now come up with a novel theory that

12   perhaps the December agreement constituted tax fraud, they

13   don't have standing to make that argument because it's

14   pretty clear under the cases we have cited to, *The*

15   *Commissioner of the Internal Revenue* case, that a third

16   party does not have the right to have a Court declare a

17   legal contract void.

18          The Court won't enforce that agreement if the

19   parties are trying to enforce it.  But here, you have a

20   third party trying to attack it, and under the *Emerson* case

21   and the *Commissioner of Internal Revenue* case, Facebook does

22   not have the right to make that challenge.  Once we get to

23   that point, this discovery is not relevant because it is

24   undisputed that the contract was made and entered into prior

25   to this litigation being started, in fact, seven months

1    prior to it, so that this discovery would not be helpful on

2    the issue of standing.

3              THE COURT:  All right.  Let me ask you some

4    questions.  Let's assume for the moment that Facebook

5    doesn't have standing.  Why shouldn't I sua sponte want to

6    understand what happened here when, by your own admission,

7    if I'm following correctly, the testimony that was given

8    repeatedly was false?  Why shouldn't I sua sponte want that

9    to be looked into?

10             MR. GIMBLETT:  Well, Your Honor, I think that

11   the issue here is the date of this agreement, that is, the

12   December agreement.  And I think you have a declaration, a

13   very detailed declaration from Mr. Benizek, an attorney

14   here in California, who has also appeared in your court

15   apparently, at least in the Delaware District Court, who

16   stated that he believed at all times that this declaration

17   -- or, I'm sorry, that this document was made in December

18   and didn't realize until he started looking at his billing

19   records in April that there was a mistake.  And as soon as

20   he found that out, he looked further, admitted in the signed

21   declaration about what happened, and that he is the one that

22   told Mr. Smoak that it was executed in or around December

23   instead of March 2012.  And he explained how that came about.

24             He has also offered to have his deposition taken

25   without the necessity of a subpoena.  So it's not like he is

1    hiding everything here.  He has been I think very

2    straightforward and admitted that it is his fault.  So it is

3    not like it is Mr. Smoak, himself doing something.  He was

4    advised by his corporate counsel, and it seems like there is

5    a sufficient explanation in the record about what happened

6    regarding the date of this document.

7              THE COURT:  But, again, why shouldn't I want

8    that to be explored and tested rather than just accept it at

9    face value, particularly given what Facebook and the Court

10   were told before about this agreement?

11             MR. STRANGE:  Well, Your Honor, I think it

12   depends on whether you believe that the declaration of

13   Mr. Benizek adequately explains the matter.  I think if

14   it does, and since it is not really relevant to the issue

15   of standing, that you could allow perhaps open general

16   discovery because this has been allowed discovery only on

17   the issue of standing, and Your Honor could rule on the

18   pending motion for summary judgment on standing, and then

19   allow general discovery to open and perhaps allow discovery

20   during that period, if it is something of concern to the

21   Court.

22             THE COURT:  You emphasize that there has been

23   extensive discovery, but discovery is intended to get to the

24   facts and the truth.  And the discovery, extensive though it

25   has been, only, at least in terms of the date that this

1    agreement was executed, only got to an untruth until very

2    recently, after the briefing, as I understand it.  Isn't

3    that correct?

4                MR. STRANGE:  It is correct that there was

5    misstatements regarding the date of this document.  There is

6    no question about it.  That is, that although it was dated

7    in December, it was actually created in March of 2012.  And

8    as soon as that came to light, we had these declarations

9    filed by Mr. Smoak and the attorney who was involved in it.

10                But it is correct there was a mistake here, Your

11   Honor.  There is no question about it.  We had Mr. Benizek

12   testify at length about it in his declaration, and he is

13   also willing to have his deposition taken.

14                I guess the question is, with respect to if Your

15   Honor believes it is important to have his deposition taken

16   and tested on his declaration, whether we need to do that

17   before ruling on the standing issue or making a ruling and

18   allowing general discovery to open in the case.

19                THE COURT:  Well, then come to the void as

20   public policy argument.  How could I today rule out the

21   possibility that this agreement actually is in some ways

22   part of a tax fraud and therefore potentially going to be

23   found to be void?  Can I just reject that out of hand at

24   this point?

25                MR. STRANGE:  Yes, Your Honor.  I think that as

1   a matter of law, you can do that.  Because under the *Sammons*

2   case that we cited, it cites Williston on Contracts for

3   the proposition that a third party might not have a Court

4   declare an illegal contract void.  It's only enforcing the

5   contract by one of the parties.  But here, there is no

6   question that assignment of an antitrust claims are allowed

7   as an assignment, and there is no question that corporations

8   can assign stock to each other, so it's not like the subject

9   matter of this contract is somehow improper in terms of the

10  assignment.  So what basically it is trying to do is have

11  this declared an illegal contract and then void.  I think

12  under the clear authorities on contracts that a third party

13  can't do that.

