

100 S. West Street, Suite 400 • Wilmington, DE 19801
Telephone 302.576.1600 • Facsimile 302.576.1100
www.ramllp.com

Benjamin J. Schladweiler

Direct Dial: 302.576.1608
bschladweiler@ramllp.com

September 30, 2015

**VIA E-FILING & HAND DELIVERY**   **REDACTED PUBLIC VERSION**
The Honorable Leonard P. Stark
The United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, DE 19801-3555

RE:   *Kickflip, Inc. v. Facebook, Inc.*, C.A. No. 12-1369-LPS

Dear Chief Judge Stark:

Pursuant to the Court's oral order of September 16, 2015, D.I. 125, this letter provides background on the discovery dispute to be discussed on the teleconference scheduled for October 7, 2015, at 10:30 am and Facebook's position with regard to the same.

**Background to the Discovery Dispute**

At the conclusion of the discovery teleconference on June 12, 2015, the Court ordered additional discovery into the circumstances surrounding Kickflip's "startling admission" that a purported December 2009 agreement on which it relied for standing was actually created in March 2012 and backdated, purportedly to secure a tax benefit in the 2009 fiscal year. Transcript, 20:22 - 21:23. The Court invited the parties to avail themselves of its discovery dispute procedures to resolve any dispute on the specifics, including disputes related to Facebook's request for the production of documents by Kickflip's litigation counsel. *Id.*, 23:11-24. After a further round of document requests and Kickflip's partial response thereto, Facebook now asks the Court to rule on three remaining disputes concerning the scope of Kickflip's production under the June 12, 2015 order.

The Honorable Leonard P. Stark
September 30, 2015
Page 2

**Production of Litigation Counsel's Documents Relating to the November and December Agreements**

Facebook's further document requests sought, among other things, litigation counsel's documents relating or referring to the November or December Agreements created on or before October 14, 2013. Kickflip represents that it has produced responsive documents created prior to the filing of the complaint on October 26, 2012. It refuses, however, to produce any later-created documents of litigation counsel, claiming that they are outside the scope of the waiver of privilege previously found by the Court.

The documents sought by Facebook are relevant to establishing Kickflip's and litigation counsel's knowledge when, on October 14, 2013, they submitted to the Court what they represented was "a December 15, 2009 agreement between Kickflip and Gambit Labs," D.I. 28, in support of their contention that "[t]here is no longer a need for limited, early discovery" because the agreement "resolves the standing issue." Proposed Scheduling Order (Oct. 11, 2013), Kickflip's Separate Statement, D.I. 26 at 1. The requested documents are relevant to whether Kickflip or its litigation counsel were aware that, contrary to this representation, the document had in fact been created 7 months prior to filing the Complaint as part of its preparation for the current litigation. In another startling revelation, recently produced billing records ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Facebook asks the Court to order production of the requested documents pursuant to the waiver of privilege found by the Court in its January 21, 2015 order and memorandum. The Court held there that the Smoak Declaration of January 14, 2014, constituted a waiver of privilege "extend[ing] to, but only to, the November and December Agreements, including the motives for and effect of entering into them, as well as the negotiation, performance, and implementation of these Agreements." D.I. 81 at 7. Because "including" does not mean "limited to," this formulation reaches all documents related to the November or December Agreements, not just (as Kickflip now maintains) the subsets of documents falling within the categories listed by the Court as examples. In any event, the new revelation that the December Agreement was created in March 2012 specifically with a view to litigation against Facebook means that the documents sought by Facebook relate to the "effects" and "implementation" of that Agreement.

Furthermore, regardless of the scope of the previously found waiver, production is warranted under the crime-fraud exception to the attorney-client privilege. The attorney-client privilege is broken "[w]here there is a reasonable basis to suspect that the privilege holder was committing or intending to commit a crime or fraud and that the attorney-client communications or attorney work product were used in furtherance of the alleged crime or fraud." *In re Grand*

---

[1] Ex. A, Vazsquez, Benisek & Lindgren invoice for services rendered through March 31, 2012 (emphasis added).

The Honorable Leonard P. Stark
September 30, 2015
Page 3

*Jury*, 705 F.3d 133, 153 (3d Cir. 2012). Here, the privilege holder is Kickflip and documentary evidence provides a reasonable basis to suspect that it knew in October 2013 that the document submitted to the Court was created in March 2012 with a view to litigation and was not, as represented, a "December 15, 2009 agreement." *See* Ex. A.[2]

**Logging of Documents Related to Kickflip's Discovery Efforts**

Facebook's document requests sought litigation counsel's documents relating to its efforts to establish the true creation date of the December Agreement in view of Kickflip's assertion in its April 1, 2015 Response to Defendant's Supplementary Memorandum that "[t]here is also no support for Facebook's last-ditch effort to cast doubt on the date the December Agreement was created." D.I. 93, at 1. Facebook also sought litigation counsel's documents related to the purported failure of Eric Benisek's hard drive in 2012, ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. In view of Kickflip's insistence that these documents are privileged, Facebook requested as a first step that Kickflip search for any responsive documents and produce a privilege log describing them. Kickflip refuses to do so, relying on this Court's Default Standard for Discovery for the proposition that it is not required to log documents created after the initiation of the litigation.

The Default Standard, however, states that its provisions apply only "until further order of the Court." Default Standard on Discovery, 1(a). The Court may depart from those standards when circumstances require. The case for doing so here is overwhelming. The documents sought by Facebook are directly relevant to discovery into Kickflip's inaccurate representations as articulated by the Court on June 12, 2015: "to better understand what happened, how that happened, and what, if any, implications there are for that as a result for whether this case can and should be maintained in this court." Transcript, 21: 14-17. If the documents reveal a lack of diligence or an intent to mislead, the Court may consider whether discovery sanctions are warranted. An order requiring Kickflip to search for and log documents responsive to Facebook's document requests is a minimum first step in giving the Court the information it needs to exercise its authority in this regard.

***In Camera* Review of Certain Documents**

Kickflip has agreed to submit in unredacted form for *in camera* review by the Court six bills for legal services from Eric Benisek and an email chain involving litigation counsel relating to the April 17 Benisek Declaration, on condition that the documents are reviewed by a Magistrate Judge. Facebook's position is that it is for the Court to decide how *in camera* review should be conducted. If the Court orders that the documents be reviewed by a Magistrate Judge, Facebook requests that it be permitted to submit in advance a short brief of no more than five pages providing background information the Magistrate Judge would need to assess the potential relevance of the information.

---

[2] If the Court is not ready to order production on the grounds advanced above, an *in camera* review would be warranted to establish whether the crime-fraud exception applies.

The Honorable Leonard P. Stark
September 30, 2015
Page 4

    Respectfully submitted,

    */s/ Benjamin J. Schladweiler*

    Benjamin J. Schladweiler (#4601)

cc:    All counsel of record

# EXHIBIT A
# REDACTED IN ENTIRETY