# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

KICKFLIP, INC., a Delaware corporation,

    *Plaintiff,*

    v.

FACEBOOK, INC., a Delaware corporation,

    *Defendant*.

**C.A. NO. 12-1369-LPS**

**Jury Demand**

REDACTED VERSION

## RESPONSIVE LETTER TO THE HONORABLE LEONARD P. STARK REGARDING DISCOVERY DISPUTE

Kenneth L. Dorsney (I.D. #3726)
Mary B. Matterer (I.D. #2696)
**Morris James LLP**
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
kdorsney@morrisjames.com
mmatterer@morrisjames.com

Brian R. Strange (*pro hac vice*)
Keith L. Butler (*pro hac vice*)
**Strange & Butler**
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055
bstrange@strangeandbutler.com
kbutler@strangeandbutler.com

Derek A. Newman (*pro hac vice*)
Derek Linke (*pro hac vice*)
**Newman Du Wors LLP**
1201 Third Avenue, Suite 1600
Seattle, WA 98101
(206) 274-2800
dn@newmanlaw.com
linke@newmanlaw.com

Dated: October 2, 2015

*Attorneys for Plaintiff Kickflip, Inc.*

# Morris James LLP

Kenneth L. Dorsney
302.888.6855
kdorsney@morrisjames.com

**VIA EFILING AND HAND DELIVERY**
The Honorable Leonard P. Stark
U.S. District Court for the District of Delaware
844 North King Street, Unit 26, Room 6124
Wilmington, DE 19801-3556

October 2, 2015

REDACTED VERSION

**RE:** ***Kickflip, Inc. v. Facebook, Inc.*, C.A. No. 12-1369 (LPS)**

Dear Chief Judge Stark:

Kickflip, Inc. ("Kickflip") submits this letter in response to Facebook, Inc.'s ("Facebook") September 30, 2015 letter concerning a discovery dispute involving Facebook's demand for Litigation Counsel's documents (D.I. 126). Facebook contends that *all* privileged communications with Litigation Counsel, without limitation, relating to the December Agreement fall within the scope of the waiver of privilege previously found by the Court. Under Facebook's view of the waiver, it would be entitled to each and every privileged communication with or among Litigation Counsel that relates or refers to the December Agreement; including, for example, privileged communications reflecting strategies for this very letter.[1] Facebook's position is unreasonable. Documents already produced by Kickflip establish that Litigation Counsel were not involved in the creation or backdating of the December Agreement. The remaining documents sought by Facebook were all created after litigation commenced and remain privileged and/or protected work product for which no waiver or exception applies. The Court should deny Facebook's request to compel production of these documents.

**Background to the Discovery Dispute:**  At the conclusion of the discovery teleconference on June 12, 2015, the Court granted Facebook's request for additional discovery relating to the backdating of the December Agreement and specifically, the motivations behind the creation and backdating of the agreement and whether it constituted a tax fraud.[2]  (Tr. at 22:4–11.)  Kickflip has accommodated nearly every request of Facebook, but objects to producing the subset of Litigation Counsel's documents and privileged communications to which no waiver applies.

---

[1] Facebook draws an arbitrary cut-off for the waiver at October 14, 2013, the date Kickflip submitted a copy of the December Agreement to this Court (D.I. 28), claiming documents up through this date are relevant to establishing Kickflip's and Litigation Counsel's knowledge of when the Agreement was created. Asserting relevance alone, however, does not bring the requested documents within the scope of the waiver.

[2] In addition to the extensive unilateral discovery that has already been conducted by Facebook, in this new round of discovery, Facebook served 15 new RFPs on Kickflip. Facebook also served a document subpoena on Gambit Labs (consisting of 7 RFPs), as well as document subpoenas on Andrew Hunter, Noah Kagan, and Christopher Smoak (Kickflip's shareholders). Separately, Facebook served document subpoenas on Katy Pletter (Kickflip's former accountant), Eric Benisek (Kickflip's corporate counsel), and Youngman & Ericsson (tax counsel used by Mr. Benisek in connection with his representation of Kickflip).

The Honorable Leonard G. Stark                                    Morris James LLP
October 2, 2015, Page 2

**Litigation Counsel's Documents Post-Dating the Filing of the Complaint Relating to the**
**November and December Agreements Remain Protected from Discovery:**  In its January 21,
2015 order and memorandum, the Court found a waiver of the attorney-client privilege by
Kickflip as a result of statements in Mr. Smoak's January 14, 2014 Declaration relating to the
reasons for entering into the December Agreement.  (D.I. 81.)  The limited waiver was based on
Mr. Smoak disclosing information he only knew as the result of communications with Mr.
Benisek.  Because current Litigation Counsel was not involved in the creation or backdating of
the Agreement, the requested documents from Litigation Counsel cannot be a source of any of
the information identified by the Court's order.[3]

Kickflip has produced everything it can reasonably be expected to produce relating or referring
to the November and December Agreements.  Using search terms, including terms Facebook
specified, Kickflip searched for and produced responsive documents from its own files without
date limitations.  *See* Ex. 2, July 30, 2015 Email Correspondence between Counsel.  And
Litigation Counsel searched for and produced responsive documents created on or before
October 26, 2012 (the date the Complaint was filed).  Kickflip also produced in unredacted form
Litigation Counsel's documents reflecting pre-complaint review and investigation relating to the
December Agreement.[4]  Facebook is not entitled to anymore.

There can be no dispute that the December Agreement was created and executed more than
seven months *before* this litigation commenced.  And the documents already produced ████
█████████████████████████████[5]  It is also undisputed that Kickflip's corporate counsel, Mr. Benisek – as
distinguished from Litigation Counsel – was responsible for preparing and backdating the
December Agreement in March 2012.[6]  As such, there is nothing "startling" about the fact that
Mr. Benisek's March 2012 legal bill███████████████████████████
█████████████████████████████████████████.  Indeed, the fourth recital
to the December Agreement, which has been the subject of extensive briefing, explicitly

--------------------------------------------------

[3] Facebook's recent interpretation of the waiver is also inconsistent with previous positions it has
taken with this Court and Kickflip.  For example, in Facebook's opening brief regarding the
scope of Kickflip's waiver, Facebook acknowledged the inherent limitations of the waiver,
noting that "[w]hile Facebook proposes that the Court construe Kickflip's subject matter waiver
to apply to the November and December Agreements, Facebook accepts that the scope of the
waiver does not reach other issues in this litigation."  (D.I. 74 at 7.)  This limitation must include
the issue of standing and encompass communications with current Litigation Counsel reflecting
strategies for establishing/defending standing based on the Agreements.  Facebook further agreed
in a prior round of discovery that absent some evidence that the December Agreement did not
predate Litigation Counsel's representation in this matter, the communications with Litigation
Counsel could not be a source of any of the information described in the Court's waiver.  *See* Ex.
1, February 10, 2015 Email Correspondence between Counsel.
[4] This production was made on the condition that the production did not constitute an additional
waiver of any privilege or work-product protection.  *See* Ex. 3 at p.6, September 11, 2015 Email
Correspondence between Counsel; Ex. 4 at p.18, August 28, 2015 Correspondence.
[5] *See* Ex. 5, October 25, 2012 Email Correspondence between Kickflip and Litigation Counsel.
[6] Current Litigation Counsel was not retained until after the December Agreement was created
and executed in March 2012.  *See* Ex. 6, Retainer Agreement between Kickflip and Litigation
Counsel (KICK 00003359-3364).

The Honorable Leonard G. Stark

Morris James LLP

October 2, 2015, Page 3

references legal claims against Facebook. The December Agreement was intended to confirm the intent of the parties with, among other things, an obvious view towards litigation. This not-so-startling "revelation" involving Kickflip's corporate counsel does not bring communications with Litigation Counsel reflecting litigation strategies within the scope of the waiver.

Finally, Facebook's contention, which it raises for the first time in its letter to the Court, that production of Litigation Counsel's documents is warranted under the crime-fraud exception to the privilege must be rejected. *See* Ex. 4. There is no reasonable basis to suspect that Litigation Counsel aided Kickflip in any fraud on this Court.[7] *In re Grand Jury*, 705 F.3d 133, 153 (3d Cir. 2012).

**Kickflip Should Not be Required to Log Documents Clearly Protected from Discovery:** Facebook's demand in this regard is unreasonable, unduly burdensome, and would serve no legitimate purpose.[8] The requested post-filing materials pertain to Kickflip's legal representation in this litigation and cannot be a source of any of the information identified in the Court's waiver of privilege. The materials therefore remain protected by the attorney-client privilege and work product doctrine. Facebook has not articulated any potential grounds for challenging Kickflip's assertion of the privilege (because none exist) and thus, there is no real expectation that the log will result in the production of any documents.[9] Under the circumstances, there is no reason to depart from this Court's Default Standard, which expressly excludes post-filing materials from the logging requirements. *See also Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n.22 (3d Cir. 2009) (parties may not be required to log communications with counsel after the litigation has commenced).

***In Camera* Review of Certain Documents:** While Kickflip maintains that such a review is unnecessary (and only serves to further delay the proceedings), in response to a request by Facebook, Kickflip has agreed to submit certain documents in unredacted form for *in camera* review.[10] *See* Ex. 3 at p. 2. Kickflip notes that *in camera* review is generally disfavored, *PHE, Inc. v. Department of Justice*, 983 F.2d 248, 252 (D.C. Cir. 1993), and the Court has discretion to deny Facebook's request. *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 700 n.3 (D. Nev. 1994) (citing *United States v. Zolin*, 491 U.S. 554, 571 (1989)).

---

[7] There is similarly no basis to warrant *in camera* review to establish whether the crime-fraud exception applies here.

[8] In order to identify potentially responsive documents relating to efforts to establish the creation date of the December Agreement, Litigation Counsel would need to search for and review all documents relating to the Agreement. Considering the years of discovery and briefing relating to the Agreement, this would impose a massive burden on Litigation Counsel.

[9] Facebook's claim that the privileged documents may be relevant to determining whether discovery sanctions are warranted is insufficient to create an exception or waiver to the privilege. Where it exists, the privilege itself is absolute, not qualified. *Arcuri v. Trump Taj Majal Assocs.*, 154 F.R.D. 97, 104–05 (D.N.J. 1994) ("If the privilege exists, the communication is not discoverable, no matter how much the opposing party may want to know it.").

[10] Facebook has no objection to the review being conducted by a Magistrate Judge. Because the documents relate to a filing before this Court, Kickflip requests, respectfully, that a Magistrate Judge conducts the review.

