**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| KICKFLIP, INC., Plaintiff, | ) | |
| v. | ) | C.A. No. 12-1369-LPS |
| FACEBOOK, INC., Defendant. | ) | **REDACTED PUBLIC VERSION** |

**DEFENDANT'S MEMORANDUM CONCERNING *IN CAMERA* REVIEW OF CERTAIN DOCUMENTS TO BE SUBMITTED BY KICKFLIP**

*Of Counsel*:

Thomas O. Barnett
Jonathan Gimblett
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956
(202) 662-6000
tbarnett@cov.com
jgimblett@cov.com

ROSS ARONSTAM & MORITZ LLP
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
dross@ram-llp.com
bschladweiler@ram-llp.com

*Counsel for Defendant Facebook, Inc.*

Dated: October 27, 2015

Facebook submits this brief pursuant to the Court's oral order of October 14, 2015, D.I. 131, to provide Magistrate Judge Burke with background to assist his *in camera* review of certain documents to be submitted by Kickflip on October 28, 2015.

**I. Background to the Litigation**

Kickflip alleges that it formerly operated a business called Gambit that provided payment processing and other services to developers with games and other applications available on the Facebook Platform. D.I. 1. Facebook banned Kickflip on November 5, 2009, as a result of Kickflip repeatedly serving deceptive ads in violation of Facebook's terms and conditions. Kickflip alleges that the ban was pretextual and part of a scheme by Facebook to monopolize services Kickflip otherwise would have been able to provide. Kickflip asserts that, absent the ban, it would have been injured by Facebook's introduction on July 1, 2011, of a policy requiring developers to use Facebook's payment processing services.

In its motion to dismiss, Facebook questioned Kickflip's standing to bring this action. D.I. 12. Kickflip had represented to Facebook in a letter of November 12, 2009, that it had sold the Gambit business. Indeed, an agreement dated November 9, 2009 (the "November Agreement"), transferred all of the assets related to the Gambit business to Gambit Labs, Inc. ("Gambit Labs"). Later that month, Facebook received a letter from Gambit Labs claiming to be the owner of the Gambit business and asserting the same claims as those set forth in Kickflip's complaint, thereby indicating that Gambit Labs, not Kickflip, owned any such claims. On September 27, 2013, the Court denied the motion to dismiss but granted Facebook discovery on the standing issue. D.I. 22, 23.

**II. Facebook's Motion for Summary Judgment for Lack of Standing**

On October 14, 2013, Kickflip represented to the Court that there was no need for discovery on standing based on an agreement dated December 15, 2009 (the "December

Agreement") that purported to supersede the November Agreement. D.I. 26. Like the November Agreement, the December Agreement transferred the Gambit business from Kickflip to Gambit. Unlike the November Agreement, the December Agreement included a clause that purported to reserve to Kickflip "any legal claims against Facebook arising out of the Facebook ban." D.I. 28. The Court nonetheless ordered discovery on standing to proceed. D.I. 30.

Following this discovery, Facebook moved for summary judgment for lack of standing on December 31, 2013. D.I. 54. Facebook argued that the November Agreement had transferred to Gambit all of Kickflip's assets related to the Gambit business, including any legal claims, and that the December Agreement did not restore ownership of any such claims to Kickflip. During his deposition, Kickflip's Chief Technology Officer, Christopher Smoak, repeatedly refused to answer questions about the reasons for the November or December Agreements on the grounds of attorney-client privilege. *See* D.I. 61, 62(3) and 62(4). Nevertheless, in response to Facebook's motion, Kickflip submitted a declaration from Mr. Smoak addressing those issues. For example, he represented that "on December 15, 2009," Kickflip and Gambit entered into the December Agreement to "better reflect the intended transaction" and to obtain a "substantially more favorable tax treatment" by changing the asset transfer from an income-recognition event to a "tax-free stock swap." D.I. 58 ¶¶ 30-35.

After further briefing, the Court ruled on January 21, 2015 that Kickflip had waived privilege by submitting the Smoak Declaration and that the scope of the waiver extended to:

> the November and December Agreements, including the motives for and effects of entering into them, as well as the negotiation, performance, and implementation of these Agreements.

D.I. 81 at 7. The Court accordingly ordered Kickflip to:

> produce any documents previously withheld relating to the November and December Agreements, including the motives for

> and effects of entering into them, as well as the negotiation, performance, and implementation of these Agreements. *Id.* at 1.

