# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

KICKFLIP, INC., a Delaware corporation,

    *Plaintiff*,

v.

FACEBOOK, INC., a Delaware corporation,

    *Defendant*.

**C.A. NO. 12-1369-LPS**

**PUBLIC - REDACTED VERSION**

███████████████

## PLAINTIFF KICKFLIP, INC.'S ANSWERING BRIEF RE: SCOPE OF PRIVILEGE WAIVER AND APPLICATION OF CRIME–FRAUD EXCEPTION

Dated: November 24, 2015

Mary B. Matterer (I.D. #2696)
Kenneth L. Dorsney (I.D. #3726)
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com
kdorsney@morrisjames.com

Derek A. Newman (*pro hac vice*)
Derek Linke (*pro hac vice*)
Newman Du Wors LLP
2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800
dn@newmanlaw.com
linke@newmanlaw.com

Brian R. Strange (*pro hac vice*)
Keith L. Butler (*pro hac vice*)
Strange & Butler
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055
bstrange@strangeandbutler.com
kbutler@strangeandbutler.com

**ATTORNEYS FOR PLAINTIFF KICKFLIP, INC.**

## TABLE OF CONTENTS

INTRODUCTION ................................................. 1

BACKGROUND ................................................. 2

A.   The Court previously found a waiver of Kickflip's attorney–client privilege limited to the subject matter of the November and December Agreements. ........................................ 2

B.   Kickflip produced non-privileged documents relating to the November and December Agreements, as well as privileged documents that fall within the January 21 Order's finding of limited waiver. ...................................................................... 3

C.   Upon discovery of the December Agreement's backdating, Kickflip promptly disclosed the new information and surrounding circumstances to the Court. ..................... 4

DISCUSSION .................................................... 5

A.   Litigation counsel's post-Complaint documents fall outside the scope of the waiver because they were created after Kickflip made decisions about and implemented the November and December Agreements. ................................................ 6

B.   No "reasonable basis" to apply the crime–fraud exception exists because a mistake in execution date is not fraud, and work-product materials are not eligible for the exception since litigation counsel was not aware of any fraud. ........................... 9

C.   Litigation counsel's files are independently protected from disclosure under the work-product doctrine. ........................................................................ 15

CONCLUSION .................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*1100 W., LLC v. Red Spot Paint & Varnish Co.*,
    No. 1:05-cv-1670-LJM-JMS, 2009 WL 232060 (S.D. Ind. Jan. 30, 2009)................................12

*Chevron Corp. v. Shefftz*,
    754 F. Supp. 2d 254 (D. Mass. 2010).........................................................................................12

*Cleveland Hair Clinic, Inc. v. Puig*,
    968 F.S upp. 1227 (N.D. Ill. 1996)............................................................................................12

*Collaboration Props., Inc. v. Polycom, Inc.*,
    224 F.R.D. 473 (N.D. Cal. 2004)................................................................................................7

*Haines v. Liggett Grp.*,
    975 F.2d 81 (3d Cir. 1992).................................................................................................. 6, 15

*Hickman v. Taylor*,
    329 U.S. 495 (1947)....................................................................................................................16

*In re Cendant Corp. Secs. Litig.*,
    343 F.3d 658 (3d Cir. 2003).......................................................................................................16

*In re Grand Jury Proceedings # 5*,
    401 F.3d 247 (4th Cir. 2005)......................................................................................................16

*In re Grand Jury Proceedings*,
    604 F.2d 802 (3d Cir. 1979).......................................................................................................16

*In re Grand Jury Proceedings*,
    867 F.2d 539 (9th Cir. 1988)......................................................................................................16

*In re Grand Jury Subpoena*,
    745 F.3d 681 (3d Cir. 2014)...................................................................................................9, 10

*In re Grand Jury*,
    705 F.3d 133 (3d Cir. 2012).............................................................................................. 9, 10, 16

*In re Green Grand Jury Proceedings*,
    492 F.3d 976 (8th Cir. 2007)......................................................................................................16

*In re Seagate Tech., LLC*,
    497 F.3d 1360 (Fed. Cir. 2007).................................................................................................. 8

*In re Sealed Case*,
    162 F.3d 670 (D.C. Cir. 1998)....................................................................................................12

*In re Sealed Case*,
754 F.2d 395 (D.C. Cir. 1985) .................................................................. 11

