

100 S. West Street, Suite 400 • Wilmington, DE 19801
Telephone 302.576.1600 • Facsimile 302.576.1100
www.ramllp.com

Benjamin J. Schladweiler                                              Direct Dial:  302.576.1608
                                                                      bschladweiler@ramllp.com

March 18, 2016

**VIA E-FILING & HAND DELIVERY**                      **REDACTED PUBLIC VERSION**
The Honorable Leonard P. Stark
The United States District Court
 for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, DE  19801-3555

     RE:    *Kickflip, Inc. v. Facebook, Inc.*, **C.A. No. 12-1369-LPS**

Dear Chief Judge Stark:

     Pursuant to the Court's oral order of March 11, 2016, D.I. 157, Facebook submits this letter brief to accompany the Court's *in camera* review of the fifteen documents Facebook has identified, D.I. 158, from the privilege logs produced by Newman Du Wors and Strange & Butler.

**Background**[1]

     The December Agreement has been the subject of extensive discovery and litigation since Kickflip introduced it into the record in an unsuccessful attempt to avert discovery on standing. Notwithstanding Facebook's efforts through document requests and depositions to discover the when, how, and why the December Agreement was created, Kickflip repeatedly misrepresented to this Court that it created the December Agreement on December 15, 2009.  As the Court is now well-aware, those representations were not accurate.  On April 17, 2015, Kickflip admitted that the December Agreement was created in March 2012 and backdated to December 15, 2009.

---

[1] Facebook assumes that Chief Judge Stark will conduct the *in camera* review given that he is well-versed in the lengthy history of this case and is in the best position to spot the relevant issues.  For this reason, Facebook does not seek to summarize the full procedural history except to highlight the most relevant points.  If, however, the Court assigns the review to another judge, Facebook requests the opportunity to submit additional briefing to provide sufficient context.

The Honorable Leonard P. Stark
March 18, 2016
Page 2

Subsequent discovery has established that the objective of this backdating was to evade tax liability created by the November Agreement and to fix problems with Kickflip's standing to assert the claims it brought seven months later when it filed this suit.

The backdating came to light only because of additional discovery following the Court's January 21, 2015 Order that Kickflip had waived its attorney-client privilege. D.I. 81 at 7. Facebook discovered a document in Kickflip's February 2015 production dated July 22, 2010 from Kickflip's counsel, Mr. Benisek, that circulated an "errata" to the November Agreement that would have been unnecessary if the December Agreement had already superseded the November Agreement. D.I. 88, Exs. 8, 9.

Even when presented with this evidence, Kickflip continued to deny that the December Agreement was created after 2009. When asked about the errata during his Rule 30(b)(6) deposition on February 25, 2015, Mr. Smoak responded: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ D.I. 88, Ex. 5 at 175: 6-8. On April 1, 2015, in response to Facebook's Supplementary Memorandum on Summary Judgment, Kickflip insisted that "[t]here is also no support for Facebook's last-ditch effort to cast doubt on the date the December Agreement was created." D.I. 93 at 1.

On April 3, 2015, Facebook's counsel emailed Kickflip's counsel to provide Kickflip "a full opportunity to address the question Facebook has raised concerning the actual date on which the December Agreement was created." D.I. 96, Ex. 1. Facebook requested that Kickflip produce by April 7 "any document that would establish when [the December Agreement] was created and executed, such as, for example, any relevant attorney billing records." *Id.* Kickflip did not respond to Facebook's request. As evidenced by the privilege logs, Kickflip's counsel only *began* to look into the attorney billing records on April 7, the last day before Facebook's reply brief was due and *after* its assertion that there was "no support Facebook's last-ditch effort to cast doubt on the date the December Agreement was created." Kickflip's counsel also appear to have located the attorney billing records related to the December Agreement between April 7 and April 8, but failed to notify Facebook before it filed its reply brief.

On April 17, 2015, Kickflip filed declarations by its outside counsel, Eric Benisek, and Mr. Smoak, admitting for this first time that the December Agreement was created in March 2012 and backdated to December 2009 during an IRS audit of Gambit Labs. D.I. 101; D.I. 100. Mr. Benisek also attested that documents that could have shed light on the creation date of the December Agreement were lost in a previously undisclosed hard drive failure in 2012. D.I. 100 ¶ 27. Neither declaration acknowledges that a second purpose for creating the December Agreement in 2012 was to help prepare for this current suit against Facebook.