14          THE COURT:  Well --

15          MR. GIMBLETT:  If I may?

16          THE COURT:  No, hold on.  So what would be

17  wrong, Mr. Strange, with the analysis that says the burden

18  to prove standing to be in my court and to bring this

19  antitrust lawsuit is on Kickflip.  The whole basis for your

20  standing as I understand it to this point has been this

21  December 2009 agreement.  And if the facts were to show that

22  that December 2009 agreement was all part of a tax fraud,

23  wouldn't I, on behalf of the Court, want to know that?

24  And if that were the case, are you saying I would have no

25  discretion to say, look, this case, they failed to meet

1   their burden of standing because they're relying on a

2   document that was part of a tax fraud scheme.

3          What is wrong with that analysis?  I understand

4   you're not admitting to those facts, but if that were what

5   discovery showed, what is wrong with that analysis?

6          MR. STRANGE:  Well, yes.  I want to make it

7   clear that this issue of tax fraud is really something that

8   is pretty far from the truth of what happened here.  But

9   putting that aside for a moment, there are a few issues

10  here, Your Honor.

11         No. 1 is that the November agreement we think is

12  not an express assignment of antitrust claims.  Facebook's

13  whole argument is that the November agreement is an express

14  assignment of antitrust claims and therefore those claims

15  went over to Gambit.

16         Just look at, we think we win standing just on the

17  basis of the November agreement because it is not an express

18  assignment, it doesn't say anything about legal claims or

19  causes of action, and so therefore we have standing under the

20  November agreement.

21         Then turning to the December agreement, which

22  expressly says the antitrust claims are not assigned over

23  to Gambit, even if that were invalid, which we don't think

24  it is, you still have the November agreement which allows

25  standing here.

1          But just to go back further, Your Honor, under

2    the analysis of, under the cases we have cited and bear in

3    mind that Facebook has not cite a single case in support of

4    its proposition.  The cases are pretty clear that a court,

5    when looking at the issue of the validity of a contract,

6    doesn't have to have a minitrial on tax fraud.  The issue is

7    whether, whether that contract assigned claims under the

8    antitrust law and a third party can't say, well, we're going

9    to challenge whether that contract is illegal or void.  That

10   is exactly what happened in the *Commissioner* case that we

11   cited where the Commissioner of IRS said that the contract

12   that the taxpayer was using as a deduction was an illegal

13   contract because it involved artifacts which violated a

14   federal law on artifacts.

15          And the Court said, well, the Commissioner

16   doesn't have standing to go make that argument as being void

17   against public policy.  It's only if the parties are trying

18   to enforce the contract, even if it is illegal to enforce,

19   that doesn't mean they can't rely on it for purposes of

20   getting a tax deduction.

21          The same here is that it doesn't mean we can't

22   rely on it for the purpose of whether there is an assignment

23   of antitrust claims.

24          THE COURT:  All right.  Thank you.

25          Let me turn back to Mr. Gimblett, if you have

1    anything you want to add.

2             MR. GIMBLETT:  Well, on this question of case

3    law, let me just say that I think that the cases that

4    Kickflip has cited support the analysis that I made up

5    before.  The *Emerson* case that Mr. Strange mentions

6    specifically held that a third party does not have standing

7    to challenge a contract because the contract was voidable,

8    not void.  I draw that distinction between voidable and void

9    contract.

10            And avoidable contract is one in which the

11   parties to the contract have the option to declare it void

12   and that is why it makes sense for the third party wouldn't

13   have standing to challenge it.

14            A void contract, on the other hand, simply

15   doesn't exist.  And as such, it is not something that can

16   be enforced by a court.  And this is something that is

17   recognized in the *Sammons* case which speaks specifically,

18   has a statement that the statute prohibits an agreement

19   or sale, the result is that the Court will not then there

20   aid to any attempted enforcement of the agreement by the

21   parties.

22            So this contract being void, the issue is not

23   about whether we have got standing to challenge it.  The

24   issue is all about whether you can rely on a contract that

25   is void to establish Kickflip standing.

1          THE COURT:  All right.  And I know there is the

2     briefing on summary judgment but address just briefly for

3     me the suggestion that maybe, maybe standing is going to be

4     established by the plaintiff entirely on the November

5     agreement and therefore it could be that I don't even have

6     to really have to worry about the December agreement.