The Honorable Leonard G. Stark
October 2, 2015, Page 4



Respectfully submitted,

*/s/ Kenneth L. Dorsney*

Kenneth L. Dorsney (I.D. #3726)
*kdorsney@morrisjames.com*

cc:   All counsel of record (via electronic mail)

# EXHIBIT 1

Exhibit 1
Page 1

## Brian Strange

| | |
|---|---|
| **From:** | Gimblett, Jonathan <JGimblett@cov.com> |
| **Sent:** | Tuesday, February 10, 2015 7:08 PM |
| **To:** | 'Brian Strange' |
| **Cc:** | Derek A. Newman; 'Derek Linke'; Cindy Reichline; Barnett, Thomas |
| **Subject:** | RE: Kickflip v Facebook |

Dear Brian:

As a Rule 30(b)(6) deponent, we expect Mr. Smoak to come to the deposition prepared to testify about Kickflip's knowledge of the matters specified in the order. We do not see any need or obligation to qualify the rather clear instruction the Court has given the parties concerning the scope of the deposition in advance of seeing the documents Kickflip has been ordered to produce and hearing how Mr. Smoak responds to our questioning.

With respect to Kickflip's anticipated document production, I confirm our agreement that documents covered under the Court's order will be those dated before the filing of the complaint in this matter and will not include any communications with litigation counsel, provided that no document excluded by this formulation was a source of Kickflip's information on the subjects described in the Court's order.

Best regards,

Jonathan

---

From: Brian Strange [mailto:LACounsel@earthlink.net]
Sent: Monday, February 09, 2015 8:13 PM
To: Gimblett, Jonathan
Cc: Derek A. Newman; 'Derek Linke'; Cindy Reichline
Subject: Kickflip v Facebook

Jonathan,

As the date of the Rule 30(b)(6) deposition of Kickflip nears, I would like to return to our discussion regarding the scope of the deposition.

I am glad that we are both on the same page in our desire for this deposition to go as smoothly as possible.

We agree that the scope of the deposition is outlined in the Court's order. Accordingly, the designated witness will be prepared to provide testimony relating to the "November and December Agreements, including the motives for and effects of entering into them, as well as the negotiations, performance, and implementation of these Agreements." As we previously discussed, because the November and December Agreements predate the current antitrust litigation and litigation counsel's (my firm and Derek's firm) representation of Kickflip, we consider questions relating to communications with litigation counsel to be protected by the attorney-client privilege and outside the scope of the deposition. We will allow questions to confirm the timing of litigation counsel's representation – *i.e.,* confirming that the November and December Agreements predate litigation counsel's representation – but plan to object to any further questions relating to litigation counsel on the grounds that they exceed the scope of the deposition.

With respect to Kickflip's anticipated document production, we previously agreed that the documents covered by the Court's order will similarly predate this litigation and litigation counsel's representation of Kickflip. I note that the Court expressly rejected Facebook's attempt to expand the waiver and discovery to also encompass any documents "reviewed" by Mr. Smoak in preparing his declaration, ruling that such disclosure would unduly risk

Exhibit 1
Page 2

requiring Kickflip to disclose communications outside of the subject matter of what is disclosed in the declaration.

Our intention is to move this litigation along.  Please notify us as soon as possible if you intend to ask questions at the deposition beyond the parameters above so that we may be able to seek appropriate guidance from the Court and avoid any further unnecessary delay.

Many thanks.

Brian

Brian R. Strange
<image001.png>
12100 Wilshire Blvd., Suite 1900
Los Angeles, California 90025
Tel: 310.207.5055
Fax: 310.826.3210
www.StrangeandCarpenter.com
BStrange@StrangeandCarpenter.com
<image003.jpg>


From: "Gimblett, Jonathan" <JGimblett@cov.com>
Date: January 22, 2015 at 5:06:45 PM MST
To: Brian Strange <LACounsel@earthlink.net>
Cc: "Derek A. Newman" <dn@newmanlaw.com>, "Barnett, Thomas" <tbarnett@cov.com>
Subject: RE: Kickflip v Facebook

Brian:

It was good to speak to you and Derek as well.  We are similarly keen to ensure that the deposition goes smoothly, so I appreciate your reaching out to me about this.  As a preliminary matter, we consider the scope of the deposition to be as defined in the Order and to require no further elaboration. Our current expectation is that the Kickflip deponent's information about the "November and December Agreements, including the motives for and effects of entering into them, as well as the negotiation, performance and implementation of these Agreements" will have been gained independently of the current litigation and independently of any communications with your firm or Derek's firm.  In view of your representation on the call that your and Derek's firms' relationships with Kickflip does not predate this litigation, that may well mean that we do not need to get into the issues covered by your email.  But we do not think it is appropriate to stipulate to any qualification of the deposition topics specified in the Order in advance of receiving the additional documents Kickflip has been ordered to produce and of hearing what Kickflip's deponent has to say.

Similarly, we agree that documents covered under the Court's order will be those dated before the filing of the complaint in this matter and would not include any communications with litigation counsel, provided that no document excluded by this formulation was a source of Kickflip's information on the subjects described in the Court's order.  In this regard, it would be helpful if you can make such a representation in writing, which we can confirm with the deponent at the deposition.

Separately, I am attaching a draft stipulation.  This includes a week of February 23 date for the deposition on the understanding that you will be able to make Kickflip's representative available

2

Exhibit 1
Page 3

on either Monday, Tuesday or Wednesday that week.  We have kept the dates for the briefing schedule as they were in the parties' previous stipulation of May 12.  Please let me know if this looks alright from your perspective.

Best regards,

Jonathan

From: Brian Strange [mailto:LACounsel@earthlink.net]
Sent: Thursday, January 22, 2015 3:35 PM
To: Gimblett, Jonathan
Cc: Derek A. Newman
Subject: Kickflip v Facebook

Jonathan-

It was pleasure speaking to you today.  I understand you are speaking to your client regarding the dates we proposed.  I want to make sure this deposition goes smoothly so I thought it would be useful to confirm my understanding of the scope of the deposition, which we discussed during our phone call.

We agreed that the areas of inquiry at the deposition will not include any discussions that the deponent may have had with litigation counsel, i.e., my firm (Strange & Carpenter) or Derek Newman's firm (Newman DuWors LLP).  We further agreed that any documents covered under the Court's order will be those dated before the filing of the complaint in this matter and also would not include any communications with litigation counsel.

Please confirm that I have correctly stated the parameters of the deposition and our mutual understanding of the Court's order.

Best, Brian

Brian R. Strange

Exhibit 1
Page 4

# EXHIBIT 2

Exhibit 2
Page 1

**Brian Strange**

| | |
|---|---|
| **From:** | Cindy Reichline |
| **Sent:** | Thursday, July 30, 2015 4:03 PM |
| **To:** | Gimblett, Jonathan; Derek A. Newman; Derek Linke; Brian Strange; John Ceglia |
| **Cc:** | Lou, Melissa; Lahr-Pastor, Sonia |
| **Subject:** | RE: Kickflip and Gambit Document Production |

Jonathan,

Following up on our July 24 meet and confer, we have considered your proposed additional/new search terms and we are agreeable to running the following searches to identify new potentially responsive ESI:

- IRS OR I.R.S. OR "Internal Revenue Service"
- audit! OR Katy OR Pletter OR Snyder OR Ericsson OR Youngman OR "tax counsel" OR "tax lawyer"
- (Eric OR Benisek) AND (harddrive OR drive OR computer OR laptop)
- agreement AND (asset! OR share!)
- backdat! OR back-dat! Or "back dat!"

As we discussed, the search for "tax! AND audit!" is redundant of the search for "audit!"; the search for "(Christopher OR Chris OR Smoak) AND declaration" is unnecessary as we did not agree to produce documents relating to Smoak's declaration; and the search for "Facebook AND document! AND (preserv! OR retent! OR retain!) is unnecessary because document preservation policies were identified through a targeted collection effort.

During our call, you indicated that you would provide us with a list of bates numbers with missing native files and also review the cover emails to learn more about the missing native files.  Please provide us with this information and we will seek to remedy any issues with the production.

Further, you made a request for a stipulation to authenticate a document produced by Youngman & Ericsson.  Based on recent email correspondence between you and Tara Shine, it appears that this issue has been resolved.  Please confirm.

Finally, please let us know whether you have confirmed a deposition date for Eric Benisek.

Thanks.

Cindy

Cindy Reichline
**STRANGE & BUTLER**

United States
12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025
+1 310 207 5055

United Kingdom
11/12 Pall Mall, London SW1Y 5LU
+44 (0) 20 7839 4403

creichline@strangeandbutler.com
www.strangeandbutler.com

Exhibit 2
Page 2



**From:** Gimblett, Jonathan [mailto:JGimblett@cov.com]
**Sent:** Friday, July 24, 2015 9:33 AM
**To:** Cindy Reichline; Derek A. Newman; Derek Linke; Brian Strange; John Ceglia
**Cc:** Lou, Melissa; Lahr-Pastor, Sonia
**Subject:** RE: Kickflip and Gambit Document Production

Cindy et al.:

To add more specificity on the second point in my list below, we will request that you run the following additional searches:

Broader Versions of Existing Searches

IRS OR I.R.S. OR "Internal Revenue Service"

audit OR Katy OR Pletter OR Snyder OR Ericsson OR Youngman OR "tax counsel" OR "tax lawyer"

(Eric OR Benisek) AND (harddrive OR drive OR computer OR laptop)

(Eric OR Benisek) *OR* (Christopher OR Chris OR Smoak) AND declaration

New Searches

agreement AND (asset! or share!)

backdat! OR back-dat! OR "back dat!"

tax! AND audit!

Facebook AND document! AND (preserv! OR retent! OR retain!)


Regards,

Jonathan

---

**From:** Gimblett, Jonathan
**Sent:** Friday, July 24, 2015 12:24 PM
**To:** 'Cindy Reichline'; 'Derek A. Newman'; 'Derek Linke'; 'Brian Strange'; 'John Ceglia'
**Cc:** Lou, Melissa; Lahr-Pastor, Sonia
**Subject:** RE: Kickflip and Gambit Document Production

Cindy:

**Exhibit 2**
**Page 3**

For our call at noon Pacific / 3pm Eastern, the issues we would like to cover include:

- Privilege logs for Kickflip and Gambit Labs
- Search terms applied by Kickflip and Gambit Labs
- Scope of searches conducted by Kickflip and Gambit Labs
- Documents withheld by Kickflip and Gambit Labs

We look forward to speaking.