**III. Kickflip's "Startling Admission" That the December Agreement was Created in March 2012 and Backdated to December 2009**

Based on information obtained pursuant to the Court's January 21, 2015 order, Facebook developed significant questions concerning the true creation date of the December Agreement. For example, documents formerly withheld as privileged by Kickflip revealed that its outside counsel had drafted an amendment to the November Agreement in July 2010, which would have been redundant if that agreement had been superseded in December 2009. D.I. 87 at 5. Despite Facebook's repeated questioning, Kickflip maintained in supplemental briefing on summary judgment on April 1, 2015 that there was "no support for Facebook's last-ditch effort to cast doubt on the date the December Agreement was created." D.I. 93 at 1.

On April 17, 2015, however, Kickflip filed declarations by its outside counsel, Eric Benisek, and Mr. Smoak, admitting that the December Agreement was, in fact, created in March 2012—some 27 months after its effective date and only seven months before the filing of this litigation. [REDACTED] In a discovery teleconference on June 12, 2015, the Court ordered additional discovery into the circumstances surrounding Kickflip's "startling admission." Transcript of June 12, 2015 Teleconference, 20:22 - 21:23; D.I. 117 at 2.

## IV. The Documents to be Submitted by Kickflip for *In Camera* Review

During discovery, Kickflip has withheld on the grounds of attorney-client privilege certain documents that Facebook believes might contain information relevant to the "November and December Agreements, including the motives for and effects of entering into them, as well as the negotiation, performance, and implementation of these Agreements." The Court has ruled that Kickflip has waived attorney-client privilege for documents relevant to these issues. The parties have agreed to submit these documents for *in camera* review. The following describes the documents to be submitted, the redacted versions of which are attached as Exhibits A-G, and the types of information the review is designed to uncover.

### A. Eric Benisek's Invoices for Certain Key Months

Kickflip has agreed to submit unredacted versions of Mr. Benisek's invoices for November 2009 (Ex. A, KICK00002816 et seq.); December 2009 (Ex. B, KICK00002821 et seq.); August 2011 (Ex. C, KICK00001840 et seq.); October 2011 (Ex. D, KICK00003860 et seq.); November 2011 (Ex E, KICK00001952 et seq.); and March 2012 (Ex. F, KICK00002044 et seq.). Any information in these invoices pertaining to the November or December Agreements, including "the motives for and effects of entering into them, as well as the negotiation, performance, and implementation of these Agreements," should be produced pursuant to the waiver previously found by the Court.

Facebook is aware from other documents produced since the June 12 teleconference that the IRS began raising questions requiring Mr. Benisek's attention in August 2011. Exs. H, I. [redacted]

[redacted]

Any redacted information in these invoices relevant to the November and December Agreements is within the scope of the waiver and should be produced, particularly if the information relates to the IRS audit or Kickflip's potential legal claims against Facebook.

**B. Email Exchange Between Counsel Concerning the Benisek Declaration**

Kickflip has agreed to submit an unredacted version of an email chain of April 2015 between Kickflip's litigation counsel following Mr. Benisek's submission to them of his draft declaration (Ex. G, KICK00002337 et seq.). Even supposing it contains confidential legal advice, this chain should not be privileged under the crime-fraud exception if it contains information tending to establish that (i) Kickflip committed tax fraud by backdating the December Agreement to achieve a tax benefit; (ii) Kickflip committed a fraud on the Court by knowingly misrepresenting that the agreement was entered on December 15, 2009 (regardless of whether its litigation counsel was aware of the fraud); or (iii) Kickflip's litigation counsel was aware of the backdating prior to their April 1, 2015, filing asserting that there was no support for Facebook's suspicions concerning the creation date of the December Agreement.

The parties are briefing separately the potential application of the crime-fraud exception. Facebook therefore requests that, if the *in camera* review reveals any information along the lines described above, the Magistrate Judge report that fact to the Court and parties but defer any order to produce the email chain in full until the Court has ruled on the crime-fraud exception.

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

*/s/ David E. Ross*
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
dross@ramllp.com
bschladweiler@ramllp.com

*Counsel for Defendant Facebook, Inc.*

*Of Counsel*:

Thomas O. Barnett
Jonathan Gimblett
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, N.W.
Washington, D.C. 20001-4956
(202) 662-6000
tbarnett@cov.com
jgimblett@cov.com

Dated: October 27, 2015

**CERTIFICATE OF SERVICE**

I, David E. Ross, hereby certify that on October 27, 2015, a true copy of the foregoing ***Defendant's Memorandum Concerning In Camera Review of Certain Documents to be Submitted by Kickflip*** was served via electronic mail upon the following counsel of record:

Mary B. Matterer
Kenneth L. Dorsney
MORRIS JAMES LLP
500 Delaware Avenue
Suite 1500
Wilmington, DE 19801
mmatterer@morrisjames.com
kdorsney@morrisjames.com

*Counsel for Plaintiff Kickflip, Inc. d/b/a Gambit Labs, Inc.*

Derek A. Newman
Derek Linke
Newman DuWors LLP
1201 Third Avenue
Suite 1600
Seattle, WA 98101
dn@newmanlaw.com
linke@newmanlaw.com

Brian R. Strange
Keith L. Butler
STRANGE & BUTLER
12100 Wilshire Boulevard
Suite 1900
Los Angeles, CA 90025
bstrange@strangeandbutler.com
kbutler@strangeandbutler.com

*Counsel for Plaintiff Kickflip, Inc. d/b/a Gambit Labs, Inc.*

*/s/ David E. Ross*
David E. Ross (#5228)

# **EXHIBIT 1**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

KICKFLIP, INC.,

Plaintiff,

v.