*In re Teleglobe Comm'ns Corp.*,
493 F.3d 345 (3d Cir. 2007) ...................................................................... 7

*Moore v. Comm'r*,
93 T.C.M. (CCH) 1275 (2007) .................................................................. 14

*Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*,
32 F.3d 851 (3d Cir. 1994) ........................................................................ 16

*Ross v. UKI Ltd.*,
No. 02 CIV. 9297(WHP)JCF, 2004 WL 67221 (S.D.N.Y. Jan. 15, 2004) ......................... 14, 15

*Speth v. Goode*,
No. CIV. 95-264 JBS/AMD, 2013 WL 3412050 (D.N.J. July 3, 2013) ................................ 9, 13

*Unigene Labs., Inc. v. Apotex, Inc.*,
655 F.3d 1352 (Fed. Cir. 2011). ................................................................ 6

*United States v. Zolin*,
491 U.S. 554 (1989) .................................................................................. 15

*Upjohn Co. v. United States*,
449 U.S. 383 (1981) .................................................................................. 6

*Wachtel v. Guardian Life Ins. Co.*,
239 F.R.D. 376 (D.N.J. 2006) .................................................................. 15

## Other Authorities

Crystal Tandon, *Fraud Referral Program Paying Off, IRS Official Says*,
111 Tax Notes 777 (2006).......................................................................... 14

Kwall, Jeffrey L., & Stuart Duhl, *Backdating*,
63 Bus. Law. 1153 (2008) .......................................................................... 14

## Rules

Fed. R. Civ. P. 11 ...................................................................................... 13

Fed. R. Civ. P. 26(b)(3)............................................................................... 17

Fed. R. Civ. P. 37 ...................................................................................... 13

Fed. R. Evid. 502(a)................................................................................ 7, 8, 9

## INTRODUCTION

The Court should deny Facebook's request for documents from the files of Kickflip's litigation counsel for three reasons. First, the requested documents fall outside the scope of the limited privilege waiver the Court previously found. The waiver relates to the transactions in the November and December Agreements, which were created and implemented before Kickflip retained litigation counsel and more than seven months before Kickflip filed its Complaint. Litigation counsel's documents reflect legal strategies for establishing or defending Kickflip's standing based on the agreements—an entirely different subject matter than the transactions addressed by the waiver. Requiring Kickflip to produce these privileged communications would dramatically expand the privilege waiver to include a new subject matter.

Second, the crime–fraud exception does not apply because there is no reasonable basis to suspect that Kickflip used litigation counsel to aid any fraud. Facebook's suggestion that Kickflip *intentionally* misrepresented the creation date of the December Agreement in its October 2013 submission to the Court ignores that Kickflip had nothing to gain from doing so. It would have made no difference for purposes of establishing standing whether the December Agreement was executed in March 2012 or December 2009—both well before Kickflip's filed its Complaint. Facebook's allegations that litigation counsel helped Kickflip conceal tax fraud is speculative and offensive. ██████████████████████████████████████ ████████████████████ Separately, backdating an agreement is not a tax fraud that can be the basis for the crime–fraud exception.

Third, the work-product doctrine independently protects litigation counsel's files. Counsel has the right to assert that protection even if the attorney–client privilege is waived. Piercing it under the crime-fraud exception requires wrongdoing by counsel, which did not occur here.

## BACKGROUND

**A.  The Court previously found a waiver of Kickflip's attorney–client privilege limited to the subject matter of the November and December Agreements.**

On January 21, 2015, the Court issued an order and memorandum finding a limited waiver of Kickflip's attorney–client privilege. (D.I. 81 and 82 (the "January 21 Order").) The waiver arose from Mr. Smoak's declaration testimony about information received from Mr. Benisek about the creation, purpose, and effects of the November and December Agreements. (*See* D.I. 81 at 2–3, 6–7.) Facebook requested a waiver sufficient for it to be "allowed discovery of all material ***relevant to the reasons for the transaction***." (D.I. 77 at 4 (emphasis added).) Facebook acknowledged "the waiver does not reach other issues in this litigation." (D.I. 74 at 7.)