On June 24, 2015, after the Court had ordered additional discovery, Facebook submitted document requests seeking litigation counsel's documents relating to its efforts to establish the true creation date of the December Agreement and documents related to the purported failure of Eric Benisek's hard drive in 2012. Kickflip initially refused to search for, log, or produce documents responsive to either request created after October 26, 2012. D.I. 127. During the October 7, 2015 discovery teleconference, the Court granted Facebook's request that Kickflip search and log litigation counsels' documents responsive to these requests subject to reasonable

The Honorable Leonard P. Stark
March 18, 2016
Page 3

date and search term limitations. Newman Du Wors and Strange & Butler produced privilege logs on November 3 and November 4, 2015. On December 23, 2015, Facebook moved to compel production of the documents listed on the two privilege logs or, in the alternative, that the Court conduct an *in camera* review of the documents. On March 3, 2016, the Court granted Facebook's motion in part, ordering Kickflip to submit fifteen documents identified by Facebook for *in camera* review.

As explained by the Court during the June 12, 2015 discovery teleconference, the documents submitted for *in camera* review are relevant "to better understand what happened, how that happened, and what, if any, implications there are for that as a result for whether this case can and should be maintained in this court." June 12, 2015 Teleconference Transcript, at 21: 14-17. For example, if the documents reveal a lack of diligence or lack of candor, that would be relevant to whether discovery sanctions are warranted. The documents may also contain evidence supporting the application of the crime-fraud exception. If the documents reveal that Kickflip or counsel knew the truth about the December Agreement earlier than April 2015, that would suggest Kickflip knowingly misled this Court. Evidence that the December Agreement was created for improper tax benefits would also be relevant to the crime-fraud exception.

**Category 1: Reflecting communications with/among counsel regarding legal strategies for prosecuting case against Facebook, including summary of collection efforts.**

According to Kickflip's counsel, documents relating to or referring to the failure of Eric Benisek's hard drive in 2012 are identified by this privilege description. D.I. 150, Ex. F. Facebook identified only two documents from February 10, 2015 and February 23, 2015 under this category. *See* Document #1 (CTRL00182063) and Document #2 (CTRL00182179).

The Court and Facebook first learned of Mr. Benisek's purported hard drive failure from his April 17, 2015 Declaration. The Court should look at whether the emails discuss this hard drive failure. If they do, that would suggest a lack of candor for failing to notify Facebook and the Court of this significant gap in discovery until nearly two months later. If the documents do not discuss the hard drive failure, that would raise questions of whether it was a last-minute invention to excuse Kickflip's repeated misstatements of the date the December Agreement was created. Notably, neither Mr. Benisek nor Kickflip have produced a single document corroborating the hard drive failure.[2]

The second of these documents (CTRL00182179) was also notably absent from the Newman Du Wors log despite the fact that Newman Du Wors attorneys were on the email. The document may also be of interest because it was sent just two days before Mr. Smoak's second deposition on February 25, 2015, during which Mr. Smoak testified that the December Agreement was created in 2009 and the errata was "probably a mistake."

---

[2] There is also a question as to why Mr. Benisek's hard drive failure was not discovered in response to Facebook's Second Set of Requests for Production issued on February 27, 2015, which asked specifically for "[a]ll native versions of the December Agreement in the possession or under the control of Kickflip or Mr. Eric Benisek, with the accompanying metadata specified in Item 5(e) of the Court's Default Standard for Discovery." D.I. 90-10, at 7.

The Honorable Leonard P. Stark
March 18, 2016
Page 4

**Category 2: Reflecting communications with/among counsel regarding legal strategies for prosecuting case against Facebook, including responding to request for attorney billing records.**

This category relates to Facebook's request for documents relating to Kickflip's efforts to ascertain the true creation date of the December Agreement. The way in which Kickflip and its counsel responded to the persistent questions raised by Facebook over this issue may demonstrate a lack of diligence and/or candor that would be relevant for potential sanctions. Facebook identified four documents in this category for the *in camera* review. *See* Document #3 (CTRL00182056); Document #4 (CTRL00182071); Document #5 (CTRL00182414); Document #6 (CTRL00182057).