7          MR. GIMBLETT:  Right.  As we explained in our

8     briefing, our original briefing on summary judgment and the

9     supplemental brief that we submitted, we think there is a

10    good argument from the language that this was an assignment

11    of all assets related to the business and the assets include

12    claims.  And in addition to that, the conduct of Kickflip

13    and Gambit Labs concerns an intent to transfer those claims

14    to Gambit Labs.  There was a letter in November 2009 that

15    basically asserted the claims that Kickflip seeks to assert

16    in this litigation and it did so on behalf of Gambit Labs.

17         Now, this latest submission from Kickflip that

18    the December agreement was, after all a March 2012

19    agreement, could very well bolster that argument because

20    an agreement that was entered into several months before

21    litigation was initiated may well, and we'll see if

22    discovery establishes this, may well have been worded as

23    specifically with this litigation in mind.  And if that was

24    the case, the inclusion of the very convenient preamble

25    language about the intent to retain claims might well be

1    better interpreted as effectively a recognition of the

2    November agreement alone left Kickflip with a big standing

3    problem and the December agreement needed to fix that.

4              Now, if the December agreement is void and can't

5    be relied upon and the November agreement as given all of

6    this evidence we find turns out to have transferred the

7    claims to Gambit Labs, that would be a complete answer to

8    the standing issue.  It would establish that Kickflip does

9    not have standing.

10             THE COURT:  All right.  One further question,

11   Mr. Gimblett.

12             There were I think disputes over discovery

13   previously.  Can you just briefly refresh my recollection

14   on, was Kickflip trying to prevent this discovery that

15   ultimately revealed what we now know about the truth of the

16   timing of this agreement?

17             MR. GIMBLETT:  So the progression here is

18   that after you denied our motion to dismiss, you ordered

19   limited -- you ordered discovery on standing.  At that

20   point, backing up to the 2013, Kickflip produced this

21   December agreement and wrote to you with it basically

22   stating that there is no need for this discovery at all

23   because the December agreement answered any standing

24   questions there could be.

25             Once we go into discovery, there was an issue of

1   the inconsistency between Mr. Smoak's deposition testimony

2   where he repeatedly relied on attorney-client privilege not

3   to answer questions and the very detailed and some might say

4   legalistic declarations that he then submitted in opposition

5   to Kickflip's summary judgment.

6          You ruled, after we had briefed that back and

7   forth, that the Smoak declaration waived privilege and

8   ordered that Kickflip should produce previously withheld

9   documents relating to the November and December agreements.

10  And it was out of the production of those previously

11  withheld documents that the evidence first emerged that the

12  December agreement hadn't in fact been created and executed

13  when Kickflip had represented it was.

14          THE COURT:  Thank you.

15          I know the motion has been pending for awhile

16  and there has been a number of iterations of issues related

17  to it, though it's helpful to refresh my recollection on

18  that.  Thank you.

19          Mr. Strange, is there anything you want to add?

20          MR. STRANGE:  Yes, Your Honor.  If I could.

21  First of all, with respect to the additional discovery that

22  you ordered.

23          Not only did we comply with that discovery,

24  we actually entered a second request for production of

25  documents, separate, so that we could be forthcoming with

1    all of the discovery on this issue.

2              With respect to the void versus voidable, with

3    due respect, Facebook is just wrong about that.  On the

4    *Commissioner of Internal Revenue* case, the Court said there

5    -- the Commissioner tried to say that the contract was void,

6    not voidable, and the Court said that the Commissioner's

7    reliance on Williston is misplaced.  Professor Williston

8    does not suggest a third party may have a Court declare and

9    illegal contract void.

10             So the issue there, Your Honor, is there are

11   cases, and Facebook cites a case regarding, called *Feingold*

12   where the Court says, you cannot assign claims for personal

13   injury or assign claims for punitive damages and therefore

14   wouldn't allow that assignment to be valid.

15             Here, it's different in that there is no

16   question that you can assign antitrust claims.  And so the

17   issue is whether can Facebook make an argument that somehow

18   the contract is illegal, which we don't think it was, but

19   even if it was, can they then say the contract is illegal

20   and therefore void?  And the case we cited, the *Commissioner*

21   case I think clearly holds that they do not have standing to

22   make that argument.

23             One further point, Your Honor, is that we are

24   dealing here, as you know, with antitrust assignments.  And

25   the Third Circuit under the *Gulfstream* case is very clear

1    that antitrust, if you are going to assign an antitrust

2    claim, it has to be an unambiguous assignment.  The November

3    agreement is clearly not an unambiguous assignment of

4    antitrust claims.

5            The whole genesis of this argument by Facebook

6    is trying to avoid that principle because once you look

7    at that November agreement and sees it does not assign

8    antitrust claims, doesn't even say anything about legal

9    causes of action, then there is no argument by Facebook that

10   Kickflip assigned these claims and the standing issue

11   particularly on summary judgment should be denied.