Regards,

Jonathan

---

**From:** Gimblett, Jonathan
**Sent:** Thursday, July 23, 2015 7:29 PM
**To:** 'Cindy Reichline'; Derek A. Newman; Derek Linke; Brian Strange; John Ceglia
**Cc:** Lou, Melissa; Lahr-Pastor, Sonia
**Subject:** RE: Kickflip and Gambit Document Production

Cindy:

We can use the following dial in tomorrow:

1 800 851 0297

Passcode: 4656690

Regards,

Jonathan

---

**From:** Cindy Reichline [mailto:creichline@strangeandbutler.com]
**Sent:** Thursday, July 23, 2015 7:27 PM
**To:** Gimblett, Jonathan; Derek A. Newman; Derek Linke; Brian Strange; John Ceglia
**Cc:** Lou, Melissa; Lahr-Pastor, Sonia
**Subject:** RE: Kickflip and Gambit Document Production

Jonathan, 12 noon/3:00 pm should work for us.  Please circulate a dial-in for the call.  Thanks.

Cindy Reichline
**STRANGE & BUTLER**

United States
12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025
+1 310 207 5055

United Kingdom
11/12 Pall Mall, London SW1Y 5LU
+44 (0) 20 7839 4403

creichline@strangeandbutler.com
www.strangeandbutler.com

**Exhibit 2**
**Page 4**



**From:** Gimblett, Jonathan [mailto:JGimblett@cov.com]
**Sent:** Thursday, July 23, 2015 2:43 PM
**To:** Cindy Reichline; Derek A. Newman; Derek Linke; Brian Strange; John Ceglia
**Cc:** Lou, Melissa; Lahr-Pastor, Sonia
**Subject:** RE: Kickflip and Gambit Document Production

Cindy - would 12 noon / 3pm work for your side?

Regards,

Jonathan

---

**From:** Cindy Reichline [mailto:creichline@strangeandbutler.com]
**Sent:** Thursday, July 23, 2015 2:26 PM
**To:** Gimblett, Jonathan; Derek A. Newman; Derek Linke; Brian Strange; John Ceglia
**Cc:** Lou, Melissa; Lahr-Pastor, Sonia
**Subject:** RE: Kickflip and Gambit Document Production

Jonathan,

We are available to meet and confer tomorrow at 11:00 am Pacific.  Please let us know if that time works for you.

Also, the meet and confer will likely be more productive if you send us a list of issues that you would like to discuss in advance of the call.

Thanks.

Cindy

Cindy Reichline
**STRANGE & BUTLER**

United States
12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025
+1 310 207 5055

United Kingdom
11/12 Pall Mall, London SW1Y 5LU
+44 (0) 20 7839 4403

creichline@strangeandbutler.com
www.strangeandbutler.com

**Exhibit 2**
**Page 5**



**From:** Gimblett, Jonathan [mailto:JGimblett@cov.com]
**Sent:** Wednesday, July 22, 2015 4:08 PM
**To:** Derek A. Newman; Derek Linke; Brian Strange; Cindy Reichline; John Ceglia
**Cc:** Lou, Melissa; Lahr-Pastor, Sonia
**Subject:** Kickflip and Gambit Document Production

Derek, Brian and colleagues:

Please let me know what times you could be available tomorrow or Friday to meet and confer on issues relating to document production by Kickflip and Gambit Labs, Inc.

Regards,

Jonathan

**Jonathan Gimblett**

Covington & Burling LLP
One CityCenter, 850  Tenth Street, NW, Washington, DC 20001
T +1 202 662 5457 | JGimblett@cov.com
www.cov.com

**COVINGTON**

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete thi Thank you for your cooperation.*

**Exhibit 2**
**Page 6**

# EXHIBIT 3

Exhibit 3
Page 1

| | |
|---|---|
| **From:** | Derek Linke <Linke@newmanlaw.com> |
| **Sent:** | Friday, September 11, 2015 12:20 PM |
| **To:** | Gimblett, Jonathan |
| **Cc:** | Lahr-Pastor, Sonia; Greg Tatum; Barnett, Thomas; dross@ram-llp.com; Derek A. Newman; Brian Strange; Cindy Reichline; John Ceglia; Kenneth L. Dorsney; Lou, Melissa; Jason Sykes; Benjamin J. Schladweiler (BSchladweiler@ramllp.com) |
| **Subject:** | Re: Kickflip, Inc. v. Facebook, Inc. |
| **Attachments:** | Letter to Judge Stark re discovery dispute (Kickflip's Edits).docx |

Jonathan,

We are perplexed by your response. Kickflip has no incentive to delay this matter. In contrast, Facebook has done everything in its power to delay litigation on the merits. This is evidenced by Facebook's proposal that the deadline for the completion of depositions should be deferred another four weeks after Kickflip complies with any further orders of the Court or the disputes are otherwise resolved. It is Kickflip's position that it has completed its document productions. There is only one remaining issue in dispute that would require the production of an additional set of documents if so ordered by the Court. Other than to cause further delay, it is unclear why Facebook would need an additional four weeks to review this additional set of documents and to complete depositions.

Further, you only recently identified the specific documents for in camera review (and that was in the afternoon before a long holiday weekend). We indicated that we needed appropriate time to review the documents and to consider the request. It is premature for you to continue to demand that Kickflip consent to a joint letter to the Court requesting a discovery dispute on an issue that Kickflip continues in good faith to resolve without the need for Court intervention.

That said, we have reviewed the specific documents that you identified for in camera review in your September 4th email. If Facebook proceeds with its request for in camera review, Kickflip will agree to submit the identified documents in unredacted form to the court for in camera review provided that they are reviewed by a Magistrate Judge. The submission will include the six bills for legal services (including the invoice for services rendered in October 2011, KICK 00001840, KICK 00001952, KICK 00002816, KICK 00002821, and KICK 00002044), as well as the email chain relating to Mr. Benisek's declaration (KICK00002337). Please let us know if Facebook intends to proceed with the request, and if so, propose the procedural mechanism for doing so.

Finally, attached is the joint letter (eliminating the third issue relating to in camera review) with our edits. If you are in agreement with this version of the letter, we consent to your filing with the Court.

Thanks,

Derek Linke

Newman Du Wors
(206) 274-2827 direct
(206) 669-3638 mobile


On Sep 10, 2015, at 6:18 PM, Gimblett, Jonathan <JGimblett@cov.com> wrote:

Derek:

Your position is untenable given that Kickflip has been on notice of each of Facebook's requests for more than two weeks and the draft letter to Judge Stark only required you to review three short bullets describing in uncontroversial terms the disputes already so well known to you.  Kickflip's foot-dragging over these requests is blatant and unjustified.  As I explained during our meet and confer last week, because document production still has has not been completed, the deadline for completion of

Exhibit 1
Page 2

depositions should be considered deferred until a reasonable time (i.e. 20 business days) after (1) Kickflip's compliance with the further orders of the Court or (2) the date on which these disputes are otherwise resolved.  In order to avoid further unnecessary delay in putting these disputes to the Court, please provide your outstanding responses by 4pm Eastern Time tomorrow.

Jonathan


From: Derek Linke [mailto:Linke@newmanlaw.com]
Sent: Thursday, September 10, 2015 4:47 PM
To: Gimblett, Jonathan
Cc: Lahr-Pastor, Sonia; Greg Tatum; Barnett, Thomas; dross@ram-llp.com; Derek A. Newman; Brian Strange; Cindy Reichline; John Ceglia; Kenneth L. Dorsney; Lou, Melissa; Jason Sykes; Benjamin J. Schladweiler (BSchladweiler@ramllp.com)
Subject: Re: Kickflip, Inc. v. Facebook, Inc.

Jonathan,

It is improper for Facebook to continue to impose such short deadlines (like your email below providing Kickflip only about six business hours to respond to the draft joint letter to Judge Stark).

As noted in our August 28th correspondence, Facebook took more than 16 days to review and respond to our August 12th correspondence (and Kickflip's amended privilege log). Yet when Facebook responded, it demanded a substantive response from Kickflip within just two days (which we provided).

In your August 26th correspondence, Facebook asked Kickflip to agree to submit certain of Mr. Benisek's bills for legal services in unredacted form for in camera inspection. It was not until our September 3rd meet and confer that Facebook added an additional set of documents to that request—litigation counsel's privileged email chains relating to Mr. Benisek's declaration. And it wasn't until that call that Facebook finally attempted to articulate a basis (although, still unclear) to support its request for in camera review. Further, it wasn't until the afternoon of Friday, September 5th, that Facebook identified the specific documents for Kickflip to consider.

On Tuesday, September 8, we provided Kickflip's position with respect to all of Facebook's remaining discovery issues except the in camera inspection request, which we indicated we will provide by the end of this week—i.e., by tomorrow. We will also respond to your joint letter promptly once we have been able to consult with our client.

Derek Linke

Newman Du Wors
(206) 274-2827 direct
(206) 669-3638 mobile


On Sep 10, 2015, at 6:52 AM, Gimblett, Jonathan <JGimblett@cov.com> wrote:

Dear Derek:

Your email confirms that there is an unresolved dispute between the parties as to the first two points.  Please let us know your position on the third point by 6pm Eastern Time today.  Our request that Kickflip agree to submit certain documents to the Court in unredacted form was  set out in my letter of August 26, 2015, more than two weeks ago.  We discussed it on a meet and confer on September 3, 2015, a week ago.  We promptly provided you with the additional information you requested last Friday, September 5, 2015.  You have had more than ample time to formulate your position on this request and we see no justification for further delay before any remaining dispute relating to it is submitted to the Court for resolution.

Exhibit 3
Page 3

I attach a draft joint letter to Judge Stark seeking a teleconference to resolve all three discovery disputes between the parties.  If you confirm Kickflip's agreement to submit the requestedd documents to the Court in unredacted form for in camera review by 6pm Eastern today, we will remove the third dispute from the letter before submitting it to the Court on behalf of the parties.

Regards,

Jonathan

From: Derek Linke [mailto:Linke@newmanlaw.com]
Sent: Wednesday, September 09, 2015 12:32 AM
To: Gimblett, Jonathan
Cc: Lahr-Pastor, Sonia; Greg Tatum; Barnett, Thomas; dross@ram-llp.com; Derek A. Newman; Brian Strange; Cindy Reichline; John Ceglia; Kenneth L. Dorsney; Lou, Melissa; Jason Sykes; Benjamin J. Schladweiler (BSchladweiler@ramllp.com)
Subject: Re: Kickflip, Inc. v. Facebook, Inc.

Jonathan,

Thank you for sending the information below about items 5, 7, and 10 of your August 26th correspondence relating to Facebook's request for in camera review of certain bills for legal services from Erik Benisek's firm (RFP No. 9) and documents relating to the April 17, 2015 Declaration of Mr. Benisek (RFP No. 11). We are continuing to review Facebook's request in light of this additional information and will be in a position to respond by the end of the week.