FACEBOOK, INC.,

Defendant.

C.A. No. 12-1369-LPS

**DECLARATION OF SONIA LAHR-PASTOR, ESQ. IN SUPPORT OF DEFENDANT'S MEMORANDUM CONCERNING *IN CAMERA* REVIEW OF CERTAIN DOCUMENTS TO BE SUBMITTED BY KICKFLIP**

I, Sonia Lahr-Pastor, do hereby state as follows:

1. I am an attorney with the law firm of Covington & Burling LLP and counsel to Defendant Facebook, Inc. in the above-captioned case. I am licensed to practice in Pennsylvania and the District of Columbia.

2. I submit this Declaration in support of Defendant Facebook, Inc.'s Memorandum Concerning *In Camera* Review of Certain Documents to be Submitted by Kickflip. The following facts are within my personal knowledge, and, if called and sworn as a witness, I could and would testify competently to them.

3. Attached hereto as Exhibit A is a true and correct copy of Mr. Eric Benisek's redacted invoice for services rendered to Kickflip, Inc. in November 2009, as produced by Kickflip in this litigation under Bates number KICK00002816 et seq.

4. Attached hereto as Exhibit B is a true and correct copy of Mr. Benisek's redacted invoice for services rendered to Kickflip, Inc. in December 2009, as produced by Kickflip in this litigation under Bates number KICK00002821 et seq.

5. Attached hereto as Exhibit C is a true and correct copy of Mr. Benisek's redacted August 2011 invoice as produced by Kickflip in this litigation under Bates number KICK00001840 et seq.

6. Attached hereto as Exhibit D is a true and correct copy of Mr. Benisek's redacted invoice for services rendered to Kickflip, Inc. in October 2011, as produced by Kickflip in this litigation under Bates number KICK00003860 et seq.

7. Attached hereto as Exhibit E is a true and correct copy of Mr. Benisek's redacted invoice for services rendered to Kickflip, Inc. in November 2011, as produced by Kickflip in this litigation under Bates number KICK00001952 et seq.

8. Attached hereto as Exhibit F is a true and correct copy of Mr. Benisek's redacted invoice for services rendered to Kickflip, Inc. in March 2012, as produced by Kickflip in this litigation under Bates number KICK00002044 et seq.

9. Attached hereto as Exhibit G is a true and correct copy of a redacted email chain of April 2015 between Kickflip's litigation counsel following Mr. Benisek's submission to them of his draft declaration, as produced by Kickflip in this litigation under Bates number KICK00002337 et seq.

10. Attached hereto as Exhibit H is a true and correct copy of an August 8, 2011 email from Ms. Katy Pletter to Mr. Andrew Hunter and Mr. Christopher Smoak with subject line "Upcoming Kickflip Audit," as produced by Kickflip in this litigation under Bates number KICK00001707 (highlighting added).

11. Attached hereto as Exhibit I are true and correct copies of an August 11, 2011 email from Mr. Hunter to Mr. Benisek with subject line "Audit documents" and its attachment titled "Kickflip Audit.xls," as produced by Ms. Pletter in this litigation under Bates numbers KATY00017035-36.

12. Attached hereto as Exhibit J is a true and correct copy of an October 19, 2011 email from Ms. Pletter to Mr. Hunter, Mr. Smoak, and Mr. Noah Kagan with subject line "Audit Update," as produced by Ms. Pletter in this litigation under Bates number KATY0016559 et seq.

13. Attached hereto as Exhibit K is a true and correct copy of tax law advice provided to Eric Benisek by Mark Ericsson in connection with the IRS audit of Kickflip's and Gambit Labs' 2009 taxes, as produced by Youngman & Ericsson, LLP in this litigation under Bates number YE-EB 000001.

I declare that the foregoing is true and correct under penalty of perjury under the laws of the United States.

Dated: October 27, 2015

*_/s/ Sonia Lahr-Pastor_*
Sonia Lahr-Pastor, Esq.

# EXHIBITS A-K
# REDACTED IN ENTIRETY