The Court tailored the scope of the waiver appropriately, finding that it extended "to, but only to, the November and December Agreements, including the motives for and effects of entering into them, as well as the negotiation, performance, and implementation of these Agreements." (*Id.* at 7; *see also* D.I. 82 ¶ 2.) The Court declined Facebook's request to extend the waiver to "any documents reviewed or relied upon by Mr. Smoak in the drafting of his Declaration concerning the subjects [of waiver]" because a waiver that broad "would unduly risk requiring Kickflip to disclose communications outside the subject matter of what is disclosed in the Declaration." (D.I. 81 at 7–8.)

The Court ordered production of previously withheld documents within the scope of the limited waiver, and further depositions of Kickflip witnesses. (*See* D.I. 82 (the "January 21 Order").) The Court permitted discovery of these otherwise privileged materials to provide "Facebook (and the Court) [with] information that ought in fairness to be considered with the information Kickflip has disclosed [in Smoak's declaration]." (*See* D.I. 81 at 8.)

In later negotiations over the scope of production, Facebook previously agreed that litigation counsel's documents were not subject to the waiver. (See D.I. 127 at Ex. 1 (February 10, 2015 Email Correspondence between Counsel) ("With respect to Kickflip's anticipated document production, I confirm our agreement that documents covered under the Court's order [providing the scope of the waiver] will be those dated before the filing of the complaint in this matter and will not include any communications with litigation counsel.").)

**B.    Kickflip produced non-privileged documents relating to the November and December Agreements, as well as privileged documents that fall within the January 21 Order's finding of limited waiver.**

Consistent with the Court's January 21 Order, Kickflip produced every document previously withheld as privileged that in any way related to the creation, implementation, or performance of the November and December Agreements.

On June 25, 2015, following Kickflip's voluntary and prompt disclosure of the new information about the execution date of the December Agreement, the Court ordered additional discovery relating to the facts and issues raised by the Smoak and Benisek declarations. (D.I. 117 (the "June 25 Order").) The June 25 Order did not expand the Court's previous finding of limited waiver nor did it find a new waiver. (*See id.* ¶ 5.)

In this new round of discovery, Facebook served document requests on Kickflip and document subpoenas on Gambit Labs and the companies' individual shareholders. Separately, Facebook obtained additional document productions from Kickflip's accountant, corporate counsel, and tax counsel.

Kickflip produced everything within the topics identified by the June 25 Order and the limited privilege waiver described in the January 21 Order. For example, using search terms— including terms specified by Facebook—Kickflip searched for and produced responsive

documents within the topics identified by the June 25 Order. (*See* D.I. 127 at Ex. 2.)

Additionally, litigation counsel searched for and produced responsive documents created on or before Kickflip filed its complaint in this matter.[1] The documents included pre-complaint review and investigation relating to the December Agreement. Kickflip withheld privileged communications with litigation counsel that postdate the Complaint in this matter. Those documents reflect legal strategies for establishing and defending Kickflip's standing based on the November and December Agreement.

**C.  Upon discovery of the December Agreement's backdating, Kickflip promptly disclosed the new information and surrounding circumstances to the Court.**

In April 2015, Kickflip learned by reviewing its corporate counsel's March 2012 billing records that while December 2009 was the effective date, the December Agreement was *prepared and executed* in March 2012. (D.I. 101 ¶¶ 4–6; D.I. 100 ¶¶ 20–23.) ███████████

███████████████████████████████████████████████████

█████ (D.I. 100 ¶¶ 20–21.) This is consistent with Mr. Smoak's January 2014 declaration testimony that the December Agreement was entered, in part, to better document an asset transfer to secure more favorable tax treatment. (*See* D.I. 58 ¶¶ 32–35.)

Promptly after reviewing the billing records, Kickflip investigated Kickflip's previous mistaken understanding and corresponding representations to the Court. Kickflip disclosed the new information to the Court and filed declarations from Mr. Smoak and Kickflip's corporate counsel, Eric Benisek. Their testimony included detailed information about the mistaken date and why Kickflip did not discover the backdating earlier. (*See* D.I. 99–101.) ███████

---

[1] This production was made under an express agreement with Facebook that it would not constitute an additional waiver of attorney–client privilege or work-product protection.

████████████████████████████████████████████████████ (D.I. 100 ¶ 15.) ████

████████████████████████████████████████████████████████

██████████ (D.I. 100 ¶¶ 15, 18–19; D.I. 101 at 3). Mr. Smoak testified that he relied on Mr.