As discussed above, on April 3, 2015, Facebook asked Kickflip for evidence of the creation date of the December Agreement, specifically including Mr. Benisek's billing records. Because Facebook's reply brief on its summary judgment motion was due April 8, it asked Kickflip to respond by April 7.[3] The privilege logs indicate that, despite Facebook's request, Kickflip did not begin looking into the billing records issue until April 7, 2015. All the documents in this category are also dated after Kickflip's April 1 statement that there is "no support for Facebook's last-ditch effort to cast doubt on the date the December Agreement was created." D.I. 93 at 1. These documents may reveal Kickflip's and counsel's lack of diligence in looking into the creation of the December Agreement before making its April 1 statement and other misleading statements before the Court.

The documents in this category may also reveal evidence of a lack of candor if the documents reveal that Kickflip's litigation counsel knew the billing records confirmed Facebook's doubts about the December Agreement before Facebook filed its reply brief, but did nothing to inform Facebook of this before the filing at approximately 4 p.m. EST on April 8.

In addition to being relevant to litigation counsel's diligence and candor, these documents may also contain evidence relevant to the application of the crime-fraud exception. The Court should look at whether there are any indications that Kickflip or its counsel had prior knowledge of when or why the December Agreement was created.

**Category 3: Reflecting communications with/among counsel regarding legal strategies for prosecuting case against Facebook, including strategies for submitting corrected testimony to the Court.**

The last category reflects documents created after the discovery of the true creation date of the December Agreement and during Kickflip's preparation of corrected testimony for the Court. These documents may reveal relevant facts about what counsel and Kickflip knew about the true creation date and how the new information was handled.

---

[3] In its Motion to Compel, Facebook mistakenly stated the date of filing its Reply as April 7 instead of April 8. *See* D.I. 150, at 3. Although the difference between April 7 and April 8 does not change its substantive argument, Facebook wanted to correct this statement to the Court.

The Honorable Leonard P. Stark
March 18, 2016
Page 5

Facebook chose documents from different points in time during this period.  The first document is from April 8, 2015, and is likely one of the first emails discussing what to do about the discovery of Mr. Benisek's billing records.  *See* Document #7 (CTRL00182199).  Similarly, the second document appears to be one of the early instances of communications between the two law firms on this topic.  *See* Document #8 (CTRL00182409).

The next documents are notable because, although the email and attachment are sent to lawyers at both firms, no email attachments from April 13 are included on the Strange & Butler privilege log.  *See* Document #9 (CTRL00182396) and Document #10 (CTRL00182097).  The next two emails were selected because they should be inclusive of several earlier emails exchanges between counsel on April 13 and on April 15.  *See* Document #11 (CTRL00182096) and Document #12 (CTRL00182065).

The April 16 emails are of particular interest because they contain the only communication with Mr. Smoak.  *See* Document #13 (CTRL00182333) and Document # 14 (CTRL00182334). If these documents show Mr. Linke sending Mr. Smoak a draft of his declaration, that would raise the question whether Mr. Smoak was involved in the drafting process.  The last email from April 17 provides an example of the discussions between counsel on the day that the declarations were filed.  *See* Document #15 (CTRL00182110).

As with the previous category, these emails should be reviewed for evidence about what Kickflip or its counsel knew about the December Agreement previously, how they handled making the corrections to the Court (including the failure to acknowledge the current litigation as one of the reasons for creating the December Agreement), and any additional evidence going to lack of diligence, lack of candor, or application of the crime-fraud exception.

***

While recognizing the benefits of selecting a smaller subset of documents to facilitate the Court's initial review, Facebook would also note that choosing fifteen documents from the 367 documents listed on the two privilege logs was a difficult task given the limited information at Facebook's disposal.  This task was further complicated by the lack of structure to the privilege logs.  The Strange & Butler log has no logical order and neither log identifies documents that are part of the same email chain or duplicates.  At Facebook's request, Kickflip's counsel made an effort to identify inclusive email threads, but Facebook had to largely guess which emails would be representative examples for this Court's review.

Given the inherent and added difficulties in selecting a subset of documents, important evidence relevant to potential sanctions and the crime-fraud exception may exist in emails not identified in the current list.  Facebook therefore respectfully requests that the Court consider expanding its review if this review does not provide definitive answers.  The Court could similarly limit the number of documents submitted, for example by requesting all final emails for each unique email thread.

The Honorable Leonard P. Stark
March 18, 2016
Page 6

        Respectfully submitted,

        */s/ Benjamin J. Schladweiler*

        Benjamin J. Schladweiler (#4601)

cc:    All counsel of record
        Clerk of the Court (*via hand delivery*)