12           THE COURT:  All right.  Thank you.

13           Mr. Gimblett, is there anything else?

14           MR. GIMBLETT:  No, I think that is all for me.

15   Thank you, Your Honor.

16           THE COURT:  All right.  Thank you.  So this is

17   a discovery dispute.  I'm not ruling today on summary

18   judgment.  I'm not ruling today on whether the December 2009

19   agreement, which we now know was drafted and executed in

20   March 2012, whether it's void, whether it's part of a fraud.

21   I'm not ruling on any of that.

22           I'm just faced with a request for additional

23   discovery, and I'm granting that request by Facebook.  I

24   think that it is well warranted to allow the additional

25   discovery that Facebook is seeking under the very unusual

1    circumstances that are presented here.  What occurred during

2    discovery and what was revealed about the actual timing of

3    the December 2009 agreement is, I agree with Facebook, a

4    startling admission.

5            Even accepting all of the representations that

6    are in the record right now, from the attorney as well as

7    Mr. Smoak, as to how this happened, nonetheless, I think

8    when you provide written sworn testimony to another party

9    in litigation and ultimately to a Court, when that sworn

10   testimony goes to at least some of the basis on which you

11   have the burden to prove standing to even be in this court

12   and maintain this lawsuit, and when that testimony turns out

13   repeatedly to be false, I don't think it is unreasonable for

14   the opposing party or indeed for the Court to want to better

15   understand what happened, how that happened, and what, if

16   any, implications there are for that as a result for whether

17   this case can and should be maintained in this court.

18           The way we go about finding out more information

19   and hopefully finding out all of the necessary facts in

20   order to make the determinations on the other issues at

21   least relating to standing is through discovery.  That is

22   what Facebook proposes to do.  And I think, again, that is a

23   reasonable request under the circumstances.

24           It's not entirely clear I suppose whether

25   Facebook has standing to argue that the 2009 agreement is

1    void against public policy.  I don't think I have to decide

2    that issue as a legal matter today in order to find the

3    discovery sought to be relevant and reasonable.

4            I know that I have a concern about whether a

5    party should be able to prove standing to press a case in

6    this court based on a document that is part of a fraud, a

7    tax fraud.  I'm not saying it was part of a tax fraud, but

8    I'm saying it's appropriate to take discovery because I'd

9    like to be more confident that it was not part of a tax

10   fraud.  So the argument that Facebook lacks standing I don't

11   think wins the day for Kickflip on this discovery dispute.

12           All that said --

13           MR. STRANGE:  Your Honor?

14           THE COURT:  All that said -- hold on.  All that

15   said, I am anxious on to get to a final decision whether

16   there is standing, but I do think that after this discovery,

17   it is appropriate to allow the parties to write some

18   additional supplemental briefs.  I would like all of that

19   briefing to be done and indeed the discovery to be done as

20   quickly as possible and the briefing to be as succinct as

21   possible in light of what I have ruled today.

22           I think it is most appropriate that I give

23   you all a few days to meet and confer and propose to me a

24   specific schedule for getting this discovery done and

25   getting me back into a position where this motion is fully

1    briefed so I can determine if there is standing or not.  So

2    I direct that the parties get back to me on that by next

3    Wednesday ideally with a stipulated order related to the

4    discovery and the briefing, but if you can't reach an

5    agreement, then with a short discussion of what your

6    competing proposals are.

7              That is my ruling.  Are there any questions

8    about that, Mr. Gimblett?

9              MR. GIMBLETT:  No questions from me, Your Honor.

10             THE COURT:  All right.  Mr. Strange?

11             MR. STRANGE:  Your Honor, Facebook has requested

12   documents from Kickflip's current litigation counsel which

13   seems to me to be inappropriate, but do you want us to meet

14   and confer on that issue?

15             THE COURT:  Yes.  I mean this was not really

16   presented to me as a dispute about the specifics of the

17   discovery they were seeking.  That is not how you chose to

18   contest this.  That said, if you think there is something

19   left to dispute on the specifics, I would imagine that would

20   come up as you are trying to work out an order for me to

21   sign to govern this remaining discovery.  And I'm always

22   available through my discovery matters process if there are

23   specific disputes that arise during the discovery that I am

24   going to order.

25             So hopefully that is enough for you to work this

1   out, but I'm not sure that that resolves your question

2   today.  Is there anything else, Mr. Strange?

3                MR. STRANGE:  No.  Thank you, Your Honor.  I

4   appreciate it.

5                THE COURT:  All right.  Thank you all very much.

6   Good-bye.

7                (Telephone conference ends at 3:47 p.m.)

8

9        I hereby certify the foregoing is a true and accurate
    transcript from my stenographic notes in the proceeding.

10

11                          /s/ Brian P. Gaffigan
                          Official Court Reporter
12                          U.S. District Court

13

14

15

16

17

18

19

20

21

22

23

24

25