As for Facebook's other requests from Thursday's meet and confer:

As to items 1 & 2 of your August 26th correspondence, Facebook requests litigation counsel's documents created after the filing of the Complaint relating to the November and December Agreements (RFP Nos. 5 & 6). Kickflip stands by its position that the requested documents fall outside the scope of the privilege waiver announced by the Court in its January 21, 2015 order and memorandum opinion. The requested documents reflect privileged communications with or among Kickflip's litigation counsel and protected work product regarding strategy and advice about establishing or defending Kickflip's standing, including based on the November and December Agreements, and as such, are not a source of any of the information identified in the Court's waiver.

As to items 3, 4 & 6 of your August 26th correspondence, Facebook now requests that Kickflip search for and log (1) litigation counsel's documents relating to the efforts to ascertain when the December Agreement was created (RFP No. 10); (2) documents relating to the April 17, 2015 Declaration of Christopher Smoak (RFP No. 11); and (3) documents relating to the failure of Eric Benisek's hard drive (RFP No. 13). Kickflip stands by its position that the requested documents are outside the scope of permissible discovery. The requested post-filing materials inherently pertain to Kickflip's legal representation in this litigation—not to any issues within the scope of the existing waiver. Because these materials are clearly protected by the attorney–client privilege and work-product doctrine, it is unnecessary to search for and log such documents—i.e., Facebook has no grounds for challenging Kickflip's assertion of the privilege and thus, there is no need for Facebook to assess the applicability of the privilege via log entries. It would also impose a massive burden on litigation counsel that has, over the past few years, coordinated multiple rounds of discovery and multiple rounds of briefing relating to these agreements. Facebook's request is also inconsistent with the Court's Default Standard for Discovery, which expressly excludes post-filing materials from the logging requirements.

Please let me know if we've misunderstood Facebook's positions from our call last week. And as noted above, we'll be in touch later this week as to the in camera inspection request.

Derek Linke

Newman Du Wors
(206) 274-2827 direct
(206) 669-3638 mobile

On Sep 8, 2015, at 9:14 AM, Gimblett, Jonathan <JGimblett@cov.com> wrote:

Exhibit 3
Page 4

Derek - when can we expect Kickflip's responses to the issues discussed on our meet and confer last Thursday?

Jonathan

From: Gimblett, Jonathan
Sent: Friday, September 04, 2015 4:37 PM
To: 'Derek Linke'
Cc: Lahr-Pastor, Sonia; Greg Tatum; Barnett, Thomas; dross@ram-llp.com; Derek A. Newman; Brian Strange; Cindy Reichline; John Ceglia; Kenneth L. Dorsney; Lou, Melissa; Jason Sykes; Benjamin J. Schladweiler (BSchladweiler@ramllp.com)
Subject: RE: Kickflip, Inc. v. Facebook, Inc.

Derek,

1.  Facebook requests that Kickflip submit the following invoices to the Court for in camera review: KICK00002816 et seq. (November 2009), KICK00002821 et seq. (December 2009), KICK00001952 et seq. (reflecting October 2011 services), and KICK00002044 (March 2012).  Additionally, we have reviewed your production and privilege log and cannot locate Mr. Benisek's invoice for services rendered in October 2011.  As I explained in my letter of August 26, 2015 and during our meet and confer call on September 3, 2015, Mr. Benisek's October 2011 invoice is both directly relevant to the issues in this litigation and within the scope of the waiver found by the Court.  We therefore ask that Kickflip produce Mr. Benisek's October 2011 invoice to Facebook in unredacted form, or agree to submit the invoice to the Court for in camera review.

2.  Item No. 5 in my letter of August 26 asked Kickflip whether it would agree to produce unredacted versions of documents relating to the Benisek Declaration (RFP No. 11).  Your letter to me of August 12 enclosing Kickflip's amended privilege log stated that the withheld and redacted versions of those documents were denoted by the entry "[r]eflecting communications with/among counsel regarding legal strategies for prosecuting case against Facebook, including strategies for submitting corrected testimony to the Court."  Many of the redacted documents so identified appear to be partial versions of the same email chain as KICK00002337 et seq.  Facebook therefore asks that you agree to submit KICK00002337 et seq. for in camera review.

Additionally, it appears that Kickflip has withheld in their entirety a large number of documents that relate to this subject matter.  Facebook may wish to seek in camera review of these withheld documents as well, but would like further information from Kickflip first.  Specifically, please confirm whether these withheld documents are part of a single chain that branches off of the chain at KICK00002337 et seq., part of a single chain that is separate from the chain at KICK00002337 et seq., freestanding responsive emails that relate to the chain at KICK00002337 et seq., or freestanding responsive emails that are unconnected to the chain at KICK00002337 et seq.

3.  Item No. 10 of my letter of August 26 asked Kickflip to agree to submit for in camera review:

(a)  KICK00003586 et seq: email chain between litigation counsel stemming from Mr. Benisek's draft declaration. Given the extent of Kickflip's withholdings of and redactions to the emails in this chain, Facebook cannot be sure that there are not multiple branches of the email chain located at KICK00003586 et seq..  However, KICK00002337 et seq. appears to be the most complete version of the email chain.  Therefore, Facebook requests that Kickflip agree to produce KICK00002337 et seq. for in camera review.  Facebook reserves the right to request in camera review of additional emails in the chain, should it become apparent that they are non-duplicative branches of the same correspondence.

(b)  KICK00001840 et seq: Benisek Invoice #21292, covering services through August 31, 2011.

In sum, Facebook asks that Kickflip produce for in camera review:  KICK00001840 et seq., KICK00001952 et seq., KICK00002337 et seq., KICK00002816 et seq., KICK00002821 et seq., and KICK00002044 et seq.  Facebook also asks that Kickflip produce Benisek's October 2011 invoice to Facebook in unredacted form, or produce a redacted version and agree to submit an unredacted version to the Court for in camera review.

Regards,

Jonathan

**Exhibit 3**
**Page 5**

From: Derek Linke [mailto:Linke@newmanlaw.com]
Sent: Thursday, September 03, 2015 7:15 PM
To: Gimblett, Jonathan
Cc: Lahr-Pastor, Sonia; Greg Tatum; Barnett, Thomas; dross@ram-llp.com; Derek A. Newman; Brian Strange; Cindy Reichline;
John Ceglia; Kenneth L. Dorsney; Lou, Melissa; Jason Sykes; Benjamin J. Schladweiler (BSchladweiler@ramllp.com)
Subject: Re: Kickflip, Inc. v. Facebook, Inc.

Jonathan,

We are still considering your positions and requests from this morning's meet and confer.

It would be helpful to us if you could identify by Bates number the documents you are asking Kickflip to submit to the Court in
unredacted form for in camera inspection. You originally identified four bills for legal services from Mr. Benisek (November
2009, December 2009, October 2011, and March 2012), and this morning, you identified additional sets of documents (related
to item Nos. 5 & 10 of your August 26th correspondence).

Please identify the Bates numbers for all of the documents so that we may fully consider this request. To the extent certain
emails are duplicative of or part of another email chain, we would appreciate you identifying the most complete/final chain,
where possible.

Thank you,

Derek Linke

Newman Du Wors
(206) 274-2827 direct
(206) 669-3638 mobile

On Sep 3, 2015, at 12:14 AM, Derek Linke <Linke@newmanlaw.com> wrote:

Jonathan,

Consistent with your agreement below that the production of previously withheld and redacted documents relating to the
December Agreement and involving communications with or among counsel reflecting pre-complaint review and investigation
will not constitute an additional waiver of any privilege or work-product protection, attached please find an archive containing
the documents identified in item No. 9 of your August 26th correspondence. Note that we have removed only those redactions
relating to the December Agreement. We have also assigned a special Bates number and label to these documents.

Additionally, in advance of our meet and confer tomorrow, we would like to address an issue raised in your August 31st email.

We did misquote the Court's memorandum opinion. This was not an attempt to be artful or deceptive, as you suggest, but
rather was inadvertent. Our apologies. We do, however, stand by our position that the requested documents from litigation
counsel are not a source of any of the information identified in the Court's order.

The Court found a waiver of privilege (January 21, 2015 order and memorandum opinion) in response to Facebook's request for
an accurate account of the facts surrounding the November and December Agreements. In Facebook's opening brief regarding
the scope of Kickflip's waiver, Facebook asked the Court to "deem the subject matter waiver to extend to all privileged
documents and communications relating to the motives for, negotiation, implementation and performance of the asset transfer
transaction" (D.I. 74 at 7), and that is exactly what the Court found.

Facebook never requested (and the Court never held) that the waiver extends to all documents, without limitation, that relate to
the November and December Agreements—and especially NOT privileged documents and communications with current
litigation counsel that post-date the filing of the Complaint and reflect legal strategies for establishing or defending Kickflip's
standing based on the November and December Agreements. Indeed, Facebook included such a limitation in its request to the

Exhibit 3
Page 6

Court, noting that, "[w]hile Facebook proposes that the Court construe Kickflip's subject matter waiver to apply to the November and December Agreements, Facebook accepts that the scope of the waiver does not reach other issues in this litigation." (Id.) "Other issues in this litigation" include the issue of standing. We therefore cannot accept your interpretation of the scope of the Court's waiver of privilege.

We are happy to discuss this issue further during tomorrow's meet and confer.

Thank you,

Derek Linke

Newman Du Wors
(206) 274-2827 direct
(206) 669-3638 mobile


<Kickflip.zip>
On Sep 2, 2015, at 8:08 AM, Gimblett, Jonathan <JGimblett@cov.com> wrote:

Derek - thanks for this.  If you are able to get the documents to us today, I agree it makes sense to schedule our phone call for tomorrow.  11am Eastern works at our end.  We can use the following conference line:

Dial-in: 1 800 851 0297
Passcode: 4656690

Regards,

Jonathan

From: Derek Linke [mailto:Linke@newmanlaw.com]
Sent: Wednesday, September 02, 2015 10:37 AM
To: Gimblett, Jonathan
Cc: Lahr-Pastor, Sonia; Greg Tatum; Barnett, Thomas; dross@ram-llp.com; bschladweiler@ross-llp.com; Derek A. Newman; Brian Strange; Cindy Reichline; John Ceglia; Kenneth L. Dorsney; Lou, Melissa; Jason Sykes
Subject: Re: Kickflip, Inc. v. Facebook, Inc.

Jonathan,

Thanks for letting us know about these documents. We'll get them over to you as soon as possible.

We can speak today at 12:30 p.m. EDT. But perhaps we should speak tomorrow after you've received the documents? If so, we could speak at 11:00 a.m. EDT.

Please let me know.