Benisek's advice in providing testimony about the December Agreement date (D.I. 101 ¶¶ 3–5).

Facebook contends that the backdating suggests Kickflip sought to use the December

Agreement to commit tax fraud. But Mr. Benisek's detailed testimony explains there was no

fraudulent intent in the creation of the December Agreement or its backdating, ████████

███████████████████████████████ (D.I. 100 ¶¶ 16–17, 26.) ████

██████████████████████████████████████

██████████████████ (D.I. 100 ¶ 26.) ███████████████████████

████████████████████████████████████████████

██████████████████ (*Id.*)

And it is beyond dispute that the "December Agreement" was created, entered, effective,

and executed at least seven months before the Complaint was filed. (D.I. 136.) Kickflip's

litigation counsel was hired after the agreement was signed. ████████████████

████████████████████████████████████████

███████████████████ (*See* D.I. 127 at Ex. 5.)

## DISCUSSION

The Court should deny Facebook's demand for litigation counsel's documents postdating

the filing of this lawsuit because they are privileged and protected work product for which no

waiver or exception applies.

**A.  Litigation counsel's post-Complaint documents fall outside the scope of the waiver because they were created after Kickflip made decisions about and implemented the November and December Agreements.**

The attorney–client privilege is the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege is necessary "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The sanctity of confidential attorney–client communications is regarded as "worthy of maximum legal protection." *Haines v. Liggett Grp.*, 975 F.2d 81, 89 (3d Cir. 1992). For that reason, setting aside the privilege is an "extreme remedy" that may only occur after due consideration and caution. *Unigene Labs., Inc. v. Apotex, Inc.*, 655 F.3d 1352, 1359 (Fed. Cir. 2011).

The post-Complaint documents that Facebook now seeks do not fall within the scope of Kickflip's previous limited waiver. The December Agreement was created in March 2012—seven months before Kickflip filed its Complaint. This occurred before Kickflip hired litigation counsel. So litigation counsel's post-Complaint documents *cannot* pertain to "the motives, effects, and negotiation, performance, and implementation of the November and December Agreements." Instead, the subject matter of litigation counsel's post-Complaint documents contain privileged and protected legal strategies and advice about this current lawsuit. These communications extend far beyond the limited subject matter of the narrow waiver. *See* Fed. R. Evid. 502(a) (waiver requires that the disclosed and undisclosed communications concern the same subject matter).

The Court noted that the waiver does not extend so far as to "unduly risk requiring Kickflip to disclose communications outside of the subject matter of what is disclosed in" the Chris Smoak declaration that caused the waiver. (*Id.*) The Court rejected Facebook's request for a

broader waiver extending to documents that Mr. Smoak reviewed in drafting that declaration. The Court made this ruling even though Smoak actually reviewed those documents in making the waiver for Kickflip. So to a greater extent, other litigation-counsel documents that Smoak did not review in making the waiver do not fall within the scope of the waiver. (D.I. 81 at 8.) Forcing Kickflip to produce litigation counsel's post-Complaint files would result in the overbroad disclosure the Court sought to prevent. (*Id.*); *see also In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007) ("Extending the waiver, however, is not a punitive measure, so courts do not imply a broader waiver than necessary to ensure that all parties are treated fairly."). In fact, Facebook previously agreed that counsel's documents created after filing this lawsuit do not fall within the scope of the waiver. (See D.I. 127 at Ex. 1 (February 10, 2015 Email Correspondence between Counsel).)

In *Collaboration Properties, Inc. v. Polycom, Inc.*, 224 F.R.D. 473, 475–77 (N.D. Cal. 2004), a patent defendant asserted an advice-of-counsel defense which necessarily put its communications with its consulting counsel at issue. The plaintiff argued that the subject matter of the waiver necessarily extended to communications with defendant's trial counsel. *Id.* But the court declined to extend the waiver, observing that communications with litigation counsel "lie at the core of what is protected by the attorney–client privilege." *Id.* at 476. Accordingly, the court concurred with other decisions finding that "[in] considering the temporal scope of privilege waivers resulting from an advice-of-counsel defense in patent litigation…generally, any such waiver does not extend to litigation-related communications after the complaint is filed." *Id.* (internal citations omitted).