Derek Linke

Newman Du Wors
(206) 274-2827 direct
(206) 669-3638 mobile


On Sep 2, 2015, at 7:28 AM, Gimblett, Jonathan <JGimblett@cov.com> wrote:

Derek et al:

Exhibit 3
Page 7

I forgot to mention in my email below that Facebook is prepared to accept production of the documents identified in point 9 of my letter of August 26, 2015 on the basis that production will not constitute an additional waiver of any privilege or work-product protection.  We would be grateful if you could get those documents to us as soon as possible.

Please let us know if your team is available to speak today.  If we need to tee up the outstanding issues as a discovery dispute for resolution by the Court, we would like to do so promptly this week.

Regards,

Jonathan


From: Gimblett, Jonathan
Sent: Monday, August 31, 2015 9:49 PM
To: 'Derek Linke'; Lahr-Pastor, Sonia
Cc: Greg Tatum; Barnett, Thomas; dross@ram-llp.com; bschladweiler@ross-llp.com; Derek A. Newman; Brian Strange; Cindy Reichline; John Ceglia; Kenneth L. Dorsney; Lou, Melissa; Jason Sykes
Subject: RE: Kickflip, Inc. v. Facebook, Inc.

Dear Derek:

Thank you for your response.  Your letter contains a number of misstatements, including but not limited to the following:

- it is not true that "the privilege waiver found by the Court in its January 21, 2015 order and memorandum opinion 'extend[s] to, but only to, the motives and effects of entering' into the November and December Agreement, 'as well as the negotiations, performance, and implementation of these Agreements.'"  What Judge Stark actually wrote, shorn of your artful but incorrectly punctuated paraphrasing, was: "[T]he Court finds the scope of the waiver to extend to, but only to, the November and December Agreements, including the motives for and effects of entering into them, as well as the negotiation, performance and implementation of these Agreements."  D.I. 91 at 7.  Because "including" does not mean "limited to," this formulation reaches all documents related to the November and December Agreements, not just the subsets of documents falling within that broad category listed as examples by the Court.

- your statement that Facebook "previously agreed . . .that, because the November and December Agreements predate this litigation, the limited waiver extends to only those documents that were created prior to the filing of the Complaint" is similarly inaccurate.  We agreed as a courtesy in February 2015 that Kickflip could limit its production of documents pursuant to the January 21, 2015 order to documents predating the litigation, "provided that no document excluded by this formulation was a source of Kickflip's information on the subjects described in the Court's order."  Gimblett email of Feb. 10, 2015 to Strange.  By its terms, that litigation waiver assumes that documents postdating the commencement of the litigation could fall within the scope of the waiver.  Our understanding of the range of potential documents postdating the commencement of the litigation that could fall within the waiver has, of course, since been transformed by Kickflip's admission of the falsity of its previous representations concerning the creation date of the December Agreement.

- it also is not true that Facebook "contends for the first time" in my letter of August 26 that documents in litigation counsel's files are both relevant to this phase of discovery and within the scope of the waiver of privilege.  As you know, it has been Facebook's consistent position both before and after the parties' June 16, 2015 discovery conference with Judge Stark that Kickflip should produce responsive documents of its litigation counsel in this phase of additional discovery.

We nonetheless accept your offer to discuss further the matters addressed in my letter of August 26.  We are available to join a call any time after 9am PT (12 noon ET) on Wednesday, September 2.

Regards,

Jonathan

**Exhibit 3**
**Page 8**

From: Derek Linke [mailto:Linke@newmanlaw.com]
Sent: Saturday, August 29, 2015 12:57 AM
To: Lahr-Pastor, Sonia, Gimblett, Jonathan
Cc: Greg Tatum; Barnett, Thomas; dross@ram-llp.com; bschladweiler@ross-llp.com; Derek A. Newman; Brian Strange; Cindy Reichline; John Ceglia; Kenneth L. Dorsney; Lou, Melissa; Jason Sykes
Subject: Re: Kickflip, Inc. v. Facebook, Inc.

Jonathan and Sonia,

Please find attached a letter responding to Jonathan's August 26 letter.

I've also attached the native version of the spreadsheet that you requested. Please note that the spreadsheet has been designated as "Highly Confidential" pursuant to the terms of the Protective Order entered in this action and should be treated accordingly.

Have a great weekend.

Derek Linke

Newman Du Wors
(206) 274-2827 direct
(206) 669-3638 mobile


On Aug 26, 2015, at 5:03 PM, Lahr-Pastor, Sonia <SLahrPastor@cov.com> wrote:

Derek,

Thank you for these documents.  A letter addressed to Brian regarding your August 12 letter and the amended privilege log is attached.

Best regards,


Sonia Lahr-Pastor

Covington & Burling LLP
One CityCenter, 850  Tenth Street, NW, Washington, DC 20001 T +1 202 662 5148 | SLahrPastor@cov.com www.cov.com

<image001.png>
Member of the Bar of Pennsylvania, but not admitted in the District of Columbia. Supervised by principals of the firm.
This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.


From: Derek Linke [mailto:Linke@newmanlaw.com]
Sent: Thursday, August 13, 2015 3:10 AM
To: Gimblett, Jonathan
Cc: Greg Tatum; Barnett, Thomas; dross@ram-llp.com; bschladweiler@ross-llp.com; Derek A. Newman; Brian Strange; Cindy Reichline; John Ceglia; Kenneth L. Dorsney; Lou, Melissa; Lahr-Pastor, Sonia; Jason Sykes
Subject: Re: Kickflip, Inc. v. Facebook, Inc.

Exhibit 3
Page 9

Jonathan,

Please see the attached letter and enclosed amended privilege log.

Sincerely,

Derek Linke

Newman Du Wors
(206) 274-2827 direct
(206) 669-3638 mobile


On Aug 7, 2015, at 1:32 PM, Gimblett, Jonathan <JGimblett@cov.com> wrote:

Greg - thank you for this.  Please find attached a latter addressed to Brian concerning the log.

Regards,

Jonathan


From: Greg Tatum [mailto:gtatum@strangeandbutler.com]
Sent: Friday, July 31, 2015 5:45 PM
To: Gimblett, Jonathan; Barnett, Thomas; dross@ram-llp.com; bschladweiler@ross-llp.com
Cc: DN@newmanlaw.com; linke@newmanlaw.com; Brian Strange; Cindy Reichline; John Ceglia; kdorsney@morrisjames.com
Subject: Kickflip, Inc. v. Facebook, Inc.

Dear Counsel,

Please find attached Kickflip, Inc.'s privilege log.

Thank you,

Greg Tatum
STRANGE & BUTLER

United States
12100 Wilshire Blvd., Ste. 1900, Los Angeles, CA 90025
+1 310 207 5055

United Kingdom
11/12 Pall Mall, London SW1Y 5LU
+44 (0) 20 7839 4403

gtatum@strangeandbutler.com
www.strangeandbutler.com
<image001.jpg>

<Ltr to Strange re privilege log.pdf>

<Letter to B Strange re Revised Privilege Log (8.26.2015).pdf>

<Letter to Judge Stark re. discovery dispute.DOCX>

**Exhibit 3**
**Page 10**

# EXHIBIT 4

Exhibit 4
Page 1

# COVINGTON

BEIJING   BRUSSELS   LONDON   LOS ANGELES
NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

**Jonathan Gimblett**

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 5457
jgimblett@cov.com

August 7, 2015

**VIA EMAIL**

Brian R. Strange
STRANGE & BUTLER
12100 Wilshire Boulevard
Suite 1900
Los Angeles, CA 90025

Re:   *Kickflip, Inc. v. Facebook, Inc.*, Case No. 12-1369-LPS

Dear Brian:

The Kickflip privilege log sent to us under cover of Greg Tatum's email of July 31, 2015, contains a number of deficiencies.

As an initial matter, Kickflip appears to have combined its privilege and redaction logs in a single Word table but without distinguishing between those documents that have been redacted and those that Kickflip has withheld in their entirety. In addition, although the log identifies the senders and addressees of email communications, it provides no information on the identity of the respective document custodians. Please provide by August 14, 2015, a revised log including additional columns specifying (i) whether the document in question has been redacted or withheld and (ii) the identity of the custodian.

More generally, the privilege log contains insufficient detail to allow us to assess the validity of Kickflip's claims to privilege. Federal Rule of Civil Procedure 26(b)(5) requires that a party withholding information as privileged "describe the nature of the documents, communication, or tangible things not produced or disclosed ... in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Regardless of what would be required to discharge that obligation in ordinary circumstances, here the Court has ordered discovery into certain highly discrete issues and we need more information in order to be able to determine to which of those issues the withheld documents relate. Moreover, the Court has already found that Kickflip has waived privilege as to certain categories of information and Mr. Benisek's declaration of April 17, 2015, waives privilege as to certain other subject matter. Again, we need more information than might normally be the case in order to assess whether redacted or withheld information falls outside the scope of one of those waivers.

In order to minimize the burden on Kickflip, we are prepared to proceed step by step rather than asking you at the outset for a general revision of the privilege log to add the

Exhibit 4
Page 2

**COVINGTON**

Brian R. Strange
August 7, 2015
Page 2

necessary additional detail.  Specifically, we ask that Kickflip <u>provide answers to the following questions by August 12, 2015</u>:

1. Please confirm that you conducted a comprehensive search, including a search of litigation counsel's documents, for documents created on or before October 14, 2013, that relate or refer to the December Agreement, as requested in Facebook's RFP No. 5,[1] and identify any responsive documents included in the privilege log.

2. Please confirm that you conducted a comprehensive search, including a search of litigation counsel's documents, for documents created on or before October 14, 2013, that relate or refer to the November Agreement, as requested in Facebook's RFP No. 6, and identify any responsive documents included in the privilege log.

3. Please confirm that you conducted a comprehensive search, including a search of litigation counsel's documents, for documents created on or before April 17, 2015, related to Kickflip's or its agents' efforts to ascertain when the December Agreement was created, as requested in Facebook's RFP No. 10, and identify any responsive documents included in the privilege log.

4. Please confirm that you conducted a conducted a comprehensive search, including a search of litigation counsel's documents, for documents that relate to the April 17, 2015 Declaration of Christopher Smoak, as requested in Facebook's RFP No. 11, and identify any responsive documents included in the privilege log.

5. Please confirm that you conducted a conducted a comprehensive search, including a search of litigation counsel's documents, for documents that relate to the April 17, 2015 Declaration of Eric Benisek, as requested in Facebook's RFP No. 11, and identify any responsive documents included in the privilege log.

6. Please confirm that you conducted a comprehensive search, including a search of litigation counsel's documents, for documents that relate to document preservation policies and any efforts to preserve documents in connection with any potential dispute between Kickflip and/or Gambit Labs, on the one hand, and Facebook, on the other hand, as requested in Facebook's RFP No. 12, and identify any responsive documents included in the privilege log that do not include a reference to "document preservation obligations" in the stated basis for Kickflip's privilege assertion.