The same reasoning applies here. Kickflip's waiver extends to communications regarding

the motivation, creation, and implementation of the November and December Agreements. Kickflip has produced all documents related to that subject matter. The waiver does not extend to Kickflip's subsequent communications with litigation counsel about strategy in this lawsuit—a separate subject matter and entirely different event where no waiver occurred. S*ee* Fed. R. Evid. 502(a); *see also In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007) ("[W]e hold, as a general proposition, that asserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver of the attorney–client privilege for communications with trial counsel.").

Moreover, Kickflip has not attempted to limit the temporal scope of the waiver. Rather, Kickflip's objections to producing the requested documents have always related to the subject matter of the waiver. Litigation counsel's documents and privileged communications reflect legal strategies for prosecuting the case based on the November and December Agreement. The requested materials involve communications that are separate and distinct from the communications that are subject to the waiver.

Kickflip produced all communications with its corporate counsel, accountant, and tax counsel relating in any way to the November and December Agreements. Kickflip also produced redacted copies of litigation counsel's pre-Complaint communications relating to the Agreements. Facebook is not entitled to expand the scope of the waiver into privileged documents created during the scope of this litigation. The plenary facts disclosed about the December Agreement address the issues Facebook has raised about standing and eliminate concerns of unfairness. Extending the waiver further—and, in particular, permitting Facebook access to litigation's counsel's post-Complaint communications—would cross the line from

curing unfairness to unfairly punishing Kickflip.

**B.    No "reasonable basis" to apply the crime–fraud exception exists because a mistake in execution date is not fraud, and work-product materials are not eligible for the exception since litigation counsel was not aware of any fraud.**

The crime–fraud exception to the attorney–client privilege only applies where (1) "there is a reasonable basis to suspect that the privilege holder was committing or intending to commit a crime or fraud" and (2) "the attorney–client communications or attorney work product were used in furtherance of the alleged crime or fraud…" *In re Grand Jury Subpoena*, 745 F.3d 681, 691 (3d Cir.) *cert. denied sub nom. Corp. & Client v. United States*, 135 S. Ct. 510 (2014) (emphasis added). Mere accusations of wrongdoing are insufficient to meet the "reasonable basis" requirement. Instead, the standard "is intended to be reasonably demanding; neither speculation nor evidence that shows only a distant likelihood of corruption is enough." *In re Grand Jury*, 705 F.3d 133, 151 (3d Cir. 2012). Facebook cannot satisfy this burden.

**1.    Kickflip's statements do not trigger the crime–fraud exception because they were not intentional misrepresentations in furtherance of a crime or fraud, but mistakes of fact that Kickflip itself corrected.**

The mere misstatement of fact—even if repeated several times—does not trigger application of the crime–fraud exception:

> Under [such a] theory, any potential error in an attorney's declaration to the Court could open the door to piercing the attorney–client privilege. A party could make this argument with regard to almost any attorney–client communication and this could broaden the crime–fraud exception beyond its circumscribed application.

*Speth v. Goode*, No. CIV. 95-264 JBS/AMD, 2013 WL 3412050, at *8 (D.N.J. July 3, 2013) *aff'd*, 607 F. App'x 161 (3d Cir. 2015). Thus, by itself, Kickflip's mistake of fact as to the December Agreement's creation date is not a valid basis for piercing the attorney–client privilege. Facebook must articulate a reasonable basis for believing that (1) Kickflip *intentionally* deceived the Court

as to the date of the document's creation and (2) *knowingly* used Litigation Counsel to do so. *See In re Grand Jury Subpoena*, 745 F.3d at 691. Facebook cannot meet this burden.

Kickflip promptly disclosed the mistake. (*See* D.I. 99–101.) And Kickflip's outside corporate counsel, Eric Benisek, offered a detailed description about why Kickflip made the mistake and took so long to discover the error. (D.I. 101 ¶¶ 15–21, 27.) This forthrightness is inconsistent with a desire to commit a fraud upon the Court. Mr. Benisek's statements do not support a "reasonable basis" to apply the crime–fraud exception.

The only facts Facebook offers in support of its theory that the misrepresentation was intentional are:

- Kickflip's failure to inform litigation counsel of the December Agreement's backdating when it forwarded the document shortly before the lawsuit was filed despite "the temporal proximity" and "causal connection" between the agreement's creation and the lawsuit itself;

- Mr. Smoak's ability, during deposition in February 2015, to recall certain details about his communications with Mr. Benisek about the December Agreement while failing to remember the creation date of the document; and

- Litigation counsel's objections during that same deposition.