7. Please confirm that you conducted a comprehensive search, including a search of litigation counsel's documents, for documents that relate to the failure of Mr.

---

[1] All references to Facebook's Requests For Production refer to Requests included in Facebook's Third Set of Requests for Production of Documents to Plaintiff Kickflip Inc., which was served on counsel of record on June 24, 2015.

Exhibit 4
Page 3

**COVINGTON**

Brian R. Strange
August 7, 2015
Page 3

Benisek's hard drive in 2012, as requested in Facebook's RFP No. 13, and identify any responsive documents included in the privilege log.

8. Please confirm that you conducted a conducted a comprehensive search, including a search of litigation counsel's documents, for documents that reflect communications with tax counsel at the law firm of Youngman & Ericsson regarding Kickflip or Gambit Labs, as requested in Facebook's RFP No. 15, and identify any responsive documents included in the privilege log.

Please let me know if it would be helpful to discuss any of these requests.

Yours sincerely,

Jonathan Gimblett

cc via email:

Cindy Reichline
Derek Linke
Derek A. Newman

Exhibit 4
Page 4



**SENT BY EMAIL**

August 12, 2015

Jonathan Gimblett
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
*jgimblett@cov.com*

> Re:   *Kickflip, Inc. v. Facebook, Inc.*, Case 12-1369-LPS

Dear Jonathan:

This responds to your August 7, 2015 letter raising several issues about Kickflip's July 31, 2015 privilege log. We disagree with your assessment that the log is deficient.

Kickflip's log provides all of the information required by Rule 26(b)(5). We've prepared the enclosed amended log to help you understand the information provided on Kickflip's July 31 log and to add some of the extra information you requested.

**A.    Kickflip's log already distinguishes between withheld and redacted documents.**

Facebook does not need a revised log to distinguish between redacted documents and documents that were withheld because that information has already been provided.

The "DOC ID" column in Kickflip's log identifies which documents were redacted and which were withheld:

- redacted documents are indicated by a number beginning with the prefix "KICK"—consistent with the Bates numbering for Kickflip's document productions in this case;
- withheld documents[1] are indicated by a number beginning with the prefix "CTRL"

This distinction is consistent with Kickflip's document production. Every document has a Bates number with a "KICK" prefix, including redacted documents included on the log. None of the documents have a "CTRL" prefix.

---

[1] In order to maintain the integrity of document families, seven withheld documents in Kickflip's production were replaced with "KICK"-numbered slip sheets. Those slip sheets state: "document withheld for privilege."

2101 4th Ste. 1500
Seattle, WA 98121
www.newmanlaw.com

P (206) 274-2800
F (206) 274-4801

**Exhibit 4**
**Page 5**

*Jonathan Gimblett*
*August 12, 2015*
*Page 2 of 5*

The enclosed amended log includes an additional column that reflects this distinction as well as a column identifying each document's custodian.

**B.      Kickflip's privilege log includes all information necessary for Facebook to evaluate Kickflip's privilege claims.**

Your letter concludes that Kickflip's log has insufficient detail for Facebook to assess the validity of Kickflip's privilege claims. Specifically, Facebook claims that it needs more information to determine to which issue the withheld communications relate and that it is entitled to more information than would ordinarily be required under Rule 26(b)(5) because of the privilege waiver.

Consistent with Kickflip's previous limited waiver of the attorney-client privilege, Kickflip has properly identified and logged privileged material. Moreover, the information on Kickflip's log fully complies with Kickflip's obligations by providing sufficient detail about each document, including the file type (*e.g.*, email, email attachment, etc.), the date, the email subject or file name, the sender or author, all of the recipients, along with an explanation for why the document contains privileged information. We do not understand what additional information could be supplied without revealing information that is itself privileged.

If you have any remaining questions about specific entries on Kickflip's log, please let us know as soon as possible so that we may promptly address them.

**C.      Kickflip conducted a comprehensive document search and included appropriate documents on its privilege log.**

Finally, Facebook requests that Kickflip confirm the comprehensiveness of its search with respect to eight categories of documents, and that, for each category, Kickflip identify responsive documents included in its privilege log.

We provided many, if not all, of the requested confirmations during our call on July 24, 2015. The information may also be confirmed by reviewing Kickflip's Amended Objections and Responses to Facebook's Third Set of Requests for Production dated July 17, 2015, including Exhibit A, which identifies the custodians that were searched and the search terms that were used to locate potentially responsive ESI from each custodian.

**1.      Documents relating to or referring to the December Agreement (RFP No. 5).**

Consistent with Kickflip's written responses, we confirmed during our July 24 call that Kickflip (1) searched its files for responsive documents, and (2) separately searched litigation counsel's files for responsive documents created on or before October 26, 2012 (the date the Complaint was filed).

**Exhibit 4**
**Page 6**

*Jonathan Gimblett*
*August 12, 2015*
*Page 3 of 5*

Exhibit A identifies the search terms used to locate documents potentially responsive to this request. Following our July 24 call, Kickflip also agreed to Facebook's proposed additional/new search terms (including "agreement AND (asset! OR share!)" and "(backdate! OR back-dat! OR 'back dat!')") and made a supplemental production based on those search terms days later

The following documents responsive to this request are included on Kickflip's privilege log:

- KICK0003531 and CTRL00181774 (all part of or relating to the same email chain);
- CTRL00181777–CTRL00181784, CTRL00181970–CTRL00181976, KICK00003533, KICK00003543, and KICK00003627 (all part of or relating to the same email chain); and
- CTRL00181787.

### 2.      Documents relating to or referring to the November Agreement (RFP No. 6).

Similar to documents relating to the December Agreement, consistent with Kickflip's written responses, Kickflip confirmed during our July 24 call that it searched Kickflip's files for responsive documents, and separately searched litigation counsel's files for responsive documents created on or before October 26, 2012 (the date the Complaint was filed). In Exhibit A Kickflip identified the search terms used to locate documents potentially responsive to this request. Following our July 24 call, Kickflip also agreed to Facebook's proposed additional/new search terms and made a supplemental production based on those search terms days later.

The following documents are responsive to this request and included on Kickflip's privilege log:

- KICK00000671–KICK00000672 and KICK00000675 (all part of or relating to the same email chain);
- KICK00000678, KICK00000682, KICK00000684, KICK00003365, and KICK00003367 (all part of or relating to the same email chain); and
- KICK00000692–KICK00000693 (all part of or relating to the same email chain).

Please note that Kickflip previously produced these documents—with identical redactions—in response to the Court's January 21, 2015 Order (D.I. 82). We also discussed these documents at length during prior meet and confer sessions, and Kickflip agreed to produce (and did produce) these documents in unredacted form pursuant to an agreement with Facebook that the production would not constitute an additional waiver of any privilege.

### 3.      Documents relating to or referring to Kickflip's efforts to ascertain when the December Agreement was created (RFP No. 10).

During our July 24 call, you specifically asked and we confirmed that Kickflip's July 17, 2015 production included any documents responsive to this request. Consistent with Kickflip's written

**Exhibit 4**
**Page 7**

*Jonathan Gimblett*
*August 12, 2015*
*Page 4 of 5*

responses, Kickflip searched its files for documents relating to its efforts and the efforts of its outside corporate counsel, Mr. Eric Benisek, to ascertain when the December Agreement was created. In Exhibit A Kickflip identified the search terms used to locate documents potentially responsive to this request. Following our July 24 call, Kickflip agreed to Facebook's proposed additional/new search terms and made a supplemental production based on those search terms days later.

There are no documents responsive to this request included on Kickflip's privilege log.

**4.      Documents relating to the April 17, 2015 Declaration of Christopher Smoak (RFP No. 11).**

During our July 24 call, you specifically asked and we confirmed that, consistent with Kickflip's written responses, Kickflip objects to the production of documents responsive to this request. The request seeks information clearly protected by the attorney-client privilege and work-product protections that have not been waived.

**5.      Documents relating to the April 17, 2015 Declaration of Eric Benisek (RFP No. 11).**

Consistent with Kickflip's written responses, Kickflip and its litigation counsel searched their files for documents responsive to this request. In Exhibit A Kickflip identified the search terms used to locate documents potentially responsive to this request.

Privileged documents responsive to this request may be easily identified on the privilege log based on the following description: "Reflecting communications with/among counsel regarding legal strategies for prosecuting case against Facebook, including strategies for *submitting corrected testimony to the Court*." (emphasis added.)

**6.      Documents relating to any document preservation policies (RFP No. 12).**

Consistent with Kickflip's written responses, Kickflip searched its files for documents responsive to this request. We also indicated in our July 30, 2015 email correspondence that search terms for document-preservation policies were unnecessary because such documents were identified through a targeted collection effort.

Privileged documents responsive to this request may be easily identified on the privilege log based on the following descriptions: "Reflecting legal advice regarding anticipated litigation relating to Facebook ban and action items for same, including *document preservation obligations*," and "Correspondence from counsel relating to *document preservation obligations* in connection with anticipated litigation relating to Facebook ban." (emphasis added.) From the privilege log, Facebook may readily ascertain the date the hold was issued and to whom.

**Exhibit 4**
**Page 8**

*Jonathan Gimblett*
*August 12, 2015*
*Page 5 of 5*

**7.     Documents relating to or referring to the failure of Eric Benisek's hard drive (RFP No. 13).**

During our July 24 call, you specifically asked and we confirmed that Kickflip's July 17, 2015 production included any documents responsive to this request. Consistent with Kickflip's written responses, Kickflip searched its files for documents responsive to this request. In Exhibit A Kickflip also identified the search terms used to locate documents potentially responsive to this request. Following our call, Kickflip agreed to Facebook's proposed additional/new search terms (including "(Eric OR Benisek) AND (harddrive OR drive OR computer OR laptop)") and made a supplemental production based on those search terms days later.

There are no privileged documents responsive to this request.

**8.     Documents reflecting communications with tax counsel at the law firm of Youngman & Ericsson regarding Kickflip or Gambit Labs (RFP No. 15):**

Consistent with Kickflip's written responses, Kickflip searched its files for documents responsive to this request. In Exhibit A Kickflip identified the search terms used to locate documents potentially responsive to this request. Following our call, Kickflip agreed to Facebook's proposed additional/new search terms (including "(Snyder OR Youngman OR 'tax counsel' OR 'tax lawyer')") and made a supplemental production based on those search terms days later.

There are no privileged documents responsive to this request.

Should you have any questions or wish to discuss any of the above further, please do not hesitate to contact us.