(D.I. 136 at 14–16.) But these events do not provide a reasonable basis to suspect fraudulent conduct. Placed in their proper context, these facts only lead to speculation, which is not enough to trigger the crime–fraud exception. *In re Grand Jury*, 705 F.3d at 151

Kickflip's alleged "failure to inform" litigation counsel about the execution date of the December Agreement does not form a reasonable basis to suspect an intentional fraud or criminal

act. Clients regularly forward documents to counsel in litigation without layers of detail provided as to their creation or implementation. The act of forwarding an agreement, without explanation or detail, while gathering early client information in litigation is innocuous. Similarly, Mr. Smoak's inability to remember the creation date of the December Agreement in a deposition that occurred three years after the fact does not indicate fraud.

Finally, counsel's objections to Facebook's questions were proper and prompted by questions that assumed a fact. Specifically, Facebook started each question about the December Agreement with "At the time this agreement was *concluded*, December the 15th, 2009…". (D.I. 62, Ex. 2 at 71:1–18 (emphasis added).) But by its terms, the agreement could not be concluded on December 15 because the parties had obligations that would extend beyond that date (*see, e.g.*, D.I. 58-2, § 5, providing expressly for ongoing representations and indemnification obligations; *id*. § 1.1.1, providing Kickflip with the right to continue using certain assets transferred under the agreement.) This prompted Kickflip's counsel to object "misstates the date of the agreement" because the agreement did not *conclude* on December 15.

Facebook cites cases with facts distinguishable from this case. For example, in *In re Sealed Case*, 754 F.2d 395, 398 (D.C. Cir. 1985), the government sought to compel grand jury testimony from the defendant's civil attorneys under the crime–fraud exception. The government presented compelling evidence—including affidavits from the defendant's former employees— that the defendant's executives and its legal department had previously directed "a massive and systematic program to destroy and alter subpoenaed evidence or evidence sought pursuant to civil discovery requests." *Id*. at 396–97. The government showed the defendant's witnesses routinely offered false testimony and the legal department knew that. *Id*. Given the seriousness of

the conduct and the convincing evidence, the court found a "reasonable basis" existed for piercing the attorney–client privilege. In this case, no evidence exists about any massive and systematic program to destroy evidence or suborn perjury.

Facebook's other citations similarly do not fit the facts of this case. In *In re Sealed Case*, 162 F.3d 670 (D.C. Cir. 1998), the court applied the crime–fraud exception where grand jury testimony, documents, and recorded conversations all supported the government's position that Monica Lewinsky consulted her attorney for the purpose of committing perjury and obstructing justice in a civil suit against President Clinton. In *Cleveland Hair Clinic, Inc. v. Puig*, 968 F. Supp. 1227, 1241 (N.D. Ill. 1996), the court extended the crime–fraud exception to conduct the court had previously independently evaluated in issuing Rule 11 and Rule 37 sanctions. And in *1100 W., LLC v. Red Spot Paint & Varnish Co.*, No. 1:05-cv-1670-LJM-JMS, 2009 WL 232060, at *7 (S.D. Ind. Jan. 30, 2009), the court applied the crime–fraud exception when a government agency's file revealed, on the eve of trial, that the defendant had purposefully concealed highly relevant documents that contradicted the defendant's representations to the court.

By contrast, Kickflip's mistake about the December Agreement is not the type of egregious litigation misconduct required to void the sanctity of the attorney–client privilege. Kickflip's forthright correction of the facts belie an attempt to deceive the Court or Facebook. Under such circumstances, the Court should err in favor of preserving the privilege. *See, e.g.*, *Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 265–67 (D. Mass. 2010) (refusing to apply the crime–fraud exception where a party relied on a report that turned out to be fraudulent because "the explicit attribution [to the report] was an act of transparency that allowed Petitioner to quickly ascertain Respondent's reliance upon [the report] and investigate it through discovery"); *Speth*, 2013 WL 3412050, at *8 (unintentional misrepresentations do not provide a reasonable basis to apply

crime–fraud exception).