Very Truly Yours,

Newman Du Wors

Derek Linke

Enclosure

**Exhibit 4**
**Page 9**

# COVINGTON

BEIJING  BRUSSELS  LONDON  LOS ANGELES
NEW YORK  SAN FRANCISCO  SEOUL
SHANGHAI  SILICON VALLEY  WASHINGTON

Jonathan Gimblett

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 5457
jgimblett@cov.com

August 26, 2015

**VIA EMAIL**

Brian R. Strange Esq.
STRANGE & BUTLER
12100 Wilshire Boulevard
Suite 1900
Los Angeles, CA 90025

                    Re:    *Kickflip, Inc. v. Facebook, Inc.*, Case No. 12-1369-LPS

Dear Brian:

      This responds to Derek Linke's letter of August 12, 2015 and accompanying revised privilege log.  Facebook remains concerned about numerous aspects of Kickflip's document production and privilege log.  We ask you to respond to the following questions by close on August 28, 2015, so that we can determine what issues may need to be resolved by Judge Stark in advance of depositions in this phase of discovery on standing.

1.  We infer from your letter that you have failed to search Kickflip's litigation counsel's files for documents created between October 26, 2012 and October 14, 2013, referring or relating to the December Agreement (Facebook Request No. 5).  In Facebook's view any such documents are both (i) likely to be directly relevant to the purposes for which the Court ordered this phase of discovery, and (ii) within the scope of the waiver of privilege found by the Court in its order and memorandum opinion of January 21, 2015.  Please confirm whether Kickflip nonetheless refuses to search for and produce such documents and, if so, on what basis.

2.  We infer from your letter that you have failed to search Kickflip's litigation counsel's files for documents created between October 26, 2012 and October 14, 2013, referring or relating to the November Agreement (Facebook Request No. 6).  In Facebook's view any such documents are both (i) likely to be directly relevant to the purposes for which the Court ordered this phase of discovery, and (ii) within the scope of the waiver of privilege found by the Court in its order and memorandum opinion of January 21, 2015.  Please confirm whether Kickflip nonetheless refuses to search for and produce such documents and, if so, on what basis.

3.  We infer from your letter that you have failed to make any search in Kickflip's litigation counsel's files for documents related to efforts to ascertain when the December

Exhibit 4
Page 10

Brian R. Strange
August 26, 2015
Page 2

Agreement was created (Facebook Request No. 10).  In Facebook's view any such documents are both (i) likely to be directly relevant to the purposes for which the Court ordered this phase of discovery, and (ii) within the scope of the waiver of privilege found by the Court in its order and memorandum opinion of January 21, 2015.  Please confirm whether Kickflip nonetheless refuses to search for and produce such documents and, if so, on what basis.

4.  Your letter states that you object to producing documents related to the declaration submitted by Mr. Smoak on April 17, 2015 (Facebook Request No. 11).  You do not state whether you have logged any documents responsive to this request and none are apparent from a review of your privilege log.  Please confirm whether your position is that you also refuse to record any such documents on a privilege log.  In Facebook's view any such documents are both (i) likely to be directly relevant to the purposes for which the Court ordered this phase of discovery, and (ii) within the scope of the waiver of privilege found by the Court in its order and memorandum opinion of January 21, 2015.  Please confirm whether Kickflip nonetheless refuses either to produce or log such documents and, if so, on what basis.

5.  Your letter indicates that you have withheld or redacted as privileged documents related to the declaration submitted by Mr. Benisek on April 17, 2015 (Facebook Request No. 11).  In Facebook's view any such documents are both (i) likely to be directly relevant to the purposes for which the Court ordered this phase of discovery, and (ii) within the scope of the waiver of privilege found by the Court in its order and memorandum opinion of January 21, 2015.  Please confirm whether Kickflip nonetheless refuses to produce unredacted versions of such documents and, if so, on what basis.

6.  We infer from your letter that you have failed to make any search in Kickflip's litigation counsel's files for documents related to the purported loss of Mr. Benisek's hard drive in 2012 (Facebook Request No. 13).  In Facebook's view any such documents are likely to be directly relevant to the purposes for which the Court ordered this phase of discovery.  Please confirm whether Kickflip nonetheless refuses to search for and produce or log such documents and, if so, on what basis.

7.  In my email of August 11, 2015, to Cindy Reichline, I asked whether you would agree to submit certain of Mr. Benisek's invoices for in camera review.  Derek Linke's August 17, 2015, email in response does not answer this question, but instead asks Facebook to provide a reason why such a review is warranted.  The invoices in question (for services rendered in November and December 2009, October 2011 and March 2012) cover periods of particular relevance to the matters at issue in this phase of discovery and yet have been produced to us only in heavily redacted form.  Given that the questions to be answered in this phase of discovery include (i) whether Kickflip engaged in tax fraud by executing a backdated asset transfer agreement for the avowed purpose of claiming a tax benefit in a prior tax year and (ii) whether there has been a lack of due diligence by Kickflip and its counsel in previous discovery on standing, we think it appropriate that the Court review unredacted versions of these documents to ensure that no discoverable information has been withheld.  Please confirm whether you agree to produce unredacted versions to the Court for in camera inspection.

2

**Exhibit 4**
**Page 11**

Brian R. Strange
August 26, 2015
Page 3

8. Kickflip has produced a March 12, 2010 email from Katy Pletter to Noah Kagan (KICK00000695) which references an "attached spreadsheet." KICK00000698 appears to be a flysheet standing in for the spreadsheet referenced in KICK00000695. KICK00000698 states that the document will be produced in native format. However, we are unable to locate the spreadsheet in your production. Please produce a native version of the spreadsheet referenced in KICK00000695 to us by August 28, 2015 or state your reasons for failing to do so.

9. Kickflip's revised privilege and redaction log still fails to provide Facebook with adequate information with which to assess the validity of Kickflip's privilege claims. But it is apparent from the documents identified in Derek's letter of August 12, 2015, as being responsive to particular document requests that at least some of the withheld documents should have been produced to Facebook. Specifically, Derek identifies the following withheld documents as relating or referring to the December Agreement, and therefore as falling within the scope of the waiver of privilege found by the Court in its order and memorandum opinion of January 21, 2015: KICK00003531, CTRL00181774, CTRL00181777-CTRL00181784, CTRL00181970-CTRL00181976, KICK00003533, KICK00003543, KICK00003627 and CTRL00181787. Please produce these documents to us by August 28, 2015 or state your reasons for failing to do so.

10. Several of the redacted documents on your log also give cause to suspect that discoverable information within them has been withheld. Specifically:

- Kickflip has redacted the entirety of an email chain between litigation counsel stemming from Mr. Benisek's draft declaration. (KICK00003586 et seq.) For example, a page-long email by Derek Linke has been completely redacted. (KICK00003587.) Despite Kickflip's heavy redactions, the context surrounding this document suggests that it is within the scope of the waiver found by the Court. Please produce this documents to us in unredacted form by August 28, 2015, or confirm that you are prepared to produce an unredacted version for in camera review.

- Kickflip has redacted nearly all the text in Benisek Invoice #21291, which covers services through August 31, 2011. (KICK00001840 et seq.) In particular, Kickflip has redacted part of a time entry referring to "Confer[ring] with tax counsel" at Youngman & Ericsson "for services relating to Gambit." (KICK00001840). Kickflip has also redacted part of a time entry referring to "Work on gathering documents for Gambit and Kickflip regarding IRS audit." (*Id.*) The context surrounding those redactions suggests that the withheld information falls within the scope of the waiver found by the Court. Please produce this documents to us with those redactions removed by August 28, 2015, or confirm that you are prepared to produce a version without those redactions for in camera review.

3

**Exhibit 4**
**Page 12**

Brian R. Strange
August 26, 2015
Page 4

Yours sincerely,

*Jonathan Gimblett* /SLP

Jonathan Gimblett

cc via email:

Cindy Reichline
Derek Linke
Derek A. Newman

4

**Exhibit 4**
**Page 13**



**SENT BY EMAIL**

August 28, 2015

Jonathan Gimblett
Covington & Burling LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
*Email: jgimblett@cov.com*

      Re:   *Kickflip, Inc. v. Facebook, Inc.*, Case 12-1369-LPS

Dear Jonathan:

This letter responds to your August 26, 2015 correspondence summarizing Facebook's concerns with Kickflip's document production and privilege log in response to Facebook's Third Set of Requests for Production of Documents dated June 24, 2015.

As an initial matter, you asked Kickflip to respond to your detailed letter within two days. It is improper for Facebook to continue to set such short deadlines when Facebook had more than 16 days to review and respond to our prior correspondence (and amended privilege log) addressing these same issues. Notwithstanding the short timeframe, we will make our best effort to respond here to the issues raised in your letter.

Because the parties have thoroughly addressed these issues in several rounds of correspondence, we believe the next step should be a call to discuss—and hopefully resolve—any remaining issues.

A.      **Documents referring or relating to the December Agreement (RFP No. 5)**

You have asked us to again confirm the comprehensiveness of our search for documents relating to the December Agreement. We confirmed during our July 24, 2015 meet and confer, and again in our August 12, 2015 correspondence, that, consistent with Kickflip's written responses, we searched Kickflip's files for documents responsive to this request, and separately searched litigation counsel's files for responsive documents created on or before October 26, 2012 (the date the Complaint was filed). We have also identified the search terms used to locate potentially responsive documents and made a supplemental production based on additional/new search terms you proposed in the meet and confer process. We also identified the documents responsive to this request that are included on Kickflip's privilege log.

Facebook now contends for the first time that documents in litigation counsel's files created between October 26, 2012 and October 14, 2013 referring or relating to the December Agreement are both

2101 4th Ste. 1500
Seattle, WA 98121
www.newmanlaw.com

P (206) 274-2800
F (206) 274-2801

**Exhibit 4**
**Page 14**

Jonathan Gimblett
August 28, 2015
Page 2 of 6

"(i) likely to be directly relevant to the purposes for which the Court ordered this phase of discovery, and (ii) within the scope of the waiver of privilege found by the Court in its order and memorandum opinion of January 21, 2015." We disagree with both of Facebook's contentions.

First, documents in litigation counsel's files created during this period could not be relevant to the standing issue. The Court granted additional discovery relating to the backdating of the December Agreement, the motivations behind the creation and backdating of the agreement, and whether the agreement constituted a tax fraud that could render the agreement void as contrary to public policy. There can be no dispute that the December Agreement was created and executed more than seven months before this litigation commenced in October 2012. As a result, privileged communications with and work product of litigation counsel created *after* the filing of the Complaint which relate to the December Agreement are neither relevant to nor capable of shedding any light on the motivations for creating and backdating the December Agreement in March 2012 or whether the agreement constituted a tax fraud when it was executed in March 2012.