Facebook suggests that Kickflip knowingly and repeatedly misrepresented the creation date of the December Agreement to strengthen its standing argument. But Kickflip's standing argument is the same regardless of whether the December Agreement was created in 2009 or March 2012. This lawsuit was not filed until after Kickflip actually created the December Agreement. An earlier date would not have improved or otherwise changed Kickflip's standing argument. In addition, the December Agreement is not the only basis for Kickflip's antitrust standing. (*See* D.I. 57 at 6–8 (explaining why, as a general assignment, the November Agreement could not have transferred Kickflip's antitrust claims under Third Circuit law).) Kickflip had no reason to lie about the backdating of the agreement—Kickflip had nothing to gain by such a course of conduct.

> **2.     Backdating an agreement is not tax fraud nor does it supply a reasonable basis to suspect tax fraud.**

Facebook's argument that the Court apply the crime–fraud exception on the basis of tax fraud fails for two reasons. First, Facebook cannot establish that any of Kickflip's actions constitute tax fraud. Second, Facebook fails to identify a reasonable basis for concluding that Kickflip used litigation counsel to conceal fraud.

Facebook speculates that Kickflip may have committed tax fraud on the basis that (1) Kickflip backdated the December Agreement in the face of an IRS audit; (2) ███████; and (3) ████████████████████████████████. But Facebook offers no authority for the proposition that any of this conduct is illegal, or even outside of accepted practices.

To the contrary, the IRS is agnostic toward the practice of backdating, as long as the purpose is to memorialize a past event. *See* Crystal Tandon, *Fraud Referral Program Paying Off, IRS Official Says*, 111 Tax Notes 777, 777 (2006) ("Asked about whether backdated documents in themselves raise scrutiny, [IRS Criminal Investigation Division Chief Nancy] Jardini said that legitimate memorialization of a transaction after the fact is not CI's concern."); Kwall, Jeffrey L., & Stuart Duhl, *Backdating*, 63 Bus. Law. 1153, 1161 (2008) ("The Internal Revenue Service has also acknowledged the legitimacy of memorializing a prior event."). In fact, in *Moore v. Commissioner*, 93 T.C.M. (CCH) 1275, 1283 (2007), the IRS successfully argued in favor of honoring a backdated agreement because it was "created to formalize informal transactions that had occurred in the past." *Id.* Agreeing with the IRS, the court noted that the purpose of the document was "to reduce to writing a prior oral understanding among the parties." *Id.*

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████. Not only is this course of conduct legal, it is entirely consistent with the IRS's own position in *Moore*.

Facebook's position is similar to the failed argument in *Ross v. UKI Ltd.*, No. 02 CIV. 9297(WHP)JCF, 2004 WL 67221, at *6 (S.D.N.Y. Jan. 15, 2004). In *Ross*, the defendants had formed separate business entities for the purpose of engaging in specific business transactions. *Id.* The plaintiffs sought to apply the crime–fraud exception to communications about those entities, arguing the entities must have been set up to avoid paying taxes. *Id.* The court found the plaintiffs' logic too speculative, noting that "it is entirely appropriate for a party to seek to minimize its taxes and for counsel to provide advice on how to do so." *Id.* The *Ross* court found no factual reason to conclude that defendants' behavior "crossed the line that separates tax

avoidance from tax fraud". *Id.* The same could be said of Facebook's reckless charge of tax fraud here. ███████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████

Because there is no reason to believe that Kickflip committed tax fraud, there is similarly no basis to believe that it used litigation counsel to conceal its actions. To the contrary, as soon as counsel became aware of the backdating, it brought the matter directly to the Court's attention. (*See* D.I. 99–101.) The Court should reject Facebook's attempt to use the speculative specter of tax fraud to gain access to litigation counsel's privileged and protected files.

Separately, Facebook misreads the law when it suggests it is entitled to immediate production of attorney–client privileged materials under the crime–fraud exception. Instead, "the Third Circuit has established a multi-step process for determining whether a party's claim of privilege should be pierced by the crime–fraud exception". *Wachtel v. Guardian Life Ins. Co.*, 239 F.R.D. 376, 378–79 (D.N.J. 2006). So, even if Facebook establishes a reasonable basis for application of the crime–fraud exception, the next step is *in camera* review. *Id.* (citing *United States v. Zolin*, 491 U.S. 554, 572 (1989), and *Haines*, 975 F.2d at 96.) Facebook would not be allowed immediate access to counsel's files even if the crime–fraud exception applied, which it does not.