Second, even if such communications and work product were relevant—which they are not—any responsive documents continue to be protected by the attorney-client privilege and attorney work product doctrine.[1]

The privilege waiver found by the Court in its January 21, 2015 order and memorandum opinion "extend[s] to, *but only to,* the motives for and effects of entering" into the November and December Agreements, "as well as the negotiations, performance, and implementation of these Agreements." (D.I. 81 at 7–8 (emphasis added).) The requested documents from litigation counsel are not a source of any of the information identified in the Court's order. Indeed, you previously agreed in connection with follow-up discovery in response to the Court's order that, because the November and December Agreements predate this litigation, the limited waiver extends to only those documents that were created prior to the filing of the Complaint and does not include any communications with Kickflip's litigation counsel.

Kickflip confirms that it will not produce its litigation counsel's privileged and protected information that falls outside the scope of the limited waiver.

**B.      Documents referring or relating to the November Agreement (RFP No. 6)**

Similar to documents relating to the December Agreement, you have asked us to again confirm the comprehensiveness of our search for documents relating to the November Agreement. We confirmed

---

[1] Under the Court's Default Standard for Discovery, Kickflip is not required to undertake any efforts to review privileged or work-product material created after the filing of the Complaint or to include such material on a privilege log.

**Exhibit 4**
**Page 15**

*Jonathan Gimblett*
*August 28, 2015*
*Page 3 of 6*

in our July 24, 2015 meet and confer, and again in our August 12, 2015 correspondence, that, consistent with Kickflip's written responses, we searched Kickflip's files for documents responsive to this request, and separately searched litigation counsel's files for responsive documents created on or before October 26, 2012 (the date the Complaint was filed). We have also identified the search terms used to locate potentially responsive documents and made a supplemental production based on additional/new search terms you proposed in the meet and confer process. We have also identified the documents responsive to this request that are included on Kickflip's privilege log.

Facebook makes the identical argument here as with RFP No. 5 that litigation counsel's files for documents created between October 26, 2012 and October 14, 2013 referring or relating to the November Agreement are both "directly relevant" and "within the scope of the waiver of privilege found by the Court" in its January 21, 2015 order. For the reasons stated above, we disagree. The requested documents are neither relevant nor subject to the limited waiver.

### C.      Documents relating to efforts to ascertain when the December Agreement was created (RFP No. 10)

You have asked us to again confirm the comprehensiveness of our search for documents relating to or referring to efforts to ascertain when the December Agreement was created. We confirmed in our July 24, 2015 meet and confer, and again in our August 12, 2015 correspondence, that, consistent with Kickflip's written responses, Kickflip searched its files for documents relating to its efforts and its corporate counsel's, Mr. Eric Benisek's, efforts to ascertain when the December Agreement was created. Kickflip did not search litigation counsel's files for documents responsive to this request. We further identified the search terms used to locate potentially responsive documents and made a supplemental production based on additional/new search terms you proposed in the meet and confer process. In addition, we confirmed that there are no documents responsive to this request included on Kickflip's privilege log.

Facebook now contends for the first time that documents in litigation counsel's files are both "(i) likely to be directly relevant to the purposes for which the Court ordered this phase of discovery, and (ii) within the scope of the waiver of privilege found by the Court in its order and memorandum opinion of January 21, 2015." Again, we disagree with both of Facebook's contentions.

The requested documents from litigation counsel are not relevant to the issues currently before this Court, and even if the requested documents are somehow relevant—which they are not—they continue to be protected by the attorney-client privilege and work-product doctrine.

### D.      Documents relating to the April 17, 2015 Declaration of Christopher Smoak (RFP No. 11)

We confirmed in our July 24, 2015 meet and confer, and again in our August 12, 2015 correspondence that, consistent with Kickflip's written responses, Kickflip objects to the production

**Exhibit 4**
**Page 16**

*Jonathan Gimblett*
*August 28, 2015*
*Page 4 of 6*

of any documents relating to the April 17, 2015 Declaration of Christopher Smoak. We can also confirm that we have not recorded any such documents on a privilege log.

We disagree with Facebook's contention that such documents are within the scope of the privilege waiver. The requested documents are clearly protected by the attorney-client privilege and work-product doctrine, and are not a source of any of the information identified in the Court's order. We remind you that the Court already expressly Facebook's attempt to expand the limited waiver to include documents "reviewed" by Mr. Smoak in preparing his January 14, 2014 declaration, ruling that such disclosure would unduly risk requiring Kickflip to disclose communications outside of the subject matter of what is disclosed in the declaration. That reasoning equally applies to the April 17, 2015 declaration.

**E.      Documents relating to the April 17, 2015 Declaration of Eric Benisek (RFP No. 11)**

We have already confirmed the comprehensive nature of our search for documents relating to the April 17, 2015 Declaration of Eric Benisek. We confirmed in our July 24, 2015 meet and confer, and again in our August 12, 2015 correspondence, that, consistent with Kickflip's written responses, Kickflip and its litigation counsel searched their files for documents responsive to this request. We have also identified the search terms used to locate potentially responsive documents and identified the documents responsive to this request that are included on Kickflip's privilege log.

Facebook now asks Kickflip to confirm that it will not be producing privileged documents in unredacted form. Facebook contends that such documents are both "(i) likely to be directly relevant to the purposes for which the Court ordered this phase of discovery, and (ii) within the scope of the waiver of privilege found by the Court in its order and memorandum opinion of January 21, 2015."

To be clear, Kickflip did not withhold documents based on any relevancy objections. To the contrary, Kickflip produced responsive documents between litigation counsel and Mr. Benisek. The responsive documents that Kickflip withheld or redacted based on the attorney-client privilege and/or attorney work product doctrine reflected communications with or among litigation counsel (which does not include Mr. Benisek) regarding legal strategies, including strategies for submitting corrected testimony to the Court. Kickflip confirms that it will not produce privileged and protected information that falls outside the scope of the limited waiver.

**F.      Documents relating to the failure of Eric Benisek's hard drive (RFP No. 13)**

You have asked us to again confirm the comprehensiveness of our search for documents relating to or referring to the failure of Mr. Benisek's hard drive. We confirmed in our July 24, 2015 meet and confer, and again in our August 12, 2015 correspondence, that, consistent with Kickflip's written responses, Kickflip searched its files for documents responsive to this request. Kickflip did not search litigation counsel's files for documents responsive to this request. We also identified the search terms

**Exhibit 4**
**Page 17**

*Jonathan Gimblett*
*August 28, 2015*
*Page 5 of 6*

used to locate potentially responsive documents and made a supplemental production based on additional/new search terms you proposed in the meet and confer process. In addition, we confirmed that there are no documents responsive to this request included on Kickflip's privilege log.

We disagree with Facebook's contention that litigation counsel should search its own files for responsive documents. Documents from litigation counsel's files on this issue (to the extent any exist) are not relevant and are certainly protected by the attorney-client privilege and work-product doctrine.

**G.      Bills for legal services (RFP No. 9)**

Facebook asked Kickflip to agree to submit unredacted versions of some of Mr. Benisek's bills for legal services for in camera review. In response, we stated that we were not aware of any legal basis for the request and we asked you to provide authority to support Facebook's request. In your recent correspondence, Facebook provides an explanation for why Mr. Benisek's bills for legal services may be relevant, but has yet to supply any legal authority supporting its request for in camera inspection. We again ask Facebook to identify the legal basis for this request so that we may appropriately consider it.

**H.      Missing native file**

In your recent correspondence, you identify a missing native version of a spreadsheet attached to a March 12, 2012 email from Katy Pletter to Noah Kagan (KICK00000698). The native version of the spreadsheet is included in the email transmitting this letter. Please note that the spreadsheet has been designated as "Highly Confidential" pursuant to the terms of the Protective Order entered in this action and should be treated accordingly.

**I.      Redacted or withheld documents relating to the December Agreement**

Facebook contends that certain redacted or withheld documents from litigation counsel's files relating to the December Agreement fall within the scope of the waiver announced by the Court in its January 21, 2015 order. We disagree.

Although the identified documents are responsive in that they relate to or refer to the December Agreement, the documents are not a source of any of the information identified in the Court's order. Rather, the documents involve communications with or among counsel reflecting pre-complaint review and investigation. Kickflip will nonetheless agree to produce the documents in unredacted form—removing only those redactions relating to the December Agreement—provided that Facebook agrees that the production of these documents does not constitute an additional waiver of any privilege or work-product protection.

**Exhibit 4**
**Page 18**

*Jonathan Gimblett*
*August 28, 2015*
*Page 6 of 6*

**J.      Redacted documents on Kickflip's privilege log**

Finally, Facebook contends, based on pure speculation, that two redacted families of documents included on Kickflip's privilege log likely contain "discoverable information within them that has been withheld." Kickflip has re-reviewed the documents in question and can confirm that Facebook's suspicions are misplaced.

First, Facebook takes issue with the redactions in document family Bates numbered KICK00003586–3589, claiming only that "the context surrounding this document suggests" that redacted material is within the scope of the waiver found by the Court. The identified email chain contains both (1) responsive and non-privileged communications from Mr. Benisek to Kickflip's litigation counsel (and therefore was not redacted); and (2) privileged communications with or among Kickflip's litigation counsel (which does not include Mr. Benisek) regarding legal strategies, including strategies for submitting corrected testimony to the Court. Kickflip will not produce privileged and protected information that falls outside the scope of the limited waiver.

Second, Facebook asserts that an invoice from Vasquez Benisek & Lindgren LLP for services through August 31, 2011 (KICK00001840–1841) contains improper redactions. In particular, Facebook takes issue with the redacted portion of a time entry immediately following the text: "Confer[ring] with tax counsel . . . for services relating to Gambit." The redacted information in the remainder of that time entry (which comprises only the remainder of that line) does not in any way relate to the November Agreement, December Agreement, the tax audit, or any other relevant issue (including any issue covered by the waiver). It is therefore properly redacted because it remains privileged.

Facebook also suggests that the redacted material in a time entry following the text "Gambit (Audit [redacted]): Work on gathering documents for Gambit and Kickflip regarding IRS audit;" is improper. The redacted information following the semicolon in this time entry does not refer to the IRS audit, any tax items, or any other relevant inquiry (including any issue covered by the waiver). The redactions are therefore proper because the information remains privileged.

Should you have any questions or wish to discuss any of the above further, please do not hesitate to contact us.

Very Truly Yours,

Newman Du Wors

Derek Linke

Enclosure

**Exhibit 4**
**Page 19**

Exhibit Redacted In Its Entirety

# EXHIBIT 5

Exhibit Redacted In Its Entirety

**EXHIBIT 6**