**C.      Litigation counsel's files are independently protected from disclosure under the work-product doctrine.**

The work-product doctrine protects the majority of documents Facebook seeks. As the Supreme Court explained, "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S.

495, 510–11 (1947); *see also* Fed. R. Civ. P. 26(b)(3). Without this protection, "the interests of the clients and the cause of justice would be poorly served." *Hickman*, 329 U.S. at 510–11.

Facebook's attempts to gain access to litigation counsel's files strikes at the very core of the work-product doctrine's protections. Allowing Facebook—an opposing party—to see litigation counsel's files would expose the mental impressions, opinions, and observations of Kickflip's attorneys. *See In re Cendant Corp. Secs. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003). The attorneys own this privilege.

And unlike the attorney–client privilege, the attorney can independently assert the work-product doctrine. *See Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 866 (3d Cir. 1994). Even where the crime–fraud exception applies to the attorney–client privilege, an attorney without knowledge of his client's illegal activity can claim work-product privilege. *In re Grand Jury*, 705 F.3d at 158 (quoting *In re Grand Jury Proceedings*, 604 F.2d 802, n.5 (3d Cir. 1979)). See also *In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) ("[An] attorney who does not knowingly participate in the client's crime or fraud may assert the work product privilege as to his opinion work product"); *In re Grand Jury Proceedings # 5*, 401 F.3d 247, 252–53 (4th Cir. 2005) ("[B]ecause the attorney, as well as the client, has the right to assert the opinion work product privilege, **a prima facie case of crime or fraud must also be made out against the attorney for the exception to apply**") (emphasis added); *In re Grand Jury Proceedings*, 867 F.2d 539 (9th Cir. 1988) (finding that the attorney must have "knowingly participated" in criminal activity to testify about opinion work product).

So even if the Court concluded a reasonable basis existed to apply the crime–fraud exception to the attorney–client privilege, it must independently analyze whether there was a

reasonable basis to apply the exception to the work-product doctrine. Under this analysis, Facebook must establish prima facie evidence that litigation counsel "knowingly participated" in the wrongful acts. But despite bearing the burden of proving the crime–fraud exception's application, Facebook does not address protection of the work-product doctrine.

The only evidence Facebook provides on the issue is counsel's objections during Mr. Smoak's deposition. It is too great a stretch to suggest that two innocuous objections create a reasonable basis for concluding that litigation counsel knowingly perpetrated a fraud on the Court. Work-product protection prohibits Facebook from seeing litigation counsel's mental impressions and conclusions, and has not been waived.

## CONCLUSION

Facebook received every document relating to the November and December Agreements created before this lawsuit began. It will also enjoy depositions of Kickflip's officers, corporate counsel, and accountant. Litigation counsel's files would not shed any additional light on the facts, but would disclose attorney work product going to the heart of Kickflip's strategy for this case.

The documents were created after the execution and implementation of the November and December Agreements. They do not fall within the scope of the waiver. Nor does the crime–fraud exception allow Facebook to access the documents. A mistake as to the December Agreement creation date does not constitute fraud, and Facebook cannot access counsel's work product even if the exception applied for the attorney–client privilege.

Kickflip respectfully requests that the Court deny Facebook's request for the production of litigation counsel's files and communications that postdate the filing of this lawsuit.

Dated: November 24, 2015

Respectfully submitted,

/s/ Kenneth L. Dorsney
Mary B. Matterer (I.D. #2696)
Kenneth L. Dorsney (I.D. #3726)
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
mmatterer@morrisjames.com
kdorsney@morrisjames.com

Derek A. Newman (*pro hac vice*)
Derek Linke (*pro hac vice*)
Newman Du Wors LLP
2101 Fourth Avenue, Suite 1500
Seattle, Washington 98121
(206) 274-2800
dn@newmanlaw.com
linke@newmanlaw.com

Brian R. Strange (*pro hac vice*)
Keith L. Butler (*pro hac vice*)
Strange & Butler
12100 Wilshire Boulevard, Suite 1900
Los Angeles, California 90025
(310) 207-5055
bstrange@strangeandbutler.com
kbutler@strangeandbutler.com

**ATTORNEYS FOR PLAINTIFF
KICKFLIP, INC.**